**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-669 |
| JAMAHL SIMMONS | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTION TO SUPPRESS**

Presently before the Court is the defendant Jamahl Simmons's motion to suppress cocaine and other physical evidence seized by United States Postal Inspectors when they executed search warrants approved by a federal magistrate judge in this case. The defendant believes that this evidence was obtained on the strength of warrants that lacked probable cause and were otherwise infirm. He is mistaken. As the government describes in some detail below, the search warrants were backed by ample probable, they were properly issued, and, in any event, the Inspectors properly relied on them in good faith. For the reasons articulated in this response, his motion should be denied.

I.     **BACKGROUND**

   A.     Procedural Background

Simmons is charged in the Second Superseding Indictment with six offenses, including conspiracy to distribute five kilograms or more of cocaine from October 2012 to November 21, 2013. As described in the Indictment, during the conspiracy the defendant mailed Priority Mail parcels filled with cocaine from the Los Angeles area to the Philadelphia area. When these parcels arrived in this area, they were picked up by his cousin, R.S.M., and delivered to Simmons or, in Simmons's absence, to other individuals, such as Stacey Epps or Kenneth Griffin. Simmons and

his associates then distributed the cocaine to customers in Philadelphia and received proceeds in exchange.  Three of these Priority Mail parcels, containing a total of five kilograms of cocaine, were successfully intercepted by Postal Inspectors, resulting in the arrest of Kenneth Griffin and Stacey Epps on November 13 and November 14, 2013.

In the investigation of Simmons and his confederates, Postal Inspectors sought and obtained multiple federal search warrants and tracker warrants for his residence, his business, his telephones, his vehicle, and, of course, the three Priority Mail parcels that they intercepted.  During these searches, the government seized approximately five kilograms of cocaine, two guns, cash, drug paraphernalia, packing materials, and other physical evidence, all of which will be presented against him at his trial.

      B.      <u>Factual  Background</u>

          1.   Search Warrant for the November 12 Parcel

This investigation began with information from a confidential informant ("CI") who informed Postal Inspectors that he/she had known Jamahl Simmons for ten years and that, among other things, Simmons was receiving packages in the US Mail at a smoke shop called Smoke Signals.  The CI advised law enforcement that, among other things, Simmons was distributing marijuana, cocaine, and heroin, and recalls seeing Simmons opening up U.S. Mail parcels packed with white powder, which the CI knew to be cocaine.  Agents corroborated the CI's information about Simmons and began to examine if Simmons had mailed any packages using U.S. Mails.

The first package intercepted was a U.S. Priority Mail parcel mailed on November 12, 2013.  On that day, members of the Philadelphia Division of the U.S. Postal Inspection Service identified a Priority Mail package, Priority Mail number 9505 5000 1479 3313 0000 72 (the "November 12 Parcel") measuring 11.25" x 8.75" x 6" bearing the return address of "Dana Kathryn Jewelry, 12636 Ventura Blvd., Studio City, CA 91604" and the delivery address of "Blue

L.L.C-Four Tower Bridge, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428" (the "November 12 Parcel").

Postal Inspector Sean McStravick prepared an affidavit to support an application for a federal search warrant for the November 12 Parcel.  (Attached as Exhibit A is a copy of the affidavit, search warrant application, and search warrant which was issued for the November 12 Parcel in case 12-285-M).  Inspector McStravick's Affidavit detailed his training and experience investigating narcotics offenses and his familiarity with the methods that drug dealers use to send narcotics though the U.S. Mail.  See Exhibit A at paragraph 1, USA-SIMMONS-0042.  He also outlined why drug dealers use parcel delivery services to ship narcotics.  Id. at paragraph 2, USA-SIMMONS-0042-43.  As detailed in the affidavit, Inspector McStravick explained that the delivery address of the November 12 Parcel, through a review of Law enforcement Database, "Accurint," showed that the business/name "Blue L.L.C-Four Tower Bridge" is not associated to the delivery address.  Id. at paragraph 2, USA-SIMMONS-0042.  According to the affidavit, the delivery address is associated to a "virtual office" facility operated by Regus Management Group, which is significant because, in his training and experience, Inspector McStravick knew that drug dealers often use virtual offices to mask their identity when shipping parcels containing narcotics.  Id. at paragraph 4, USA-SIMMONS-0042-43.

His affidavit also explained that the November 12 Parcel was exposed to a drug-detection canine named "Kirby," # K-7879A, who is handled by Detective Christine Kelliher with the Bensalem Township Police Department.   The affidavit described both Detective Kelliher's and Kirby's background.  Specifically, Inspector McStravick wrote:

> Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996.  The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year.  In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification. Det. Kelliher and K9 Kirby successfully completed the certification and are

3

certified in the detection of the following substances: Marijuana/Hashish, Cocaine hydrochloride/Cocaine base, and Heroin Hydrochloride.

Id. at paragraph 5, USA-SIMMONS-0044.  He also wrote that that, according to Detective Kelliher, after being exposed to the parcel, Kirby gave a positive indication for the presence of illegal narcotics inside the November 12 Parcel.

After the affidavit and search warrant application was approved by the U.S. Attorney's Office, it was presented to the Honorable Linda K. Caracappa, U.S. Magistrate Judge for the Eastern District of Pennsylvania.  Judge Caracappa then issued a search warrant permitting Postal Inspectors to open and search the November 12 Parcel.  See Exhibit A at USA-SIMMONS-0039. Postal Inspectors then opened the parcel.  Inside, they retrieved a manila bag/envelope, which contained a black brick-shaped object covered in carbon paper.  This brick-shaped object contained two additional brick-shaped objects which had the same picture of a pig on them.  Located inside each brick-shaped object was a white powdery substance.  A lab test later confirmed that the white powdery substance was in fact cocaine and weighed approximately 2,000.7 grams.

Having retrieved the cocaine, agents applied for and obtained from a U.S. Magistrate Judge for the Eastern District of Pennsylvania, an Order authorizing the installation of a tracking and a detection device with regard to the November 12 Parcel.  Thereafter, U.S. Postal Inspectors installed a global position system ("GPS") tracker and a beeper inside the package to detect when the package was opened.  Inspectors also replaced a portion of the cocaine in the parcel with substitute material that was made to appear like actual cocaine.  On November 13, 2013, inspectors witnessed as the sham/cocaine material was delivered to the "virtual office" facility at the Regus Management Group, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428.   Subsequently, it was picked up by Simmons's cousin, R.S.M., who delivered it to Kenneth Griffin.  Griffin opened the parcel and was arrested and charged in another matter.

2.  <u>Search Warrant for the November 13 Parcel</u>

   The next package intercepted was on November 13, 2013.  On that day, Postal Inspectors identified a Priority Mail package with Priority Mail number 9505500014853316000391 measuring approximately 11.25" x 8.75" x 6" bearing the return address of  "Denis P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607" and the delivery address of "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057" ("November 13 Parcel").

   Inspector McStravick prepared an affidavit for an application for a federal search warrant, captioned as 12-294-M, to open the November 13 Parcel.  (Attached as Exhibit B is a copy of the affidavit, search warrant application, and search warrant issued in 12-294-M).  He explained in his affidavit that, according to Accurint, the business/name "Jackson Law Group" is not associated with the delivery address, which was a "UPS Store" and is known as a Commercial Mail Receiving Agent (CMRA).  <u>See</u> Exhibit B at paragraph 4, USA-SIMMONS-0076.  He explained that, based on his training and experience, and the experience of other agents, that drug dealers who send controlled substances by the mail or other package delivery services often use a CMRA as the delivery address as a method to mask their identity.  <u>Id.</u> Like the affidavit for the search warrant for the November 12 Parcel, Inspector McStravick provided similar details in the affidavit for the November 13 Parcel.  He outlined his background, experience, and training; the background and training of both Detective Kelliher and Kirby; and also indicated that, according to Detective Kelliher, Kirby gave a positive indication for the presence of illegal narcotics inside the November 13 Parcel.  <u>See generally</u> Exhibit B from USA-SIMMONS-0075 to SIMMONS-0077.

   Inspector McStravick then presented the affidavit to the U.S. Attorney's Office for review. When the affidavit and search warrant application was approved by a prosecutor from the US Attorney's Office, the prosecutor contacted the duty magistrate, Honorable Linda K. Caracappa,

U.S. Magistrate Judge for the Eastern District of Pennsylvania.  Judge Caracappa then directed the prosecutor to send to her the search warrant application, proposed search warrant, and affidavit by electronic mail for review, which the prosecutor did.  When she completed her review of the materials, she called the prosecutor who was with Inspector McStravick.  Judge Caracappa then confirmed that no changes had been made to the materials sent to her, administered an oath to Inspector McStravick and asked him to sign the affidavit, and then directed the prosecutor, on her behalf, to sign and date the search warrant, search warrant application, and the last page of the affidavit where the Judge would normally attest to the agent's signature.  In all there places, the prosecutor signed as follows:  "11/13/2013 at 9:20 p.m., Telephone Authorization, Sozi Tulante."  See Exhibit B at USA-SIMMONS-072 (search warrant application), USA-SIMMONS-073 (search warrant); USA-SIMMONS-078 (affidavit).

Later that evening, Postal Inspectors opened the November 13 Parcel and found inside green packing peanuts and one manila envelope, which contained a brick-shaped object wrapped in carbon paper.  Located inside the brick-shaped object was a white powdery substance.  A subsequent lab test confirmed that the substance was in fact cocaine and weighed approximately 1,003.1 grams.

The next day, the agent and the prosecutor went to see Judge Caracappa and she personally swore out the agent again and signed the search warrant application and the affidavit.  See Exhibit B at USA-SIMMONS-072 (search warrant application) and USA-SIMMONS-078 (affidavit).

## II.   ARGUMENT[1]

Simmons moves this Court to suppress the cocaine seized from the November 12 Parcel and November 13 Parcel, baldly claiming that the affidavits in support of those warrants failed to establish probable cause and were riddled with misstatements of facts.[2]  He also contends that the search warrant for the November 13 Parcel was not signed and should be suppressed on that basis, too.  Each argument fails.  There was ample probable cause to support the opening of the parcels, there were no factual misstatements, and the government followed the proper procedures to obtain the search warrant for the November 13 Parcel.  Moreover, Inspector McStravick relied in good faith on the issuance of the search warrants.   For these reasons, which are described more fully below, the defendant's Motion to Suppress should be denied.

---

[1]      The defendant, in passing, makes other wild, sinister, and vague claims for suppression in the motion, though he does not identify with any particularity the searches he is referring to, the evidence to be suppressed, or the factual and legal basis for suppression.  His failure to do so runs afoul of this Court's Order, dated June 19, 2014, denying his earlier motion to suppress without prejudice to him refiling the motion and describing with particularity the evidence to be suppressed and the specific reasons for suppression.  Consequently, the government will not – and cannot – respond to the vague grounds he asserts in his motion.  But the government will briefly address his belief that his arrest was without probable cause.  See Defendant's Motion at ¶ 1(a).  This argument should be rejected as the grand jury ultimately issued an indictment which supplied probable cause to support his arrest.  See Jones v. Cannon, 174 F.3d 1271, 1287 (11th Cir. 1999) (stating that grand jury indictment "broke the chain of causation" for claim based on alleged false arrest); Kaley v. United States, 134 S.Ct. 1090, 1100 (2014) (explaining that "an indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.")(internal quotations and citations omitted).

[2]      The defendant also seeks to suppress evidence obtained from a Priority Mail parcel #420194289505500014853301000689.  See Defendant's Motion at ¶ 8.  That parcel, however, was neither exposed to a drug-detection canine nor opened.  It was delivered on October 31, 2013, to a "virtual office" facility operated by Regus Management Group and agents observed as it was picked up by R.S.M. that same day.  Since that parcel was never searched and no evidence seized from that parcel, the government will not address that parcel in this response.  He also claims that the Court should suppress evidence from the tracker warrant on the November 13 Parcel in Magistrate No. 13-1296.  Id. at ¶ 10.  The government never delivered the November 13 Parcel or executed the tracker warrant issued for that parcel.  Accordingly, the government will not address the arguments that the defendant raises in connection with that tracker warrant because there is no evidence for the Court to suppress.

A.    The Search Warrants were Supported by Probable Cause

A search conducted pursuant to a search warrant should be upheld if the judicial officer who issued the warrant has a substantial basis for concluding that probable cause existed for the search. Illinois v. Gates, 462 U.S. 213, 238-39 (1983).   This Court's review of an initial probable cause determination should be deferential and limited: "A magistrate's determination of probable cause should be paid great deference by reviewing courts.  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993)(internal quotations omitted).  "The duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for...concluding' that probable cause existed." Gates, 462 U.S. at 238, quoting Jones v. Unites States, 362 U.S. 257, 271 (1960).

In evaluating a search warrant, the Court should keep in mind that,

> [t]he task of the issuing magistrate is simply to make a practical,
> common sense decision whether, given all the circumstances set forth
> in the affidavit before him, including the 'veracity' and 'basis of
> knowledge' of persons supplying hearsay information, there is a fair
> probability that contraband or evidence of a crime will be found in a
> particular place. And the duty of a reviewing court is simply to
> ensure that the magistrate had a 'substantial basis for ... [concluding]'
> that probable cause existed.

Gates, 462 U.S. at 238, quoting Jones v. United States, 362 U.S. at 271.  A reviewing court is not to make its own probable cause assessment, but should "determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993).  This rule reflects the preference for warrants stated in the Fourth Amendment.

In determining whether probable cause exists for the issuance of a search warrant, a court looks to the "totality of the circumstances." Gates, 462 U.S. at 238.  A probable cause finding does not require that it be "more likely than not" that the evidence will be found in the place described. See Texas v. Brown, 460 U.S. 730, 742 (1983) (probable cause "does not demand any showing that

8

such a belief be correct or more likely true than false"); United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987), citing United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983) (probable cause does not require proof "that it is more probable than not that a crime has been or is being committed"). Probable cause simply requires a "fair probability" that evidence will be found. Gates, 462 U.S. at 238; United States v. Shecter, 717 F.2d 864, 869 (3d Cir. 1983). Furthermore, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Gates, 462 U.S. at 237 n.10, citing United States v. Ventresca, 380 U.S. 102, 109 (1965).

Here, there was more than enough probable cause to justify the issuance of the search warrants for the November 12 Parcel and November 13 Parcel. The affidavits make clear that each package was exposed to a trained, certified drug-detection canine that, according to its trained and experienced handler, gave a positive indication for the presence of controlled substances in each package. As the Third Circuit has held, "it is clear that the drug dog's alert would present probable cause for a search." Karnes v. Skrutski, 62 F.3d 485, 498 (3d Cir. 1995).[3] Therefore, the canine alert, standing alone, offered the Magistrate Judge a substantial basis for determining that there was

---

[3]     Other federal appellate courts, like the Third Circuit, have universally embraced the proposition that, without more, a positive alert from a trained drug dog is enough to establish probable cause to search. See, e.g., United States v. Branch, 537 F.3d 328, 340 (4th Cir. 2008) (noting that it was well-settled that a positive alert by a drug detection dog, in and of itself, provides probable cause to search); United States v. Stewart, 473 F.3d 1265, 1270 (10th Cir. 2007) ("A canine alert gives rise to probable cause to search a vehicle"); United States v. Gonzalez, 328 F.3d 755, 759 (5th Cir. 2003) (the positive alert of a properly trained drug detecting dog, standing alone, provides probable cause to support a search); United States v. Sunby, 186 F.3d 873, 875-76 (8th Cir. 1999) (dog sniff of a reliable dog resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present); United States v. Hillison, 733 F.2d 692, 696 (9th Cir. 1984) (alert of drug-detecting dog creates probable cause that a package contains illicit drugs); United States v. Robinson, 707 F.2d 811, 815 (4th Cir. 1983) (detection of narcotics by a trained dog is generally sufficient to establish probable cause).

probable cause to believe that drug-related evidence was present in each of the parcels and to

authorize the search of the parcels.

Moreover, the neutral Magistrate Judge was entitled to rely on the other averments

presented in the affidavits by Inspector McStravick in determining that, in the totality of

circumstances, there was probable cause to search each parcel.  As noted above,  Inspector

McStravick only asked for the drug dog after gathering a number of facts that raised his suspicions

about the contents of the parcels.  For instance, he explained that, in his training and experience,

drug dealers often use virtual offices or CRMAs to send controlled substances so that they can

disguise their identity and illegal activities.  He added that the parcels originated from California,

which is a source area for cocaine.  Thus the dog's positive alert only substantiated the other facts

known to Inspector McStravick, which informed his belief that drug-related evidence would be

found in these parcels.  See United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003)

(acknowledging that the Supreme Court has "accorded great deference to the officer's knowledge

of the nature and the nuances of the type of criminal activity that he observed in his experience,

almost to the point of permitting it to be the focal point of the analysis."); Burton, 288 F.3d at 99

(the facts in a probable cause analysis must be viewed "through the lens of the [officers']

significant experience with similar transactions").

In the face of this evidence, the only argument that the defendant can muster is to vaguely

claim that the affidavit contained some unidentified misstatements of material fact.  However, the

only material fact that he can point to is his conclusory belief that the certification of the well-

trained canine and his similarly experienced handler was somehow not to be trusted.  Yet, he offers

not a shred of evidence for his misplaced suspicion and does not rebut the detailed recitation by

Inspector McStravick regarding the canine's continuing training and certification.  Cf. United

10

States v. Rivera, 347 Fed.Appx. 833, 837–39 (3d Cir. 2009) (approving of warrant based on affidavit of probable cause that was silent on drug dog's training and certification).

In short, applying the deferential review of the Magistrate Judge's initial probable cause determination, this Court should find that the information contained in the affidavits presented to the Magistrate Judge and the normal inferences drawn therefrom, gave the Magistrate Judge a substantial basis for concluding that probable cause existed to issue the search warrants. Accordingly, defendant's motion to suppress the evidence recovered from these parcels and any other fruits of these searches should be denied.

B.      The Government Properly Obtained the Search Warrant for the November 13 Parcel

As his fallback argument, the defendant finds fault with the search warrant issued to open the November 13 Parcel because, he opines, the warrant was "never signed by a United States District Court Magistrate or Judge."  Defendant's Motion at ¶ 9.  In so arguing, the defendant overlooks Fed. R. Crim. P. 4.1, which authorizes telephonic search warrants, such as the search warrant for the November 13 Parcel.

Federal Rule of Criminal Procedure 41(d)(3) provides that "[i]n accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means."  Fed.R.Crim.P. 41(d)(3).  Telephonic warrants are nothing new.  They existed in the former Rule 41(d)(3) and (e)(3) and, effective December 2011, were moved to Rule 4.1, which "brings together in one Rule the procedures for using a telephone or other reliable electronic means to apply for, approve, or issue warrants[.]"   Advisory Committee Notes on Rule 4.1.  See also Fed.R.Crim.P. 4.1(a) ("A magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons.")

Rule 4.1(b) lays out the procedures for proceeding under the rule.[4]  First, "[t]he just must place under oath – and may examine—the applicant and any person on whose testimony the application is based."  Fed.R.Crim.P. 4.1(b)(1).  The rule then states that, when creating a record fo the testimony and exhibits, if the "applicant does no more than attest to the contents of a written affidavit submitted by reliable electronic means, the judge must acknowledge the attestation in writing on the affidavit."  Fed.R.Crim.P. 4.1(b)(2).   The applicant must then "prepare a proposed duplication original of a . . . warrant . . . and must read or otherwise transmit its contents verbatim to the judge."  Fed.R.Crim.P. 4.1(b)(3).  And, as here, "[i]f the applicant transmits the contents by reliable electronic means, the transmission received by the judge may serve as the original."  Fed.R.Crim.P. 4.1(b)(4).  Finally, to issue the warrant, the judge must:

> (A) sign the original documents;
>
> (B) enter the date and time of issuance on the warrant . . .; and
>
> (C)  transmit the warrant . . . by reliable electronic means to the applicant or direct the applicant to sign the judge's name and enter the date and time on the duplicate original.

Fed.R.Crim.P. 4.1(b)(6).

The government followed the procedures above in substance.  As set out above, when the affidavit was ready for Magistrate Judge Caracappa's review, the affidavit, the search warrant application, and proposed search warrant was transmitted to her by "reliable electronic means," that is, by electronic mail.  Judge Caracappa then participated in a telephone conference call with the prosecutor and Inspector McStravick, and, upon reviewing these documents and confirming that she had no changes, placed Inspector McStravick under oath and found that there was probable cause to issue the warrant to search the November 13 Parcel.  Pursuant to Fed.R.Crim.P. 4.1(b)(4)(C), Judge Caracappa then directed that the prosecutor indicate in the search warrant application, search warrant duplicate original, and affidavit that it was authorized by her telephonically and the time and date of

---

[4]        These procedures were formerly enumerated in Fed.R.Crim.P. 41(e)(3).

that authorization.

C.     The Postal Inspectors Relied In Good Faith on a Facially Valid Warrants.

Even if this Court finds that the affidavits did not contain sufficient probable cause to support the issuance of the warrants, or that the government did not abide specifically with the procedure under Rule 4.1, the evidence recovered should not be suppressed because the officers acted in good faith in executing the facially valid warrants.

As the Third Circuit has held, evidence seized pursuant to a warrant should not be suppressed "when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993).  The purpose of the exclusionary rule is to deter unlawful police conduct.  United States v. Leon, 468 U.S. 897, 906 (1984).  The Supreme Court cautioned in Leon that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  468 U.S. at 922 (citations omitted).

Thus, if an officer has obtained a warrant and executed it in good faith, "there is no police illegality and thus nothing to deter."  Id. at 921.  The fact that an officer executes a search pursuant to a warrant is *prima facie* evidence of good faith.  Hodge, 246 F.3d at 308.  Likewise, the mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.  Leon, 468 U.S. at 922; Williams, 3 F.3d at 74.

In evaluating an officer's reliance on a warrant, a court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (citations omitted); see also United States v. $92,422.57, 307 F.3d 137, 145-46 (3d Cir. 2002).  The Third

13

Circuit has identified four circumstances in which this exception would not apply: if (1) the magistrate judge issued the warrant in reliance on a deliberately false or recklessly false affidavit; (2) the magistrate judge has not performed his duties in a neutral and detached manner; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is facially deficient in failing to particularize the place to be searched or the things to be seized.  Williams, 3 F.3d at 74 n.4 (citations omitted).

Simmons, here, does not contend that the Magistrate Judge failed to act in a detached manner or that the warrant failed to particularize the place to be searched.  To the extent that Simmons reaches any of these factors in his brief, he does so by claiming that Judge Caracappa issued the warrant by relying on recklessly false assertions in the affidavit and that there was no probable cause.  As shown above, each of these arguments falls short.  For one thing, the warrants were supported by probable cause.  For another thing, the defendant cannot even identify any falsities in the affidavits, let alone that there was any false information calculated to deceive the magistrate.  See United States v. Calisto, 838 F.2d 711, 715 (3d Cir. 1988) (declining to hold that Franks allows a challenge to a warrant where omission "was occasioned not by a scheme to deceive the magistrate about a material fact, but by a desire to withhold a fact not material to the magistrate's task").

Given the information in the affidavits, including the positive dog alert, and their approval by a detached judicial officer, the inspectors' reliance on the warrants was entirely reasonable.  In sum, the conduct here does not warrant the strong medicine under the exclusionary rule.  Herring v. United States, 129 S.Ct. 695, 700, 702 (2009) (emphasizing that exclusion "has always been our last resort, not our first impulse" and limiting it to instances where police conduct is sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system").

14

As the record lays bare, there is no misconduct here, let alone the malicious, deliberate misconduct sufficient to trigger the exclusionary rule, and exclusion will not further the deterrent goals that the exclusionary rule is intended to advance.   The search warrants were approved by an Assistant United States Attorney and a neutral magistrate and the postal inspectors had every right to rely in good faith on the thoroughly vetted and judicially approved warrant.  See, e.g., United States v. Singh, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of motion to suppress due to applicability of good faith exception); United States v. Kepner, 843 F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in good faith on valid search warrant).

Likewise, the defendant's insistence on suppression of the cocaine seized from the November 13 Parcel for any technical violations of Rule 4.1 is insupportable.  There is no question, as shown above, that there was ample probable cause to support the search warrant for the November 13 Parcel.  But the defendant maintains that this Court elevate form over substance and give him a windfall by suppressing the cocaine from the November 13 Parcel because the government did not follow Rule 4.1 to the letter.  His position should be rejected.

To begin with, Rule 4.1 makes clear that suppression is an extraordinary remedy.  See Rule 4.1(c) ("Suppression Limited.  Absent a finding of bad faith, evidence obtained from a warrant issued under this rule is not subject to suppression on the ground that issuing the warrant was unreasonable under the circumstances.")  Case law interpreting Rule 41, which preceded Rule 4.1 and formerly provided for the issuance of search warrants by "telephonic or other means," makes clear that suppression is unwarranted in the absence of bad faith under Leon and its progeny.  See e.g. United States v. Cazares–Olivas, 515 F.3d 726, 729–30 (7th Cir. 2008) (cocaine seized from a residence, based on a telephonic authorization to search and with no written warrant, not subject to suppression under the exclusionary rule); United States v. Hessman, 369 F.3d 1016, 1018–23 (8th

Cir.2004) (applying <u>Leon</u> where search warrant was issued by telephone and fax but officer had not signed the warrant application and the magistrate did not place the officer under oath or talk to him about the facts supporting the application before signing the warrant and faxing it back to the officer for execution); <u>United States v. Chaar</u>, 137 F.3d 359, 362–64 (6th Cir. 1998) (police officer's reliance on telephonic warrant was in good faith and objectively reasonable even though the warrant did not comply with Rule 41's recording and transcription requirements); <u>United States v. Clyburn</u>, 24 F.3d 613, 617 (4th Cir. 1997) (Fourth Amendment does not require that statements made in support of probable cause be tape recorded or otherwise placed on the record or made a part of the search warrant affidavit); <u>United States v. Richardson</u>, 943 F.2d 547, 548, 550–51 (5th Cir.1991) (reversing the district court's decision to suppress where the agent had not signed the affidavit and the judge, in a telephone conversation, did not require an oath or affirmation of the facts in the affidavit); <u>Mills v. Graves</u>, 930 F.2d 729, 734 (9th Cir.1991) (upholding a telephonic search warrant despite the fact that the officer's oath was taken five days after the search); United States v. Rome, 809 F.2d 665, 668–71 (10th Cir.1987) (suppression of evidence obtained from telephonic search warrant, issued in violation of Rule 41, would not serve the "remedial objectives" of the exclusionary rule, as approved by Leon ); <u>United States v. Kelley</u>, 140 F.3d 596, 604 (5th Cir.) (concluding that suppression would not serve a deterrent purpose where the search was conducted pursuant to an unsigned and undated warrant), cert. denied, 525 U.S. 908 (1998).

Here, the record is utterly devoid of any bad faith by the government or any other unscrupulous conduct that would justify suppression.  To the contrary, as evidence of the government's good faith, even after the magistrate judge had authorized the search warrant telephonically, the prosecutor and agent went to the magistrate judge and had her sign the search warrant application and the affidavit even though this was not required by Rule 4.1.

In rejecting defendants' claim that suppression must automatically follow from a violation

16

of the telephonic warrant procedures, the Seventh Circuit in United States v. Cazares–Olivas

explained that the defendants there, like Simmons here, "received the benefit of a magistrate

judge's impartial evaluation before the search occurred. The search was supported by probable

cause—on a record fixed, and supported by an oath, in advance, to prevent hindsight from being

invoked to justify the search. An agent particularly described the place to be searched and the

things to be seized."   515 F.3d at 729–30.

Accordingly, even assuming the defendant is able to nitpick about the specific process that

the government used to obtain the warrant to search the November 13 Parcel, he cannot identify

any deliberate or intentional conduct to warrant suppression.

**III.**   **CONCLUSION**

For the reasons set forth above, this Court should deny Defendant's Motion to Suppress.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


   _s/ Sozi Pedro Tulante_
SOZI PEDRO TULANTE
Assistant United States Attorney

Dated: September 5, 2014

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA                    :

    **v.**                                                        :                    **CRIMINAL NO. 13-669**

**JAMAHL SIMMONS**                              :

<u>**ORDER**</u>

AND NOW, this            day of                      , 2014, upon consideration of

Defendant Jamahl Simmons's Motion to Suppress, and the government's response thereto, it is

hereby ORDERED that the Defendant's Motion is DENIED.

                            **BY THE COURT:**

                        _____

                        **HONORABLE C. DARNELL JONES II**

                        *Judge, United States District Judge*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion response was served by electronic filing and electronic mail on Robert Miller, Esquire, counsel of record for defendant Jamahl Simmons.


___*s/ Sozi Pedro Tulante*_____
SOZI PEDRO TULANTE
Assistant United States Attorney

Date:    September 5, 2014

**EXHIBIT A**

AO 106 (Rev 7/87)  Affidavit for Search Warrant (K.M.Copeland, Authorizing)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohocken, PA 19428," Priority Mail #9505 5000 1479 3313 0000 72.

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

13-1285-M

I, Sean F. McStravick, being duly sworn, depose and say:

I am a(n) <u>INSPECTOR of the U.S. Postal Inspection Service</u> and have reason to believe that on the person of or on the property or premises known as(name, description and/or location)

One Priority Mail parcel, measuring 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohocken, PA 19428," Priority Mail #9505 5000 1479 3313 0000 72, which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property to be seized)

### Controlled substances

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of a crime

concerning a violation of Title <u>21</u>, United States Code, Section(s) <u>841(a)(1)</u>.
The facts to support a finding of Probable Cause are as follows:

## SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.     [x] Yes     [ ]No

Affiant  Sean F. McStravick, United States Postal Inspector

Sworn to before me, and subscribed in my presence

Philadelphia, PA

_____
11/12/2013
Date
HONORABLE LINDA K. CARACCAPPA
U.S. Magistrate Judge

City and State

Name and Title of Issuing Officer

Signature of Issuing Officer

AO 93 (Rev. 5/85)  Search Warrant ([AUSA Full Name] Authorizing)

**USA-SIMMONS-0039**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**In the Matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6",
addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive
Ste #400, West Conshohoken, PA 19428," Priority Mail #9505 5000
1479 3313 0000 72.

**SEARCH WARRANT**

CASE NUMBER: 13-1285-M

TO:  Agents of the U.S. Postal Inspection Service   and any Authorized Officer of the United States

Affidavit(s) having been made before me by Sean F. McStravick who has reason to believe that  on the person of or **XXX** on the property or premises known as (name, description, and/or location)

One Priority Mail parcel, measuring 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohoken, PA 19428," Priority Mail 9505 5000 1479 3313 0000 72," which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property)

### Controlled Substances

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _November 22, 2013_
                                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) - ~~(at any time in the day or night as I find reasonable cause has been established)~~ and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to HONORABLE LINDA K. CARACAPPA, United States Magistrate Judge  as required by law.

_11/12/2013_          _11:45 A.m_                           Philadelphia, PA
Date and Time Issued                                          City and State
HONORABLE LINDA K. CARACAPPA,
U.S. Magistrate Judge

Name and Title of Issuing Officer                          Signature of Issuing Officer

**USA-SIMMONS-0040**

AO 93 (Rev. 5/85)  Search Warrant

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned to me this date.

_____

U.S. Judge or Magistrate                    Date

**USA-SIMMONS-0041**

# AFFIDAVIT

1.      I, Sean F. McStravick, am a United States Postal Inspector.  I am currently

assigned to the United States Postal Inspection Service, Philadelphia Division.  I have

been employed as a Postal Inspector since April 2012.  Prior to becoming a Postal

Inspector, I was employed as a federal agent with the Department of Homeland Security

for six and one half years.  I have a Masters in Emergency Management from Jacksonville

State University in Jacksonville, Al.  As part of my duties as a United States Postal

Inspector, I investigate the use of the U.S. Mail to illegally transport controlled substances

and drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1),

843(b), and 846.  I have been trained in various aspects of law enforcement, including the

investigation of narcotics offenses.  Through my education and experience and that of

other agents assisting in this investigation, I have become familiar with the methods that

individuals use to traffic narcotics through the U.S. Mail.

2.      Based on my training, and my experience with the U.S. Postal Inspection

Service, and my discussions with other agents about their experience, I have become

familiar with the mechanics of the parcel delivery services and have developed a good

understanding of the appeal these service have for those who choose them for the illegal

transportation of controlled substances.  Parcel delivery services offer rapid and

dependable service for most metropolitan areas.  Parcels are guaranteed for delivery in the

number of specified days, with a refund if the parcel does not meet the service standards.

To the smuggler, the refund is a minor consideration, but parcels delayed beyond the

normal delivery time serve to alert the recipient that the authorities may have discovered

1

USA-SIMMONS-0042

the controlled substances.  Additionally, parcel delivery services use assigned label numbers, which make it easy for the parcels to be traced.  The sender is given a time of shipment, plus the weight of the parcel.

3.       On November 12, 2013, the Philadelphia Division of the U.S. Postal Inspection Service identified a suspect Priority Mail package, Priority Mail number 9505 5000 1479 3313 0000 72 (the "Subject Parcel").  The Subject Parcel was mailed from California, an area known to law enforcement as a source for narcotics and has the following characteristics:

| | |
|---|---|
| Priority Mail No. | 9505 5000 1479 3313 0000 72<br>Measuring approx. 11.25" x 8.75" x 6" |
| Return Address | Dana Kathryn Jewelry<br>12636 Ventura Blvd<br>Studio City, CA 91604 |
| Delivery Address | Blue L.L.C-Four Tower Bridge<br>200 Barr Harbor Drive #400<br>West Conshohoken, Pa 19428 |

4.       Investigation of the delivery address of the Subject Parcel, through the Law enforcement Database "Accurint", showed that the business/name "Blue L.L.C-Four Tower Bridge" is not associated with the delivery address.  The delivery address is associated to a "virtual office" facility operated by a company by the name of Regus Management Group.  From my training and experience, and the experience of other agents, I know that drug dealers who are sending controlled substances by the mail or other package delivery services will often use a fictitious company or a "virtual office"

2

USA-SIMMONS-0043

facility as the delivery address as a method to mask their identity when they are shipping parcels containing controlled substances.

From my training and experience, and the experience of other agents, I know that drug dealers who are sending controlled substances by the mail or other package delivery services will often use an incorrect delivery address and/or a fictitious delivery addressee name when they are shipping parcels containing controlled substances. They use this subterfuge in order to prevent the mailer of the package from being located.

5.      On November 12, 2013, the Subject Parcel was exposed to a drug detection canine named "Kirby," # K-7879A. Kirby is handled by Det. Christine Kelliher #22207 with the Bensalem Township Police Department. Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996. The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year. In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification. Det. Kelliher and K9 Kirby successfully completed the certification and are certified in the detection of the following substances: Marijuana/Hashish, Cocaine hydrochloride/Cocaine base, and Heroin Hydrochloride. Det. Kelliher advised Postal Inspectors that Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel.

6.      The Subject Parcel is presently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

3

7.  Based on the above information which I believe to be true and correct, I believe that the Subject Parcel contains controlled substances sent from Studio City, California to West Conshohoken, Pennsylvania via Priority Mail delivery services, and that the use of the Priority Mail delivery services will facilitate the delivery of the controlled substances.

8.  Because of the sensitive nature of the investigation, an Order is sought sealing the Application, Affidavit, and Search Warrant.

9.  Accordingly, I respectfully request:

a.  The Court to find probable cause and issue a search warrant authorizing the opening and search of the Subject Parcel which is believed to contain controlled substances in violation of Title 21, United States Code, Sections 841(a)(1).

b.  An Order sealing the Search Warrant Application, Affidavit, Search Warrant until further Order of this Court.

Sean F. McStravick
U.S. Postal Inspector

Sworn to and Subscribed Before Me
This 12th day of November, 2013.

HONORABLE LINDA K. CARACAPPA
U. S. Magistrate Judge

4

USA-SIMMONS-0045

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE INSTALLATION AND USE OF CERTAIN ELECTRONIC TRACKING AND ENTRY DETECTION DEVICES AS AIDS TO PHYSICAL SURVEILLANCE | : : : : : : : : | **FILED UNDER SEAL**<br><br>MAGISTRATE<br>NO. 13- *1296 M* |

## O R D E R

AND NOW, this *14th* day of November, 2013, it is hereby

ORDERED

that the attached Motion, Application, Warrant, and any supporting papers are SEALED and

IMPOUNDED until further order of the Court with the exception of two certified copies of the

Warrant to be furnished to authorized agents of the United States Postal Inspection Service.

BY THE COURT:

_____
HONORABLE LINDA K. CARACAPPA
*United States Magistrate Judge*

*FOR DISCOVERY - DO NOT DISSEMINATE; PRODUCED ON JANUARY 14, 2013*

USA-SIMMONS-0084

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE APPLICATION  :
OF THE UNITED STATES OF AMERICA  :       FILED UNDER SEAL
FOR A WARRANT AUTHORIZING THE  :
INSTALLATION AND USE OF CERTAIN  :       MAGISTRATE
ELECTRONIC TRACKING AND ENTRY  :       NO. 13- _1296 м_
DETECTION DEVICES AS AIDS TO PHYSICAL  :
SURVEILLANCE  :

**GOVERNMENT'S MOTION FOR IMPOUNDMENT OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND USE OF CERTAIN ELECTRONIC TRACKING AND ENTRY DETECTION DEVICES, WARRANT, AFFIDAVIT IN SUPPORT THEREOF, AND ALL SUPPORTING PAPERS**

The United States of America, by its attorneys, Zane David Memeger, United

States Attorney for the Eastern District of Pennsylvania, and Sozi Tulante, Assistant United

States Attorney, moves this Honorable Court to impound the application of the United States of

America for a Warrant Authorizing the Installation and Use of Certain Electronic Tracking and

Entry Detection Devices, Warrant, and Affidavit in Support thereof, and all other supporting

papers in the above-captioned matter and sets forth in support thereof the following:

1.    An Application has been made this date by the United States for an Order

authorizing the use of certain electronic tracking and entry detection devices as aids to physical

surveillance.  The application and affidavit setting forth the probable cause for the use of the

electronic tracking and entry detection devices contains information which, if it immediately

becomes public information, with the possible discovery of that information by known and

unknown individuals under investigation, would preclude the government from further

investigation and prosecution of certain persons engaged in drug trafficking.

USA-SIMMONS-0085

**WHEREFORE**, it is respectfully requested that this Honorable Court enter an Order impounding the Application of the United States for a Warrant authorizing the use of certain electronic tracking and entry detection devices as aids to physical surveillance, the Order, the Affidavit in support of the Application, and all other documents in the above-captioned matter until said documents become material to any litigation arising as a result of the use of the electronic tracking and entry detection devices as aids to physical surveillance or until further order of the Court after a hearing thereon.

Respectfully submitted,

**Zane David Memeger**
*United States Attorney*

_____

Sozi Tulante
*Assistant United States Attorney*

FOR DISCOVERY - DO NOT DISSEMINATE:
PRODUCED ON JANUARY 14, 2013

2

USA-SIMMONS-0086

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE APPLICATION       :
OF THE UNITED STATES OF AMERICA      :    **FILED UNDER SEAL**
FOR A WARRANT AUTHORIZING THE       :
INSTALLATION AND USE OF CERTAIN      :    **MAGISTRATE**
ELECTRONIC TRACKING AND ENTRY       :    **NO. 13-** _1296m_
DETECTION DEVICES AS AIDS TO PHYSICAL  :
SURVEILLANCE                                  :

## WARRANT FOR TRACKING AND ENTRY DETECTION DEVICES

To inspectors of the United States Postal Inspection Service:

An application having been made by Sozi Tulante, Assistant United States Attorney, and affidavit under oath having been made before me by Sean F. McStravick, Postal Inspector, United States Postal Inspection Service, and full consideration having been given the matter set forth therein, the Court finds:

(a)    That there is probable cause to believe that known and unknown persons have committed and are committing, within this District and elsewhere, violations of Title 21, United States Code, Sections 841(a)(1), and 846, involving a conspiracy to distribute and to possess with intent to distribute cocaine.

(b)    That there is probable cause to believe that the above-mentioned cocaine was transported in a Priority Mail number 9505500014853316000391 (the "Subject Parcel.") measuring approximately 11.25" x 8.75" x 6" bearing the return address Denis P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607 and the delivery address Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057.", in connection with the commission of the above-described offense by known and unknown persons within this District and elsewhere.

FOR DISCOVERY - DO NOT DISSEMINATE
PRODUCED ON JANUARY 14, 2013

(c)      That this package will be delivered by an undercover law

enforcement agent and may not be opened immediately and may be removed from the premises.

(d)      There is a need to know when the package has been opened and

a need to track the package if it has been moved.

Therefore, pursuant to Rule 41, Fed. R. Crim. P., it is hereby

ORDERED

that inspectors of the United States Postal Inspection Service are authorized to install and

monitor an electronic tracking and entry detection devices which will show when the package is

opened, to include any or all of the following:

(1)      entry detection device, or transponder, also known as a beeper, which will
alert when the container or package is opened;

(2)      GPS (Global Positioning System), which will show the geographic

position of the envelope or package.

It is further ORDERED that inspectors of the United States Postal Inspection

Service may continue the use of such electronic tracking and entry detection devices in operation

to track and locate the ultimate destination(s) where the controlled substances and drug proceeds

will be concealed, stored, transferred, and utilized in the above-described offenses, thereby

leading to the identities of the conspirators and aiders and abettors of the above-described

offenses; and that the use of such electronic tracking and entry detection devices may include

monitoring the devices while located in Fourth Amendment protected areas.

It is further ORDERED that this authorization to install and operate the electronic

tracking and entry detection devices as aids to physical surveillance, and use of the tracking and

entry detection devices must terminate upon attainment of the authorized objectives or, in any

FOR DISCOVERY - DO NOT DISSEMINATE;
PRODUCED ON JANUARY 14, 2013

2

USA-SIMMONS-0088

event, at the end of thirty (30) days from the date of this Order, unless, upon application of the

United States, this Court extends the terminal date of this Order.

It is further ORDERED that pursuant to Title 18, United States Code, Section

3127, inspectors of the United States Postal Inspection Service are authorized to monitor the

electronic tracking and entry detection devices within or without this Court's jurisdiction.

It is further ORDERED that within ten days after the use of the tracking and entry

detection devices has ended, inspectors of the United States Postal Inspection Service shall file a

return on this warrant with the Court and shall serve a copy of the warrant upon the person whose

property was tracked (unless for good cause shown under 18 U.S.C. § 3103a and Rule 41(f)(3),

the Court extends the time for service). The return shall specify the date and time of installation

and operation as well as the date monitoring terminated.

FOR DISCOVERY - DO NOT DISSEMINATE;
PRODUCED ON JANUARY 14, 2013

3

It is further ORDERED that this Warrant, the government's Motion, Application, Affidavit, and all supporting papers be SEALED and IMPOUNDED until otherwise ordered by the Court.

BY THE COURT:

_____
HONORABLE LINDA K. CARACAPPA
*United States Magistrate Judge*

Ordered at  11:15      AM/PM,

this  14th  day of November, 2013.

FOR DISCOVERY - DO NOT DISSEMINATE;
PRODUCED ON JANUARY 14, 2013

4

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY (Include date of termination of surveillance, and whether object tracked was tracked in an area in which the owner/possessor would have a reasonable expectation of privacy.)

FOR DISCOVERY – DO NOT DISSEMINATE; PRODUCED ON JANUARY 14, 2013

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____                                    _____

Subscribed, sworn to, and returned to me this date.

_____                                    _____

_____
U.S. Judge or Magistrate                    Date

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE APPLICATION        :
OF THE UNITED STATES OF AMERICA         :        **FILED UNDER SEAL**
FOR A WARRANT AUTHORIZING THE           :

USA-SIMMONS-0091

INSTALLATION AND USE OF CERTAIN          :          MAGISTRATE
ELECTRONIC TRACKING AND ENTRY            :          NO. 13- 1296 m
DETECTION DEVICES AS AIDS TO PHYSICAL    :
SURVEILLANCE                             :

## APPLICATION

The United States, by and through the undersigned Assistant United States

Attorney, hereby submits this application requesting a Warrant authorizing the installation, use,

monitoring, maintenance, and removal of electronic devices described below, for a period not to

exceed thirty (30) days, as physical surveillance aids on the package described herein, which

package is being used to transport controlled substances by individuals in connection with

violations of Title 21, United States Code, Sections 841(a)(1) and 846  involving conspiracy to

distribute and to possess with intent to distribute cocaine.)  This order is sought under the

authority of Rules 41 and 1(b) of the Federal Rules of Criminal Procedure.

1.      The United States seeks authorization to install, monitor, and use certain electronic

tracking and entry detection devices as aids to physical surveillance, of a Priority Mail number

9505500014853316000391 (the "Subject Parcel.") measuring approximately 11.25" x 8.75" x 6"

bearing the return address Denis F Block and Associates, 5437 Laurel Canyon Blvd, Valley

Village, CA 91607 and the delivery address Jackson Law Group, East Gate Square, 1640 Nixon

Drive, Moorestown, NJ 08057,  which was used to transport controlled substances by the known

and unknown subjects of this investigation.  Such electronic tracking and entry detection devices

will aid physical surveillance operations to track the direction and locate the ultimate destination

and recipient of the package.

The undersigned has discussed this matter with United States Postal Inspector

Sean F. McStravick, who has participated in this investigation, and has examined the affidavit of

USA-SIMMONS-0092

Inspector Sean F. McStravick, attached hereto in support of this application, and states the following:

1.      There is probable cause to believe that a person known and persons unknown have committed or are about to commit offenses constituting violations of Title 21, United States Code, Sections 841(a)(1) and 846.

2.      Probable cause exists to believe that Priority Mail number 9505500014853316000391 (the "Subject Parcel.") measuring approximately 11.25" x 8.75" x 6" bearing the return address Denis P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607 and the delivery address Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057, which, is being used and will continue to be used to facilitate the commission of said violations.

3.      The United States desires to place the above-described tracking and entry detection devices in the package.

4.      United States Postal Inspectors and other law enforcement officers will install and monitor the tracking and entry detection devices, and may require authorization to access the devices in order to conduct necessary maintenance, repairs, adjustments, or replacements for the purpose of maintaining the full and efficient operational capabilities of such devices or to remove such devices on or before the time the objectives of the surveillance are achieved.

FOR DISCOVERY - DO NOT DISSEMINATE; PRODUCED ON JANUARY 14, 2013

5.     The government requests that the government's application, supporting affidavit, and this Court's order relating thereto, be **SEALED**, since disclosure could seriously compromise the investigation and jeopardize the safety of witnesses and government agents.

Respectfully submitted,

**Zane David Memeger**
*United States Attorney*

Sozi Tulante
*Assistant United States Attorney*

Dated: 11/14/2013 .

FOR DISCOVERY - DO NOT DISSEMINATE; PRODUCED ON JANUARY 14, 2013

13- 12964

# AFFIDAVIT

I, SEAN F. MCSTRAVICK, being duly sworn, depose and say:

I, Sean F. McStravick, am a United States Postal Inspector.  I am currently assigned to the United States Postal Inspection Service, Philadelphia Division.  I have been employed as a Postal Inspector since April 2012.  Prior to becoming a Postal Inspector, I was employed as a federal agent with the Department of Homeland Security for six and one half years.  I have a Masters in Emergency Management from Jacksonville State University in Jacksonville, Al.

As part of my duties as a United States Postal Inspector, I investigate the use of the U.S. Mails and private carriers illegally to transport controlled substances and drug trafficking instrumentalities, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.  I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses.  Through my education and experience, and that of other agents, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mails.

FOR DISCOVERY - DO NOT DISSEMINATE
PRODUCED ON JANUARY 14, 2015

USA-SIMMONS-0095

1.          This Affidavit is made in support of an order to install and monitor, in private areas, including but not limited to private residences and vehicles, a beeper transponder device and a Global Positioning System ("GPS") device, both which will be placed in Priority Mail Parcel Number 9505500014853316000391, during a controlled delivery of the parcel to the premises located at 1640 Nixon Drive, Moorestown, NJ 08057, for crimes against the United States, specifically, in violation of Title 21, United States Code, Sections 841 and 843(b).

2.          This affidavit is based upon my personal knowledge, experience and training, and other information developed during the course of this investigation.  This affidavit is also based upon information and experience imparted to me by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of establishing probable cause and securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 843(b), have been committed and that the parcel addressed to "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057" contains evidence of these violations and contraband.

I.     **BACKGROUND**

3.          Based upon my training and experience, I know that drug traffickers often use any means available to them to transport narcotics.  One common method of smuggling drugs is to ship narcotics via the United States Mails, including Priority Mail parcels used for scheduled delivery, and other overnight carriers.  In addition, I know that drug traffickers

FOR DISCOVERY - DO NOT DISSEMINATE
PRODUCED ON JANUARY 14, 2013

**USA-SIMMONS-0096**

commonly maintain books, records, receipts, notes, ledgers, electronic data, and other items relating to the importation, transportation, ordering, purchase, and distribution of illegal drugs at their residence or at the location at which their trafficking activities are being conducted.

4.          In connection with the transportation of drugs, I know that frequently drug traffickers maintain evidence of travel and other records required to arrange for the purchase and importation and distribution of such drugs, and keep tickets, notes, receipts, passports and other documents at their residence or the location where they conduct trafficking activities. I know that drug traffickers maintain records and other documents related to the possession, shipment, tracking and delivery of illegal controlled substances at the location where their drug trafficking activities occur. I know that indicia of occupancy, residency and ownership of premises, including but not limited to utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents and keys are often maintained at such drug trafficking locations.

5.          Further, I know that drug traffickers frequently know others involved in the trafficking of illegal substances, and address and/or telephone books, rolodex indicia, electronic organizers, telephone paging devices and the memory thereof, and papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply and drug customers, and other items are frequently maintained by such traffickers which provide evidence of the identities of others involved in such trafficking.

6.          I also know that drug traffickers frequently use aliases to conceal their identities, and often possess firearms and other weapons at the premises where they conduct drug trafficking. Persons who traffic in drugs often maintain at their residences and other

FOR DISCOVERY - DO NOT DISSEMINATE - PRODUCED ON JANUARY 14, 2013

locations where they conduct drug trafficking activities unsold or undistributed supplies of

controlled substances and other drugs, drug paraphernalia including chemical dilutents,

weighing scales, mixing bowls, glassine bags, spoons, which are utilized in the weighing and

packaging of controlled substances.

## II.   FACTS ESTABLISHING PROBABLE CAUSE

7.     On November 13, 2013, the Philadelphia Division of the U.S. Postal Inspection Service

identified a suspect Priority Mail package, Priority Mail number 9505500014853316000391 (the

"Subject Parcel.") measuring approximately 11.25" x 8.75" x 6" bearing the return address Denis

P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607 and the delivery

address Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057.

8.     Investigation of the delivery address of the Subject Parcel, through the Law enforcement

Database "Accurint", showed that the business/name "Jackson Law Group" is not associated

with the delivery address. The delivery address is a "UPS Store" which is a Commercial Mail

Receiving Agent (CMRA). From my training and experience, and the experience of other agents,

I know that drug dealers who are sending controlled substances by the mail or other package

delivery services will often use a CMRA as the delivery address as a method to mask their

identity when they are shipping parcels containing controlled substances.

9.     On November 13, 2013, the Subject Parcel was exposed to a drug detection canine named

"Kirby," # K-7879A.  Kirby is handled by Det. Christine Kelliher #22207 with the Bensalem

Township Police Department.  Det. Kelliher has been with the Bensalem Township Police

FOR DISCOVERY - DO NOT DISSEMINATE PRODUCED ON JANUARY 14, 2015

USA-SIMMONS-0098

Department since 1992 and she has been a K9 handler since 1996.  The Bensalem Township

Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and

K9 Kirby have ongoing maintenance training every month during the year.  In April 2013, Det.

Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector

Dog Certification.  Det. Kelliher and K9 Kirby successfully completed the certification and are

certified in the detection of the following substances: Marijuana/Hashish, Cocaine

hydrochloride/Cocaine base, and Heroin Hydrochloride.  Det. Kelliher advised Postal Inspectors

that Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel.

10.     On November 13, 2013, the Honorable LINDA K. CARACCAPPA, U.S. Magistrate

Judge for the Eastern District of Pennsylvania, issued a federal search warrant to search Priority

Mail Parcel No. 9505500014853316000391.  Postal Inspectors opened the parcel and found the

box to green packing peanuts, and one manila envelope.  The manila envelop was found to

contain a brick shaped object which was wrapped in carbon paper.  Located inside the brick

shaped object was a white powdery substance.  The white powdery substance field tested positive

for the presence of cocaine with an approximate total weight of 2 pounds, 12.1 ounces

(approximately 1 kilogram). The estimated street value of one kilogram of cocaine is $100,000

US Dollars, if broken down for distribution in user quantities.

11.     The parcel and its contents are presently located at the United States Postal Inspection

Service Narcotics Office within the Eastern District of Pennsylvania in Bala Cynwyd, PA.

12.     Then, a U.S. Postal Inspector posing as a Postal Letter Carrier will deliver Priority Mail

FOR DISCOVERY - DO NOT DISSEMINATE
PRODUCED ON JANUARY 14, 2013

Parcel No. 9505500014853316000391 to 1640 Nixon Drive, Moorestown, NJ 08057. At this time, law enforcement does not know who or how many people reside inside the Subject Location. Based upon my training and experience, and because it is difficult to determine precisely when the recipient or intended recipient will open the subject parcel to retrieve the substance inside, this application seeks permission for law enforcement to install an entry detection or transponder device, also known as a beeper, and a GPS tracking device, within the parcel. Law enforcement will then deliver the parcel with the substance contained inside along with the tracking devices, and will use the devices to monitor the whereabouts of the parcel in question at all times, including those times when the package has entered the Subject Location or other private property. The beeper device will also reveal if, and when, the package is opened.

13.     These devices are transmitters only and will not monitor voice conversations. The beeper will emit a signal when the parcel is opened, which will alert law enforcement as to the moment the parcel is opened. Because law enforcement expects that the parcel will be taken into a private residence when the parcel is accepted, authority is sought to monitor the signals of the transponder in private areas, such as buildings, residences and other like closed structures, which are not public (including but not limited to the subject location at 1640 Nixon Drive, Moorestown, NJ 08057).

14.     It has been the experience of law enforcement that the intended recipients of parcels containing illegal narcotics often have the drug parcels mailed to addresses they are not associated with, in order distance them from being arrested during a controlled delivery. In those situations, after the delivery is made, the signor generally drives the drug parcel to another location, or the intended recipient picks up the parcel and drives it to another location.

15.     At this time, law enforcement does not know the ultimate destination of the parcel. Thus,

this application seeks permission for law enforcement to install a GPS tracking device within the parcel. Law enforcement will then deliver the parcel with the substance contained inside along with the GPS, and will use the GPS to monitor the whereabouts of the parcel in question at all times, including those times when the package has entered the residence or other private property, including at its ultimate destination. The GPS device will allow law enforcement to follow the parcel if, and when, the package is taken to another location.

16.     Although members of law enforcement will deliver the parcel during daylight hours, they do not know when the parcel will be opened by the intended recipient or recipients. At the moment law enforcement officers are notified by beeper that the package has been opened inside the premises, individuals opening the package may discover that the package has been altered and that a beeper has been placed inside the package. As a result, they may destroy evidence or otherwise take actions which would prevent law enforcement from recovering evidence located inside the premises or to otherwise identify individuals involved in criminal activity. Accordingly, since the package may be opened after daytime hours and may result in the destruction of evidence, additional authority is sought to enter and search the subject location at 1640 Nixon Drive, Moorestown, NJ 08057 if the transponder emits a signal from inside the subject premises between the hours of 10:00 pm and 6:00 am.

17.     Because of the sensitive nature of the investigation, an Order is sought sealing the Application, Affidavit, and Tracking Device Order.

18.         This Application requets order permitting law enforcement to monitor, in

private areas, the signals emitted by a beeper device, which will be installed in the subject

parcel to alert law enforcement when the parcel is opened; and an order permitting law

enforcement to monitor the signals emitted by a GPS, in private areas, which will be

installed in the subject parcel to alert law enforcement to the location of the parcel.

         a.         An Order sealing the Tracking Device Order until

further Order of this Court.

_____

Sean F. McStravick

U.S. Postal Inspector

Sworn and subscribed before me

this _____ day of November 14, 2013:

BY THE COURT:

_____

HONORABLE LINDA K. CARACAPPA

*United States Magistrate Judge*

FOR DISCOVERY - DO NOT DISSEMINATE; PRODUCED ON JANUARY 14, 2014

USA-SIMMONS-0102