IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

         v.                  :          **CRIMINAL NO. 13-669**

JAMAHL SIMMONS           :

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO THE DEFENDANT'S MOTION TO SUPPRESS

Presently before the Court is the defendant Jamahl Simmons's motion to suppress cocaine and other physical evidence seized by United States Postal Inspectors when they executed search warrants approved by a federal magistrate judge in this case. The defendant believes that this evidence was obtained on the strength of warrants that lacked probable cause and were otherwise infirm. He is mistaken. As the government describes in some detail below, the search warrants were backed by ample probable, they were properly issued, and, in any event, the Inspectors properly relied on them in good faith. For the reasons articulated in this response, his motion should be denied.

## I.      BACKGROUND

### A.    Procedural Background

Simmons is charged in the Second Superseding Indictment with six offenses, including conspiracy to distribute five kilograms or more of cocaine from October 2012 to November 21, 2013. As described in the Indictment, during the conspiracy the defendant mailed Priority Mail parcels filled with cocaine from the Los Angeles area to the Philadelphia area. When these parcels arrived in this area, they were picked up by his cousin, R.S.M., and delivered to Simmons or, in Simmons's absence, to other individuals, such as Stacey Epps or Kenneth Griffin. Simmons and

his associates then distributed the cocaine to customers in Philadelphia and received proceeds in exchange. Three of these Priority Mail parcels, containing a total of five kilograms of cocaine, were successfully intercepted by Postal Inspectors, resulting in the arrest of Kenneth Griffin and Stacey Epps on November 13 and November 14, 2013.

In the investigation of Simmons and his confederates, Postal Inspectors sought and obtained multiple federal search warrants and tracker warrants for his residence, his business, his telephones, his vehicle, and, of course, the three Priority Mail parcels that they intercepted. During these searches, the government seized approximately five kilograms of cocaine, two guns, cash, drug paraphernalia, packing materials, and other physical evidence, all of which will be presented against him at his trial.

    B.    Factual Background

        1.  Search Warrant for the November 12 Parcel

This investigation began with information from a confidential informant ("CI") who informed Postal Inspectors that he/she had known Jamahl Simmons for ten years and that, among other things, Simmons was receiving packages in the US Mail at a smoke shop called Smoke Signals. The CI advised law enforcement that, among other things, Simmons was distributing marijuana, cocaine, and heroin, and recalls seeing Simmons opening up U.S. Mail parcels packed with white powder, which the CI knew to be cocaine. Agents corroborated the CI's information about Simmons and began to examine if Simmons had mailed any packages using U.S. Mails.

The first package intercepted was a U.S. Priority Mail parcel mailed on November 12, 2013. On that day, members of the Philadelphia Division of the U.S. Postal Inspection Service identified a Priority Mail package, Priority Mail number 9505 5000 1479 3313 0000 72 (the "November 12 Parcel") measuring 11.25" x 8.75" x 6" bearing the return address of "Dana Kathryn Jewelry, 12636 Ventura Blvd., Studio City, CA 91604" and the delivery address of "Blue

L.L.C-Four Tower Bridge, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428" (the "November 12 Parcel").

Postal Inspector Sean McStravick prepared an affidavit to support an application for a federal search warrant for the November 12 Parcel. (Attached as Exhibit A is a copy of the affidavit, search warrant application, and search warrant which was issued for the November 12 Parcel in case 12-285-M). Inspector McStravick's Affidavit detailed his training and experience investigating narcotics offenses and his familiarity with the methods that drug dealers use to send narcotics though the U.S. Mail. <u>See</u> Exhibit A at paragraph 1, USA-SIMMONS-0042. He also outlined why drug dealers use parcel delivery services to ship narcotics. <u>Id.</u> at paragraph 2, USA-SIMMONS-0042-43. As detailed in the affidavit, Inspector McStravick explained that the delivery address of the November 12 Parcel, through a review of Law enforcement Database, "Accurint," showed that the business/name "Blue L.L.C-Four Tower Bridge" is not associated to the delivery address. <u>Id.</u> at paragraph 2, USA-SIMMONS-0042. According to the affidavit, the delivery address is associated to a "virtual office" facility operated by Regus Management Group, which is significant because, in his training and experience, Inspector McStravick knew that drug dealers often use virtual offices to mask their identity when shipping parcels containing narcotics. <u>Id.</u> at paragraph 4, USA-SIMMONS-0042-43.

His affidavit also explained that the November 12 Parcel was exposed to a drug-detection canine named "Kirby," # K-7879A, who is handled by Detective Christine Kelliher with the Bensalem Township Police Department. The affidavit described both Detective Kelliher's and Kirby's background. Specifically, Inspector McStravick wrote:

> Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996. The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year. In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification. Det. Kelliher and K9 Kirby successfully completed the certification and are

certified in the detection of the following substances: Marijuana/Hashish, Cocaine
hydrochloride/Cocaine base, and Heroin Hydrochloride.

Id. at paragraph 5, USA-SIMMONS-0044. He also wrote that that, according to Detective
Kelliher, after being exposed to the parcel, Kirby gave a positive indication for the presence of
illegal narcotics inside the November 12 Parcel.

After the affidavit and search warrant application was approved by the U.S. Attorney's
Office, it was presented to the Honorable Linda K. Caracappa, U.S. Magistrate Judge for the
Eastern District of Pennsylvania. Judge Caracappa then issued a search warrant permitting Postal
Inspectors to open and search the November 12 Parcel. See Exhibit A at USA-SIMMONS-0039.
Postal Inspectors then opened the parcel. Inside, they retrieved a manila bag/envelope, which
contained a black brick-shaped object covered in carbon paper. This brick-shaped object contained
two additional brick-shaped objects which had the same picture of a pig on them. Located inside
each brick-shaped object was a white powdery substance. A lab test later confirmed that the white
powdery substance was in fact cocaine and weighed approximately 2,000.7 grams.

Having retrieved the cocaine, agents applied for and obtained from a U.S. Magistrate Judge
for the Eastern District of Pennsylvania, an Order authorizing the installation of a tracking and a
detection device with regard to the November 12 Parcel. Thereafter, U.S. Postal Inspectors
installed a global position system ("GPS") tracker and a beeper inside the package to detect when
the package was opened. Inspectors also replaced a portion of the cocaine in the parcel with
substitute material that was made to appear like actual cocaine. On November 13, 2013, inspectors
witnessed as the sham/cocaine material was delivered to the "virtual office" facility at the Regus
Management Group, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428. Subsequently,
it was picked up by Simmons's cousin, R.S.M., who delivered it to Kenneth Griffin. Griffin
opened the parcel and was arrested and charged in another matter.

4

2.  Search Warrant for the November 13 Parcel

The next package intercepted was on November 13, 2013.  On that day, Postal Inspectors identified a Priority Mail package with Priority Mail number 9505500014853316000391 measuring approximately 11.25" x 8.75" x 6" bearing the return address of "Denis P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607" and the delivery address of "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057" ("November 13 Parcel").

Inspector McStravick prepared an affidavit for an application for a federal search warrant, captioned as 12-294-M, to open the November 13 Parcel.  (Attached as Exhibit B is a copy of the affidavit, search warrant application, and search warrant issued in 12-294-M).  He explained in his affidavit that, according to Accurint, the business/name "Jackson Law Group" is not associated with the delivery address, which was a "UPS Store" and is known as a Commercial Mail Receiving Agent (CMRA).  See Exhibit B at paragraph 4, USA-SIMMONS-0076.  He explained that, based on his training and experience, and the experience of other agents, that drug dealers who send controlled substances by the mail or other package delivery services often use a CMRA as the delivery address as a method to mask their identity.  Id. Like the affidavit for the search warrant for the November 12 Parcel, Inspector McStravick provided similar details in the affidavit for the November 13 Parcel.  He outlined his background, experience, and training; the background and training of both Detective Kelliher and Kirby; and also indicated that, according to Detective Kelliher, Kirby gave a positive indication for the presence of illegal narcotics inside the November 13 Parcel.  See generally Exhibit B from USA-SIMMONS-0075 to SIMMONS-0077.

Inspector McStravick then presented the affidavit to the U.S. Attorney's Office for review. When the affidavit and search warrant application was approved by a prosecutor from the US Attorney's Office, the prosecutor contacted the duty magistrate, Honorable Linda K. Caracappa,

U.S. Magistrate Judge for the Eastern District of Pennsylvania.  Judge Caracappa then directed the prosecutor to send to her the search warrant application, proposed search warrant, and affidavit by electronic mail for review, which the prosecutor did.  When she completed her review of the materials, she called the prosecutor who was with Inspector McStravick.  Judge Caracappa then confirmed that no changes had been made to the materials sent to her, administered an oath to Inspector McStravick and asked him to sign the affidavit, and then directed the prosecutor, on her behalf, to sign and date the search warrant, search warrant application, and the last page of the affidavit where the Judge would normally attest to the agent's signature.  In all there places, the prosecutor signed as follows: "11/13/2013 at 9:20 p.m., Telephone Authorization, Sozi Tulante."  See Exhibit B at USA-SIMMONS-072 (search warrant application), USA-SIMMONS-073 (search warrant); USA-SIMMONS-078 (affidavit).

Later that evening, Postal Inspectors opened the November 13 Parcel and found inside green packing peanuts and one manila envelope, which contained a brick-shaped object wrapped in carbon paper.  Located inside the brick-shaped object was a white powdery substance.  A subsequent lab test confirmed that the substance was in fact cocaine and weighed approximately 1,003.1 grams.

The next day, the agent and the prosecutor went to see Judge Caracappa and she personally swore out the agent again and signed the search warrant application and the affidavit.  See Exhibit B at USA-SIMMONS-072 (search warrant application) and USA-SIMMONS-078 (affidavit).

## II.   ARGUMENT[1]

Simmons moves this Court to suppress the cocaine seized from the November 12 Parcel and November 13 Parcel, baldly claiming that the affidavits in support of those warrants failed to establish probable cause and were riddled with misstatements of facts.[2]  He also contends that the search warrant for the November 13 Parcel was not signed and should be suppressed on that basis, too.  Each argument fails.  There was ample probable cause to support the opening of the parcels, there were no factual misstatements, and the government followed the proper procedures to obtain the search warrant for the November 13 Parcel.  Moreover, Inspector McStravick relied in good faith on the issuance of the search warrants.  For these reasons, which are described more fully below, the defendant's Motion to Suppress should be denied.

---

[1]     The defendant, in passing, makes other wild, sinister, and vague claims for suppression in the motion, though he does not identify with any particularity the searches he is referring to, the evidence to be suppressed, or the factual and legal basis for suppression.  His failure to do so runs afoul of this Court's Order, dated June 19, 2014, denying his earlier motion to suppress without prejudice to him refiling the motion and describing with particularity the evidence to be suppressed and the specific reasons for suppression.  Consequently, the government will not – and cannot – respond to the vague grounds he asserts in his motion.  But the government will briefly address his belief that his arrest was without probable cause.  See Defendant's Motion at ¶ 1(a).  This argument should be rejected as the grand jury ultimately issued an indictment which supplied probable cause to support his arrest.  See Jones v. Cannon, 174 F.3d 1271, 1287 (11th Cir. 1999) (stating that grand jury indictment "broke the chain of causation" for claim based on alleged false arrest); Kaley v. United States, 134 S.Ct. 1090, 1100 (2014) (explaining that "an indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.")(internal quotations and citations omitted).

[2]     The defendant also seeks to suppress evidence obtained from a Priority Mail parcel #42019428950550001485330100689.  See Defendant's Motion at ¶ 8.  That parcel, however, was neither exposed to a drug-detection canine nor opened.  It was delivered on October 31, 2013, to a "virtual office" facility operated by Regus Management Group and agents observed as it was picked up by R.S.M. that same day.  Since that parcel was never searched and no evidence seized from that parcel, the government will not address that parcel in this response.  He also claims that the Court should suppress evidence from the tracker warrant on the November 13 Parcel in Magistrate No. 13-1296.  Id. at ¶ 10.  The government never delivered the November 13 Parcel or executed the tracker warrant issued for that parcel.  Accordingly, the government will not address the arguments that the defendant raises in connection with that tracker warrant because there is no evidence for the Court to suppress.

A.    The Search Warrants were Supported by Probable Cause

A search conducted pursuant to a search warrant should be upheld if the judicial officer who issued the warrant has a substantial basis for concluding that probable cause existed for the search. Illinois v. Gates, 462 U.S. 213, 238-39 (1983).   This Court's review of an initial probable cause determination should be deferential and limited: "A magistrate's determination of probable cause should be paid great deference by reviewing courts.   United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993)(internal quotations omitted).   "The duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for...concluding' that probable cause existed." Gates, 462 U.S. at 238, quoting Jones v. Unites States, 362 U.S. 257, 271 (1960).

In evaluating a search warrant, the Court should keep in mind that,

> [t]he task of the issuing magistrate is simply to make a practical,
> common sense decision whether, given all the circumstances set forth
> in the affidavit before him, including the 'veracity' and 'basis of
> knowledge' of persons supplying hearsay information, there is a fair
> probability that contraband or evidence of a crime will be found in a
> particular place. And the duty of a reviewing court is simply to
> ensure that the magistrate had a 'substantial basis for ... [concluding]'
> that probable cause existed.

Gates, 462 U.S. at 238, quoting Jones v. United States, 362 U.S. at 271.  A reviewing court is not to make its own probable cause assessment, but should "determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993).  This rule reflects the preference for warrants stated in the Fourth Amendment.

In determining whether probable cause exists for the issuance of a search warrant, a court looks to the "totality of the circumstances." Gates, 462 U.S. at 238.  A probable cause finding does not require that it be "more likely than not" that the evidence will be found in the place described. See Texas v. Brown, 460 U.S. 730, 742 (1983) (probable cause "does not demand any showing that

8

such a belief be correct or more likely true than false"); United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987), citing United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983) (probable cause does not require proof "that it is more probable than not that a crime has been or is being committed"). Probable cause simply requires a "fair probability" that evidence will be found. Gates, 462 U.S. at 238; United States v. Shecter, 717 F.2d 864, 869 (3d Cir. 1983). Furthermore, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Gates, 462 U.S. at 237 n.10, citing United States v. Ventresca, 380 U.S. 102, 109 (1965).

Here, there was more than enough probable cause to justify the issuance of the search warrants for the November 12 Parcel and November 13 Parcel. The affidavits make clear that each package was exposed to a trained, certified drug-detection canine that, according to its trained and experienced handler, gave a positive indication for the presence of controlled substances in each package. As the Third Circuit has held, "it is clear that the drug dog's alert would present probable cause for a search." Karnes v. Skrutski, 62 F.3d 485, 498 (3d Cir. 1995).[3] Therefore, the canine alert, standing alone, offered the Magistrate Judge a substantial basis for determining that there was

---

[3]     Other federal appellate courts, like the Third Circuit, have universally embraced the proposition that, without more, a positive alert from a trained drug dog is enough to establish probable cause to search. See, e.g., United States v. Branch, 537 F.3d 328, 340 (4th Cir. 2008) (noting that it was well-settled that a positive alert by a drug detection dog, in and of itself, provides probable cause to search); United States v. Stewart, 473 F.3d 1265, 1270 (10th Cir. 2007) ("A canine alert gives rise to probable cause to search a vehicle"); United States v. Gonzalez, 328 F.3d 755, 759 (5th Cir. 2003) (the positive alert of a properly trained drug detecting dog, standing alone, provides probable cause to support a search); United States v. Sunby, 186 F.3d 873, 875-76 (8th Cir. 1999) (dog sniff of a reliable dog resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present); United States v. Hillison, 733 F.2d 692, 696 (9th Cir. 1984) (alert of drug-detecting dog creates probable cause that a package contains illicit drugs); United States v. Robinson, 707 F.2d 811, 815 (4th Cir. 1983) (detection of narcotics by a trained dog is generally sufficient to establish probable cause).

probable cause to believe that drug-related evidence was present in each of the parcels and to authorize the search of the parcels.

Moreover, the neutral Magistrate Judge was entitled to rely on the other averments presented in the affidavits by Inspector McStravick in determining that, in the totality of circumstances, there was probable cause to search each parcel. As noted above, Inspector McStravick only asked for the drug dog after gathering a number of facts that raised his suspicions about the contents of the parcels. For instance, he explained that, in his training and experience, drug dealers often use virtual offices or CRMAs to send controlled substances so that they can disguise their identity and illegal activities. He added that the parcels originated from California, which is a source area for cocaine. Thus the dog's positive alert only substantiated the other facts known to Inspector McStravick, which informed his belief that drug-related evidence would be found in these parcels. See United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (acknowledging that the Supreme Court has "accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he observed in his experience, almost to the point of permitting it to be the focal point of the analysis."); Burton, 288 F.3d at 99 (the facts in a probable cause analysis must be viewed "through the lens of the [officers'] significant experience with similar transactions").

In the face of this evidence, the only argument that the defendant can muster is to vaguely claim that the affidavit contained some unidentified misstatements of material fact. However, the only material fact that he can point to is his conclusory belief that the certification of the well-trained canine and his similarly experienced handler was somehow not to be trusted. Yet, he offers not a shred of evidence for his misplaced suspicion and does not rebut the detailed recitation by Inspector McStravick regarding the canine's continuing training and certification. Cf. United

States v. Rivera, 347 Fed.Appx. 833, 837–39 (3d Cir. 2009) (approving of warrant based on affidavit of probable cause that was silent on drug dog's training and certification).

In short, applying the deferential review of the Magistrate Judge's initial probable cause determination, this Court should find that the information contained in the affidavits presented to the Magistrate Judge and the normal inferences drawn therefrom, gave the Magistrate Judge a substantial basis for concluding that probable cause existed to issue the search warrants. Accordingly, defendant's motion to suppress the evidence recovered from these parcels and any other fruits of these searches should be denied.

> B.    The Government Properly Obtained the Search Warrant for the November 13 Parcel

As his fallback argument, the defendant finds fault with the search warrant issued to open the November 13 Parcel because, he opines, the warrant was "never signed by a United States District Court Magistrate or Judge." Defendant's Motion at ¶ 9. In so arguing, the defendant overlooks Fed. R. Crim. P. 4.1, which authorizes telephonic search warrants, such as the search warrant for the November 13 Parcel.

Federal Rule of Criminal Procedure 41(d)(3) provides that "[i]n accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means." Fed.R.Crim.P. 41(d)(3). Telephonic warrants are nothing new. They existed in the former Rule 41(d)(3) and (e)(3) and, effective December 2011, were moved to Rule 4.1, which "brings together in one Rule the procedures for using a telephone or other reliable electronic means to apply for, approve, or issue warrants[.]" Advisory Committee Notes on Rule 4.1. See also Fed.R.Crim.P. 4.1(a) ("A magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons.")

Rule 4.1(b) lays out the procedures for proceeding under the rule.[4]  First, "[t]he just must place under oath – and may examine—the applicant and any person on whose testimony the application is based."  Fed.R.Crim.P. 4.1(b)(1).  The rule then states that, when creating a record fo the testimony and exhibits, if the "applicant does no more than attest to the contents of a written affidavit submitted by reliable electronic means, the judge must acknowledge the attestation in writing on the affidavit."  Fed.R.Crim.P. 4.1(b)(2).   The applicant must then "prepare a proposed duplication original of a . . . warrant . . . and must read or otherwise transmit its contents verbatim to the judge."  Fed.R.Crim.P. 4.1(b)(3).  And, as here, "[i]f the applicant transmits the contents by reliable electronic means, the transmission received by the judge may serve as the original."  Fed.R.Crim.P. 4.1(b)(4).  Finally, to issue the warrant, the judge must:

> (A) sign the original documents;
>
> (B) enter the date and time of issuance on the warrant . . .; and
>
> (C)  transmit the warrant . . . by reliable electronic means to the applicant or direct the applicant to sign the judge's name and enter the date and time on the duplicate original.

Fed.R.Crim.P. 4.1(b)(6).

The government followed the procedures above in substance.  As set out above, when the affidavit was ready for Magistrate Judge Caracappa's review, the affidavit, the search warrant application, and proposed search warrant was transmitted to her by "reliable electronic means," that is, by electronic mail.  Judge Caracappa then participated in a telephone conference call with the prosecutor and Inspector McStravick, and, upon reviewing these documents and confirming that she had no changes, placed Inspector McStravick under oath and found that there was probable cause to issue the warrant to search the November 13 Parcel.  Pursuant to Fed.R.Crim.P. 4.1(b)(4)(C), Judge Caracappa then directed that the prosecutor indicate in the search warrant application, search warrant duplicate original, and affidavit that it was authorized by her telephonically and the time and date of

---

[4]      These procedures were formerly enumerated in Fed.R.Crim.P. 41(e)(3).

that authorization.

C.    The Postal Inspectors Relied In Good Faith on a Facially Valid Warrants.

Even if this Court finds that the affidavits did not contain sufficient probable cause to support the issuance of the warrants, or that the government did not abide specifically with the procedure under Rule 4.1, the evidence recovered should not be suppressed because the officers acted in good faith in executing the facially valid warrants.

As the Third Circuit has held, evidence seized pursuant to a warrant should not be suppressed "when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993).  The purpose of the exclusionary rule is to deter unlawful police conduct.  United States v. Leon, 468 U.S. 897, 906 (1984).  The Supreme Court cautioned in Leon that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  468 U.S. at 922 (citations omitted).

Thus, if an officer has obtained a warrant and executed it in good faith, "there is no police illegality and thus nothing to deter."  Id. at 921.  The fact that an officer executes a search pursuant to a warrant is prima facie evidence of good faith.  Hodge, 246 F.3d at 308.  Likewise, the mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.  Leon, 468 U.S. at 922; Williams, 3 F.3d at 74.

In evaluating an officer's reliance on a warrant, a court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (citations omitted); see also United States v. $92,422.57, 307 F.3d 137, 145-46 (3d Cir. 2002).  The Third

Circuit has identified four circumstances in which this exception would not apply: if (1) the magistrate judge issued the warrant in reliance on a deliberately false or recklessly false affidavit; (2) the magistrate judge has not performed his duties in a neutral and detached manner; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is facially deficient in failing to particularize the place to be searched or the things to be seized.  Williams, 3 F.3d at 74 n.4 (citations omitted).

Simmons, here, does not contend that the Magistrate Judge failed to act in a detached manner or that the warrant failed to particularize the place to be searched.  To the extent that Simmons reaches any of these factors in his brief, he does so by claiming that Judge Caracappa issued the warrant by relying on recklessly false assertions in the affidavit and that there was no probable cause.  As shown above, each of these arguments falls short.  For one thing, the warrants were supported by probable cause.  For another thing, the defendant cannot even identify any falsities in the affidavits, let alone that there was any false information calculated to deceive the magistrate.  See United States v. Calisto, 838 F.2d 711, 715 (3d Cir. 1988) (declining to hold that Franks allows a challenge to a warrant where omission "was occasioned not by a scheme to deceive the magistrate about a material fact, but by a desire to withhold a fact not material to the magistrate's task").

Given the information in the affidavits, including the positive dog alert, and their approval by a detached judicial officer, the inspectors' reliance on the warrants was entirely reasonable.  In sum, the conduct here does not warrant the strong medicine under the exclusionary rule.  Herring v. United States, 129 S.Ct. 695, 700, 702 (2009) (emphasizing that exclusion "has always been our last resort, not our first impulse" and limiting it to instances where police conduct is sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system").

14

As the record lays bare, there is no misconduct here, let alone the malicious, deliberate misconduct sufficient to trigger the exclusionary rule, and exclusion will not further the deterrent goals that the exclusionary rule is intended to advance.   The search warrants were approved by an Assistant United States Attorney and a neutral magistrate and the postal inspectors had every right to rely in good faith on the thoroughly vetted and judicially approved warrant.  See, e.g., United States v. Singh, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of motion to suppress due to applicability of good faith exception); United States v. Kepner, 843 F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in good faith on valid search warrant).

Likewise, the defendant's insistence on suppression of the cocaine seized from the November 13 Parcel for any technical violations of Rule 4.1 is insupportable.  There is no question, as shown above, that there was ample probable cause to support the search warrant for the November 13 Parcel.  But the defendant maintains that this Court elevate form over substance and give him a windfall by suppressing the cocaine from the November 13 Parcel because the government did not follow Rule 4.1 to the letter.  His position should be rejected.

To begin with, Rule 4.1 makes clear that suppression is an extraordinary remedy.  See Rule 4.1(c) ("Suppression Limited.  Absent a finding of bad faith, evidence obtained from a warrant issued under this rule is not subject to suppression on the ground that issuing the warrant was unreasonable under the circumstances.")  Case law interpreting Rule 41, which preceded Rule 4.1 and formerly provided for the issuance of search warrants by "telephonic or other means," makes clear that suppression is unwarranted in the absence of bad faith under Leon and its progeny.  See e.g. United States v. Cazares–Olivas, 515 F.3d 726, 729–30 (7th Cir. 2008) (cocaine seized from a residence, based on a telephonic authorization to search and with no written warrant, not subject to suppression under the exclusionary rule); United States v. Hessman, 369 F.3d 1016, 1018–23 (8th

Cir.2004) (applying <u>Leon</u> where search warrant was issued by telephone and fax but officer had not signed the warrant application and the magistrate did not place the officer under oath or talk to him about the facts supporting the application before signing the warrant and faxing it back to the officer for execution); <u>United States v. Chaar</u>, 137 F.3d 359, 362–64 (6th Cir. 1998) (police officer's reliance on telephonic warrant was in good faith and objectively reasonable even though the warrant did not comply with Rule 41's recording and transcription requirements); <u>United States v. Clyburn</u>, 24 F.3d 613, 617 (4th Cir. 1997) (Fourth Amendment does not require that statements made in support of probable cause be tape recorded or otherwise placed on the record or made a part of the search warrant affidavit); <u>United States v. Richardson</u>, 943 F.2d 547, 548, 550–51 (5th Cir.1991) (reversing the district court's decision to suppress where the agent had not signed the affidavit and the judge, in a telephone conversation, did not require an oath or affirmation of the facts in the affidavit); <u>Mills v. Graves</u>, 930 F.2d 729, 734 (9th Cir.1991) (upholding a telephonic search warrant despite the fact that the officer's oath was taken five days after the search); United States v. Rome, 809 F.2d 665, 668–71 (10th Cir.1987) (suppression of evidence obtained from telephonic search warrant, issued in violation of Rule 41, would not serve the "remedial objectives" of the exclusionary rule, as approved by Leon ); <u>United States v. Kelley</u>, 140 F.3d 596, 604 (5th Cir.) (concluding that suppression would not serve a deterrent purpose where the search was conducted pursuant to an unsigned and undated warrant), cert. denied, 525 U.S. 908 (1998).

Here, the record is utterly devoid of any bad faith by the government or any other unscrupulous conduct that would justify suppression.  To the contrary, as evidence of the government's good faith, even after the magistrate judge had authorized the search warrant telephonically, the prosecutor and agent went to the magistrate judge and had her sign the search warrant application and the affidavit even though this was not required by Rule 4.1.

In rejecting defendants' claim that suppression must automatically follow from a violation

16

of the telephonic warrant procedures, the Seventh Circuit in United States v. Cazares–Olivas explained that the defendants there, like Simmons here, "received the benefit of a magistrate judge's impartial evaluation before the search occurred. The search was supported by probable cause—on a record fixed, and supported by an oath, in advance, to prevent hindsight from being invoked to justify the search. An agent particularly described the place to be searched and the things to be seized."  515 F.3d at 729–30.

Accordingly, even assuming the defendant is able to nitpick about the specific process that the government used to obtain the warrant to search the November 13 Parcel, he cannot identify any deliberate or intentional conduct to warrant suppression.

**III.**     **CONCLUSION**

For the reasons set forth above, this Court should deny Defendant's Motion to Suppress.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_s/ Sozi Pedro Tulante_____
SOZI PEDRO TULANTE
Assistant United States Attorney

Dated: September 5, 2014

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

      v.                                  :          CRIMINAL NO. 13-669

JAMAHL SIMMONS                        :

## ORDER

AND NOW, this            day of                   , 2014, upon consideration of

Defendant Jamahl Simmons's Motion to Suppress, and the government's response thereto, it is

hereby ORDERED that the Defendant's Motion is DENIED.


BY THE COURT:


_____

**HONORABLE C. DARNELL JONES II**
*Judge, United States District Judge*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion response was served by electronic filing and electronic mail on Robert Miller, Esquire, counsel of record for defendant Jamahl Simmons.

_s/ Sozi Pedro Tulante___
SOZI PEDRO TULANTE
Assistant United States Attorney

Date:      September 5, 2014

EXHIBIT A

AO 106 (Rev 7/87) Affidavit for Search Warrant (R.M.Copeland, Authorizing)



## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohocken, PA 19428," Priority Mail #9505 5000 1479 3313 0000 72.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

13-1285-M

I, Sean F. McStravick, being duly sworn, depose and say:

I am a(n) <u>INSPECTOR of the U.S. Postal Inspection Service</u> and have reason to believe that on the person of or on the property or premises known as(name, description and/or location)

One Priority Mail parcel, measuring 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohocken, PA 19428," Priority Mail #9505 5000 1479 3313 0000 72, which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property to be seized)

Controlled substances

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of a crime

concerning a violation of Title 21, United States Code, Section(s) 841(a)(1).
The facts to support a finding of Probable Cause are as follows:

## SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.          [X] Yes      [ ]No

Affiant Sean F. McStravick, United States Postal Inspector

Sworn to before me, and subscribed in my presence

Philadelphia, PA

11/12/2013
_____
Date
HONORABLE LINDA K. CARACCAPPA
U.S. Magistrate Judge

_____
City and State

_____
Name and Title of Issuing Officer

_____
Signature of Issuing Officer

AO 93 (Rev. 5/85)  Search Warrant ([AUSA Full Name] Authorizing)

**USA-SIMMONS-0039**

*TRB*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6",
addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive
Ste #400, West Conshohoken, PA 19428," Priority Mail #9505 5000
1479 3313 0000 72.

**SEARCH WARRANT**

CASE NUMBER: 13-1285-M

TO:  Agents of the U.S. Postal Inspection Service   and any Authorized Officer of the United States

Affidavit(s) having been made before me by Sean F. McStravick who has reason to believe that  on the person of or XXX on the property or premises known as (name, description, and/or location)

One Priority Mail parcel, measuring 11.25" x 8.75" x 6", addressed to "Blue LLC/ Four Tower Bridge, 200 Barr Harbor Drive Ste #400, West Conshohoken, PA 19428," Priority Mail 9505 5000 1479 3313 0000 72," which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property)

### Controlled Substances

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before ___November 22, 2013___
                                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) -  ~~(at any time in the day or night as I find reasonable cause has been established)~~  and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to HONORABLE LINDA K. CARACAPPA, United States Magistrate Judge  as required by law.

_11/12/2013_        _11:45 A.m_

Date and Time Issued
HONORABLE LINDA K. CARACAPPA,
U.S. Magistrate Judge

Name and Title of Issuing Officer

Philadelphia, PA

City and State

Signature of Issuing Officer

**USA-SIMMONS-0040**

AO 93 (Rev. 5/85)  Search Warrant

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned to me this date.

_____        _____
                                                              U.S. Judge or Magistrate                              Date

USA-SIMMONS-0041

A F F I D A V I T

1.      I, Sean F. McStravick, am a United States Postal Inspector. I am currently

assigned to the United States Postal Inspection Service, Philadelphia Division. I have

been employed as a Postal Inspector since April 2012. Prior to becoming a Postal

Inspector, I was employed as a federal agent with the Department of Homeland Security

for six and one half years. I have a Masters in Emergency Management from Jacksonville

State University in Jacksonville, Al. As part of my duties as a United States Postal

Inspector, I investigate the use of the U.S. Mail to illegally transport controlled substances

and drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1),

843(b), and 846. I have been trained in various aspects of law enforcement, including the

investigation of narcotics offenses. Through my education and experience and that of

other agents assisting in this investigation, I have become familiar with the methods that

individuals use to traffic narcotics through the U.S. Mail.

2.      Based on my training, and my experience with the U.S. Postal Inspection

Service, and my discussions with other agents about their experience, I have become

familiar with the mechanics of the parcel delivery services and have developed a good

understanding of the appeal these service have for those who choose them for the illegal

transportation of controlled substances. Parcel delivery services offer rapid and

dependable service for most metropolitan areas. Parcels are guaranteed for delivery in the

number of specified days, with a refund if the parcel does not meet the service standards.

To the smuggler, the refund is a minor consideration, but parcels delayed beyond the

normal delivery time serve to alert the recipient that the authorities may have discovered

1

USA-SIMMONS-0042

the controlled substances.  Additionally, parcel delivery services use assigned label numbers, which make it easy for the parcels to be traced.  The sender is given a time of shipment, plus the weight of the parcel.

      3.     On November 12, 2013, the Philadelphia Division of the U.S. Postal Inspection Service identified a suspect Priority Mail package, Priority Mail number 9505 5000 1479 3313 0000 72 (the "Subject Parcel").  The Subject Parcel was mailed from California, an area known to law enforcement as a source for narcotics and has the following characteristics:

| | |
|---|---|
| Priority Mail No. | 9505 5000 1479 3313 0000 72<br>Measuring approx. 11.25" x 8.75" x 6" |
| Return Address | Dana Kathryn Jewelry<br>12636 Ventura Blvd<br>Studio City, CA 91604 |
| Delivery Address | Blue L.L.C-Four Tower Bridge<br>200 Barr Harbor Drive #400<br>West Conshohoken, Pa 19428 |

      4.     Investigation of the delivery address of the Subject Parcel, through the Law enforcement Database "Accurint", showed that the business/name "Blue L.L.C-Four Tower Bridge" is not associated with the delivery address.  The delivery address is associated to a "virtual office" facility operated by a company by the name of Regus Management Group.  From my training and experience, and the experience of other agents, I know that drug dealers who are sending controlled substances by the mail or other package delivery services will often use a fictitious company or a "virtual office"

2

USA-SIMMONS-0043

facility as the delivery address as a method to mask their identity when they are shipping parcels containing controlled substances.

From my training and experience, and the experience of other agents, I know that drug dealers who are sending controlled substances by the mail or other package delivery services will often use an incorrect delivery address and/or a fictitious delivery addressee name when they are shipping parcels containing controlled substances. They use this subterfuge in order to prevent the mailer of the package from being located.

5.     On November 12, 2013, the Subject Parcel was exposed to a drug detection canine named "Kirby," # K-7879A. Kirby is handled by Det. Christine Kelliher #22207 with the Bensalem Township Police Department. Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996. The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year. In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification. Det. Kelliher and K9 Kirby successfully completed the certification and are certified in the detection of the following substances: Marijuana/Hashish, Cocaine hydrochloride/Cocaine base, and Heroin Hydrochloride. Det. Kelliher advised Postal Inspectors that Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel.

6.     The Subject Parcel is presently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

3

**USA-SIMMONS-0044**

7.      Based on the above information which I believe to be true and correct, I believe that the Subject Parcel contains controlled substances sent from Studio City, California to West Conshohoken, Pennsylvania via Priority Mail delivery services, and that the use of the Priority Mail delivery services will facilitate the delivery of the controlled substances.

8.      Because of the sensitive nature of the investigation, an Order is sought sealing the Application, Affidavit, and Search Warrant.

9.      Accordingly, I respectfully request:

a.      The Court to find probable cause and issue a search warrant authorizing the opening and search of the Subject Parcel which is believed to contain controlled substances in violation of Title 21, United States Code, Sections 841(a)(1).

b.      An Order sealing the Search Warrant Application, Affidavit, Search Warrant until further Order of this Court.



Sean F. McStravick
U.S. Postal Inspector

Sworn to and Subscribed Before Me
This 12th day of November, 2013.

HONORABLE LINDA K. CARACAPPA
U. S. Magistrate Judge

4

USA-SIMMONS-0045

EXHIBIT B

AO 106 (Rev 7/87)  Affidavit for Search Warrant (Seq) P. Tulante Authorizing)

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6", addressed to "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057," Priority Mail #950550001485331600391.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 13-1297 M

I, Sean F. McStravick, being duly sworn, depose and say:

I am a(n) <u>INSPECTOR of the U.S. Postal Inspection Service</u> and have reason to believe that on the person of or on the property or premises known as(name, description and/or location)

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6", addressed to "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057," Priority Mail #950550001485331600391, which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property to be seized)

### Controlled substances

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of a crime

concerning a violation of Title 21, United States Code, Section(s) 841(a)(1). The facts to support a finding of Probable Cause are as follows:

## SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   [x] Yes   [ ]No

Affiant Sean P. McStravick, United States Postal Inspector

Sworn to before me, and subscribed in my presence

_____  11/13/2013
Date
HONORABLE LINDA K. CARACAPPA
U.S. Magistrate Judge
Name and Title of Issuing Officer

Philadelphia, PA

City and State

11/13/2013 at 9:20 p.m., Telephone Authorization Sean McStravick
Signature of Issuing Officer

AO 93 (Rev. 5/85)  Search Warrant ([AUSA Full Name] Authorizing)

USA-SIMMONS-0072

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6",
addressed to "Jackson Law Group, East Gate Square, 1640 Nixon
Drive, Moorestown, NJ 08057," Priority Mail
#9505500014853316000391.

SEARCH WARRANT

CASE NUMBER: 13 - 1294 - M

TO: __Agents of the U.S. Postal Inspection Service__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by Sean F. McStravick who has reason to believe that on the person of or XXX on the
property or premises known as (name, description, and/or location)

One Priority Mail parcel, measuring approx. 11.25" x 8.75" x 6", addressed to "Jackson Law Group, East
Gate Square, 1640 Nixon Drive, Moorestown, NJ 08057," Priority Mail #9505500014853316000391,"
which is currently located at the United States Postal Inspection Service Narcotics Office within the Eastern
District of Pennsylvania.

in the Eastern District of Pennsylvania, there is now concealed a certain person or property, namely
(describe the person or property)

Controlled Substances

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before                    November 27, 2013
                                                                                                              Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the
search (in the daytime - 6:00 A.M. to 10:00 P.M.) - (at any time in the day or night as I find reasonable cause has been
established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or
property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to
HONORABLE LINDA K. CARACAPPA, United States Magistrate Judge as required by law.

11/13/2013 , 9:20 p.m.                              Philadelphia, PA
_____                         _____
Date and Time Issued                                City and State
HONORABLE LINDA K. CARACAPPA,
U.S. Magistrate Judge                               11/13/2013 at 9:20 p.m., Telphe Auth, Sg- Tm

_____                         _____
Name and Title of Issuing Officer                   Signature of Issuing Officer

**USA-SIMMONS-0073**

AO 93 (Rev. 5/85)  Search Warrant

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned to me this date.

_____     _____
U.S. Judge or Magistrate                                              Date

<u>A F F I D A V I T</u>

1.      I, Sean F. McStravick, am a United States Postal Inspector. I am currently assigned to the United States Postal Inspection Service, Philadelphia Division. I have been employed as a Postal Inspector since April 2012. Prior to becoming a Postal Inspector, I was employed as a federal agent with the Department of Homeland Security for six and one half years. I have a Masters in Emergency Management from Jacksonville State University in Jacksonville, Al. As part of my duties as a United States Postal Inspector, I investigate the use of the U.S. Mail to illegally transport controlled substances and drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846. I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses. Through my education and experience and that of other agents assisting in this investigation, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mail.

2.      Based on my training, and my experience with the U.S. Postal Inspection Service, and my discussions with other agents about their experience, I have become familiar with the mechanics of the parcel delivery services and have developed a good understanding of the appeal these service have for those who choose them for the illegal transportation of controlled substances. Parcel delivery services offer rapid and dependable service for most metropolitan areas. Parcels are guaranteed for delivery in the number of specified days, with a refund if the parcel does not meet the service standards. To the smuggler, the refund is a minor consideration, but parcels delayed beyond the normal delivery time serve to alert the recipient that the authorities may have discovered

1

USA-SIMMONS-0075

the controlled substances. Additionally, parcel delivery services use assigned label numbers, which make it easy for the parcels to be traced. The sender is given a time of shipment, plus the weight of the parcel.

      3.      On November 13, 2013, the Philadelphia Division of the U.S. Postal Inspection Service identified a suspect Priority Mail package, Priority Mail number 9505500014853316000391 (the "Subject Parcel"). The Subject Parcel was mailed from California, an area known to law enforcement as a source for narcotics and has the following characteristics:

| | |
|---|---|
| Priority Mail No. | 9505500014853316000391<br>Measuring approx. 11.25" x 8.75" x 6" |
| Return Address | Dennis P. Block & Associates<br>5437 Laurel Canyon Blvd.<br>Valley Village, CA 91607 |
| Delivery Address | Jackson Law Group<br>East Gate Square<br>1640 Nixon Drive<br>Moorestown, NJ 08057 |

      4.      Investigation of the delivery address of the Subject Parcel, through the Law enforcement Database "Accurint", showed that the business/name "Jackson Law Group" is not associated with the delivery address. The delivery address is a "UPS Store" which is a Commercial Mail Receiving Agent (CMRA). From my training and experience, and the experience of other agents, I know that drug dealers who are sending controlled substances by the mail or other package delivery services will often use a CMRA as the delivery address as a method to mask their identity when they are shipping parcels containing controlled substances.

2

USA-SIMMONS-0076

5.      On November 13, 2013, the Subject Parcel was exposed to a drug detection canine named "Kirby," # K-7879A.  Kirby is handled by Det. Christine Kelliher #22207 with the Bensalem Township Police Department.  Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996.  The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year.  In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification.  Det. Kelliher and K9 Kirby successfully completed the certification and are certified in the detection of the following substances: Marijuana/Hashish, Cocaine hydrochloride/Cocaine base, and Heroin Hydrochloride.  Det. Kelliher advised Postal Inspectors that Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel.

6.      The Subject Parcel is presently located at the United States Postal Inspection Service Narcotics Office within the Eastern District of Pennsylvania.

7.      Based on the above information which I believe to be true and correct, I believe that the Subject Parcel contains controlled substances sent from Valley Village, California to Moorestown, New Jersey via Priority Mail delivery services, and that the use of the Priority Mail delivery services will facilitate the delivery of the controlled substances.

8.      Because of the sensitive nature of the investigation, an Order is sought sealing the Application, Affidavit, and Search Warrant.

9.      Accordingly, I respectfully request:

3

USA-SIMMONS-0077

a.     The Court to find probable cause and issue a search warrant authorizing the opening and search of the Subject Parcel which is believed to contain controlled substances in violation of Title 21, United States Code, Sections 841(a)(1).

b.     An Order sealing the Search Warrant Application, Affidavit, Search Warrant until further Order of this Court.


Sean F. McStravick
U. S. Postal Inspector

Sworn to and Subscribed Before Me
This 13th day of November, 2013.

11/13/2013 at 9:20 p.m., Telephone Authy Sogi Two

HONORABLE LINDA K. CARACAPPA
U. S. Magistrate Judge

4

USA-SIMMONS-0078