IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-669 |
| JAMAHL SIMMONS | : | |

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S
### POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

In the wake of the suppression hearing that this Court held on September 9, 2014, the defendant, Jamahl Simmons, has filed a memorandum arguing that the Court should suppress the drugs and other evidence obtained from the Postal Inspectors' seizure of three Priority Mail parcels mailed by the defendant.   His arguments should be rejected and the Court must deny the motion.

**A.  Postal Inspectors Had Ample Reasonable Suspicion to Detain the Mail Parcels Seized in this Investigation**

Consistent with the Fourth Amendment, postal inspectors may detain a mail parcel to conduct further investigation if they have a reasonable suspicion that the parcel contains contraband.  *United States v. Colon*, 386 F.Appx. 229, 230-231 (3d. Cir. 2010) (citations omitted). To determine if reasonable suspicion exists, a court "must examine the totality of the circumstances confronting the officer at the time and eschew analyzing any one factor in isolation." *Id*. at 231 (citations omitted).   While officers cannot rely on a "mere hunch to establish reasonable suspicion, they may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person." *Id.* (citations and internal quotations omitted).

Simmons contends that postal inspectors lacked reasonable suspicion to detain the three

1

parcels seized in this case.  (The search warrant materials were presented at the suppression hearing as Exhibits A, B, and C.)  He believes that the sole grounds for detaining those parcels are, as presented in the search warrant affidavits, that they originated from California and that they were addressed to virtual offices (which, as the affidavit makes clear, are commonly used by drug dealers to receive drugs or drug proceeds).  What Simmons's argument overlooks, however, is that Postal Inspector Sean McStravick had far more information that, based on his training and experience, gave him a particularized and objective basis to believe that these parcels contained contraband.

Inspector McStravick's investigation of Jamahl Simmons went back to well before the seizure of the first parcel on November 12, 2013.  On September 26, 2013, Inspector McStravick debriefed a confidential source ("CS").  The CS said that he knew Simmons for approximately 10 years.   The CS further stated that Simmons frequently traveled approximately twice a month from Los Angeles to Philadelphia.  The CS told Inspector McStravick that he/she knew Simmons and explained that when Simmons returned from Los Angeles, Simmons would call the CS and says "let's do the thing."  The CS knew this to mean that he/she was to bring the CS's handgun and provide security at Simmons's business, which is called "Smoke Signals" and is located at 2739 Germantown Avenue in Philadelphia.   According to the CS, Simmons used multiple cell phones and cell phone numbers to contact him/her and Simmons changes them frequently.

The CS explained that "Smoke Signals" is a "head shop," meaning that it sells hookah pipes and other smoking paraphernalia.  The CS added that the business is not open to the public and is used as a front for Simmons drug activities.  Inspector McStravick checked Philadelphia property records and confirmed that Jamahl Simmons is the owner of the property, which is located at 2739 Germantown Avenue in Philadelphia.

The CS recalled being present when US Mail parcels were delivered and Simmons took the

parcels to the second floor apartment of the business. The CS said that he/she has walked into the room upstairs where Simmons was opening the parcels and the CS saw large piles of white powder, which the CS knew to be cocaine. The CS said that Simmons sells marijuana, cocaine and "dope" (street name for heroin). The CS advised that customers would come during this time period and the drugs would be distributed within an hour or two.

Upon consulting criminal history databases, Inspector McStravick confirmed that Simmons was convicted in May 1999 for possession of crack cocaine with intent to distribute in the United States Court for the Middle District of Pennsylvania and was sentenced to 33 months in prison.

Based on the CS's information, Inspector McStravick investigated Simmons's travel. Agents corroborated the CS's information by reviewing records showing his air travel on US Airways between Los Angeles and Philadelphia. From a response to an administrative subpoena, agents learned that Simmons would reserve his tickets on the same day as his day of air travel, meaning that he does not preplan his travel. Moreover he booked one-way tickets, and has booked a total of approximately 12 one-way flights from August 29, 2013 through October 9, 2013. Inspector McStravick knew that booking travel at the last minute is a way to evade detection by law enforcement because law enforcement does not have time to establish surveillance or interdiction operations.

He also corroborated the CS's information by reviewing postal databases that show multiple instances from August 2013 until October 2013 of Priority Mail parcels that were shipped by Simmons to various locations, including virtual offices, in the Philadelphia area.

Then, on October 31, 2013, inspectors conducted surveillance and observed as a letter carrier delivered a Priority Mail parcel (with a tracking number ending in 689) addressed to Blue LLC/Four Tower Bridge, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428 ("October 31, 2013 Parcel"). Inspector McStravick, through a review of postal databases, identified a

3

photograph of Simmons at a post office in Valley Village, California mailing the October 31 Parcel.  Inspector McStravick determined that the business/name "Blue L.L.C-Four Tower Bridge" is not associated to the delivery address, which is a "virtual office" facility operated by Regus Management Group.

Later that afternoon, inspectors observed R.S.M., who is Simmons's cousin, retrieve the parcel, put in in her vehicle and take it to her residence.  The next day, on November 1, 2013, agents followed Simmons from the airport to his house, at 6634 Boyer Street, and then leave again to meet with R.S.M. at Philelena and Sprague Streets, Philadelphia.  Simmons got out of his vehicle, entered R.S.M.'s white GMC, and got out carrying a manila-colored bag.  Simmons went back to his vehicle and returned to his residence carrying the same bag.  After some time in his residence, Simmons left and drove directly to his shop, Smoke Signals, where he was seen taking in the bag.

Based on his training and experience investigating drug crimes, Inspector McStravick believed that R.S.M. and Simmons had engaged in a drug transaction on November 1, 2013.  After Simmons flew back to California on November 8, 2013, agents began searching to see if Simmons had mailed any additional parcels.  Thus, on November 12, 2013, Inspector McStravick directed a fellow inspector to go to the mail facility in West Conshohocken, Pennsylvania to determine if there were any parcels addressed to Blue LLC from California.  That morning, Inspector Link identified a Priority Mail parcel with a tracking number ending in 072 bearing the return address of "Dana Kathryn Jewelry, 12636 Ventura Blvd., Studio City, CA 91604" and the delivery address of "Blue L.L.C-Four Tower Bridge, 200 Barr Harbor Drive #400, West Conshohocken, Pa 19428" (the "November 12 Parcel").

On the basis of the foregoing, it is clear that postal inspectors had reasonable suspicion to briefly detain the parcel to conduct further investigations and to prepare to place the parcel before

a drug-detection canine. Inspector McStravick had reliable information that Simmons, a convicted drug dealer, was receiving drugs through the US Mails; postal records had confirmed that he had sent multiple Priority Mail parcels to virtual offices in the Philadelphia; he often bought one-way tickets to travel from California – a source area for drugs – to Philadelphia; and he and other investigators had seen as R.S.M. received a parcel, also mailed to Blue LLC by Simmons, and meet with Simmons in what Inspector McStravick believed was a drug transaction on November 1, 2013.

    The reasonable suspicion for detaining the two packages seized on November 13, 2013 is even more compelling. After Inspector McStravick opened the November 12 Parcel and found two kilograms of cocaine in there, he learned from postal records that another two packages en route to the Philadelphia area had been purchased using the same credit card/debit card as the November 12 Parcel. Moreover, by reviewing these records, he learned that the two packages – one with a tracking number ending in 391 bearing the return address of "Denis P Block and Associates, 5437 Laurel Canyon Blvd, Valley Village, CA 91607" and the delivery address of "Jackson Law Group, East Gate Square, 1640 Nixon Drive, Moorestown, NJ 0805 and another bearing a tracking number ending in 581 with the return address Creditor's Law Group, 2301 Hyperion Avenue, Los Angeles, CA 90027 and the delivery address Maximillion Settlement, 600 W. Germantown Pike, Ste #400, Plymouth Meeting, PA 19462 -- had been mailed by Jamahl Simmons.

    In short, Inspector McStravick, under the totality of the circumstances, had an articulable, objective basis for believing that these two parcels would contain contraband. Accordingly, the defendant's motion to suppress the parcels should also be denied in its entirety.

B.   **Inspector McStravick's Affidavits did not Contain any Misrepresentations, Let Alone Material Misrepresentations**

Simmons's last claim for suppression is that the affidavits for the two parcels seized on November 13, 2013 (391 and 581 in Exhibits B and C, respectively) supposedly contained factual misrepresentation that require suppression.  He is wrong.

As the Court recalls, Inspector McStravick testified at the hearing that he learned on November 12, 2013 that two additional Priority Mail parcels were on their way to the Philadelphia area from the Los Angeles area.  The plan, as he explained, was to retrieve the parcels, present them to the drug-detection dog and if the dog alerted to the parcels, obtain permission to open the parcels.  Motion to Suppress, Notes of Testimony, p. 19.  If the dog, however, did not alert, then Inspector McStravick would not seek a search warrant.  Id.  Because he had images of the label from each parcel, he prepared a draft affidavit that included the target address and return address and put in the affidavit that the dog alerted, in anticipation of the positive alert from Kirby.  And, after the U.S. Attorney's Office approved the affidavit, it was sent to Magistrate Judge Caracappa and she was advised of the plan and asked whether she wanted to receive the affidavit at the time (at approximately 5:30 p.m.) or wait until the parcel had been identified and presented to the dog.  Id.  She approved of the plan and asked for the search warrant documents, which were e-mailed to her.  Id.; see also Exhibit D.

Subsequently, according to the testimony, the boxes were identified and presented to Kirby, who gave a positive alert to the boxes.  Id. at 21.  Inspector McStravick testified that he then participated in a telephone conference with Judge Caracappa and swore out the affidavits in Exhibits B and C that had been previously submitted to Judge Caracappa.  Id. at 22-23, 41.  She then approved the warrants, which Inspector McStravick immediately executed and retrieved the cocaine from the parcels.

As the record makes clear, there were no misrepresentations, let alone any material ones, in

Inspector McStravick's affidavits. At the time that he swore out the affidavits telephonically to Judge Caracappa at about 9:20 p.m. that evening, everything in the affidavit was accurate. And it was on the basis of those facts that Judge Caracappa issued the warrant. The record is likewise clear that Judge Caracappa was not misled in any way; she was aware that the parcels were in transit and that the affidavits would be sworn out only if there was a positive dog alert, which there was.

In short, Judge Caracappa, as the law requires, had a "substantial basis" to conclude that the affidavit supporting the warrant established probable cause and properly issued the warrant. *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir.1993). There was no bad faith or anything else that would warrant suppression here. Indeed, it is notable that Simmons, in his original submission and in his latest memorandum, cannot point to any legal authority for his novel theory that suppression is warranted, even under his one-sided reading of the facts. The motion should be denied.

### C. Conclusion

For the reasons set forth above, and in the government's original memorandum, this Court should deny Defendant's Motion to Suppress.

    Respectfully submitted,

    ZANE DAVID MEMEGER
    United States Attorney

    __s/ Sozi Pedro Tulante_____
    SOZI PEDRO TULANTE
    Assistant United States Attorney

Dated: November 24, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2014, a copy of the foregoing motion response was served by electronic filing and electronic mail on Alan Yatvin, Esquire, counsel of record for defendant Jamahl Simmons.

                                                _s/ Sozi Pedro Tulante_
                                                SOZI PEDRO TULANTE
                                                Assistant United States Attorney