IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-669 |
| JAMAHL SIMMONS | : | |

**GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION
TO THE DEFENDANT'S SUPPLEMENTAL MOTIONS TO SUPPRESS**

The defendant has filed two supplemental motions to suppress evidence seized in this case. Because neither motion has merit, the Court should deny the motions.

**I.   RESPONSE TO SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE**

In his supplemental motion to suppress, the defendant seeks suppression of evidence obtained from the three mail parcels seized in this case and from his vehicle. His arguments are unavailing.[1]

A. <u>Simmons Attacks on the Dog Alert are Baseless</u>

The defendant's lead argument is that the Court should suppress the warrants because there is no evidence of the canine's reliability sufficient to establish probable cause and that the circumstances of the alert were not reliable. <u>See</u> Def's Brief at 1. He is wrong.

As an initial matter, the defendant is not even entitled to an evidentiary hearing to litigate this issue. Where a defendant seeks suppression of evidence because the warrant was based on alleged false statements in a search warrant affidavit, he has to comply with the well-settled framework established by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154 (1978). In that

---

[1]   The defendant also renews his claim that the U.S. Postal Inspectors lacked reasonable suspicion to briefly detain the three parcels. That argument should be rejected for the reasons set forth in the government's opposition filed on November 24, 2014. <u>See</u> Dckt # 100.

case, the Court held that a defendant may attack a search warrant if it was procured through false information. *Id.* at 171.

This does not mean "that every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165.  As the *Franks* Court recognized, to be successful, a defendant must point to something more than just innocent errors and muddled facts in the affidavit. *Id.* at 171-72.  That "something more" has long been memorialized in a two-part test, each part of which must be proven by a preponderance of the evidence. *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997); *United States v. Calisto,* 838 F.2d 711, 714 (3d Cir. 1988).  First, the defendant must prove that the affiant "knowingly and intentionally, or with reckless disregard for the truth," made false or misleading statements in the warrant affidavit. *Sherwood,* 113 F.3d at 399.  Second, the defendants must demonstrate that these statements were material, or necessary to the finding of probable cause. *Id.* at 399.  When both factors are present, the Fourth Amendment requires exclusion of the fruits of the search just as though probable cause was lacking on the face of the warrant itself. *United States v. Frost,* 999 F.2d 737, 742-43 (3d Cir. 1993), citing *Franks,* 438 U.S. at 155-56.

Before a defendant can establish this at a hearing, however, he must first make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, ... included by the affiant in the warrant affidavit."  *Franks v. Delaware,* 438 U.S. at 155-56.  To make a substantial preliminary showing, "a defendant must come forward with allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof."' *United States v. Harvey,* 2 F.3d 1318, 1323 (3d Cir. 1993), *quoting Franks v. Delaware,* 438 U.S. at 171.  Vague or conclusory

allegations of falsity or reckless disregard are insufficient. *See Harvey,* 2 F.3d at 1323-24 (defendant's failure to offer contradictory evidence to affidavit's factual assertions did not satisfy offer of proof requirement); *see also United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir.2006) (explaining that to make the preliminary showing required for a *Franks* hearing, "the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf*, 461 F.3d at 383 n.8.

Here, the defendant is not entitled to a *Franks* hearing regarding the reliability of the drug-detection canine, Kirby. All three affidavits that he is attacking set forth the dog's reliability by describing his background, as well as the background of Kirby's handler, Detective Christine Kelliher, as follows:

> Det. Kelliher has been with the Bensalem Township Police Department since 1992 and she has been a K9 handler since 1996. The Bensalem Township Police Department certifies Det. Kelliher and K9 Kirby on a yearly basis, and Det. Kelliher and K9 Kirby have ongoing maintenance training every month during the year. In April of 2013, Det. Kelliher and K9 Kirby participated in the United States Police K9 Association Drug Detector Dog Certification. Det. Kelliher and K9 Kirby successfully completed the certification and are certified in the detection of the following substances: Marijuana/Hashish, Cocaine hydrochloride/Cocaine base, and Heroin Hydrochloride.

See Hearing Exhibit A (Affidavit at ¶ 5, USA-SIMMONS-0044); Hearing Exhibit B (Affidavit at ¶ 5, USA-SIMMONS-0077); Hearing Exhibit C (Affidavit at ¶ 5, USA-SIMMONS-0150).

The defendant fails to offer a scrap of evidence that the information about Kirby in the affidavit was false, let alone materially false. Indeed, the defendant, over the government's objection, already had an opportunity to elicit testimony from Detective Kelliher during the suppression hearing on September 9, 2014, and still could not muster any testimony undermining

the reliability of Kirby's positive alert on each parcel. He should not be offered another opportunity here.

Against this backdrop, the defendant's sole claim for seeking an evidentiary hearing and suppression is premised on the Supreme Court's holding in *United States v. Harris*, 133 S.Ct. 1050 (2013). His reliance on *Harris* is unavailing.

*Harris* is completely distinguishable because it was not an attack on a warrant. That case established the appropriate standard for determining whether a positive alert by a canine during a traffic stop provides probable cause to search a vehicle. Indeed, in the opening paragraph of the opinion, Justice Kagan explained: "In this case, we consider how a court should determine if the 'alert' of a drug-detection dog during a traffic stop provides probable cause to search a vehicle." *Id.* at 1053. When, as in *Harris*, an officer claims that he had probable cause to conduct a warrantless search of a vehicle, the district court makes a de novo determination, upon hearing evidence, whether the officer had probable cause to conduct the search under the totality of the circumstances. In *Harris*, the Supreme Court offered guidance on how such a hearing should be conducted. In the end, the Court rejected the Florida Supreme Court's checklist approach as too formulaic for the totality-of-the-circumstances probable cause inquiry, noting that "a finding of a drug-detection dog's reliability cannot depend on the State's satisfaction of multiple, independent evidentiary requirements." *Id.* at 1056

Nothing in *Harris* upsets the settled approach governing a defendant's attack on a warrant, including a warrant that relies on the reliability of a drug-detection canine. Thus, while this Court must make its own probable cause assessment for warrantless searches of vehicles, for searches that rely on a warrant the Court must "determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." *United States v. Jones*, 994 F.2d 1051,

4

1057 (3d Cir. 1993); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (explaining that the role of a reviewing court is not to determine probable cause de novo, but to determine whether "the magistrate had a substantial basis for concluding that probable cause existed") (citation and quotation omitted).

As shown above, the four corners of the affidavit and warrant establish Kirby's reliability by, for instance, identifying his recent certification, the name of the organization that certified him, and his handler. *See United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir.1993) (holding that when reviewing for probable cause, the court must look to the four corners of the affidavit and warrant).[2] Based on that information, this Court, in reviewing the magistrate's decision, should find "that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238.

In short, Simmons offers the Court absolutely no authority[3] for the proposition that the Court should indulge his request for a second full-blown evidentiary hearing concerning the dog's reliability and render a *de novo* determination on probable cause. Not only is such an approach not legally supportable, it would undermine the great deference that this Court must accord to the magistrate's finding of probable cause. *See United States v. Leon*, 468 U.S. 897, 913-14 (1984) (explaining that "we have thus concluded that the preference for warrants is most appropriately

---

[2] Ironically, the very records that the defendant appends to his motion in an effort to undermine the Kirby's reliability as described in the affidavit actually buttress Kirby's reliability, rather than undercut it, as defendant is required to show. For instance, Exhibit A of the motion is Kirby's certification issued by the U.S. Police Canine Association on April 6, 2013. This is the same information that Inspector McStravick included in the affidavits that Simmons is now condemning for having alleged falsities.

[3] Notably, the only other case that Simmons cites in support of an evidentiary hearing is *United States v. Thomas*, 726 F.3d 1096 (9th Cir. 2013). Again, he neglects to mention that *Thomas* involved a warrantless search of a vehicle and, like *Harris*, is therefore not relevant.

5

effectuated by according great deference to a magistrate's determination) (citations omitted).[4]

      B.      Likewise the Defendant's Conclusory Attacks on the Search Warrant for his Vehicle Should be Rejected

Next, the defendant seeks suppression of evidence seized during the execution of a search warrant of the defendant's Cadillac Escalade on November 14, 2013. He points to the following two paragraphs of the search warrant affidavit:

> 53. While securing the Boyer Street Property, law enforcement agents observed a black Cadillac Escalade bearing Pennsylvania registration **** parked in the driveway in front of the garage at the residence. In plain view in the rear of the vehicle law enforcement agents saw packing materials, a bag containing green packing peanuts and USPS Priority Mail boxes. Law enforcement agents recognized the green packing peanuts as the same type of packing peanuts which were contained inside of the Priority Mail Parcel, which was opened inside of the residence.
>
> 54. Furthermore, the USPS Priority Mail boxes are the same type of box which was used to ship two kilograms of cocaine. Moreover, Simmons is the registered owner of the vehicle.

Def.'s Br. at p. 11 (quoting Affidavit at p. 15, Exhibit B). Simmons's only claim that the facts averred in this affidavit were false is his bald assertion that the agents did not actually see the contents of the vehicle in plain view but "entered the vehicle prior to issuance of the warrant." *Id.* What does the defendant point to for his sensational claim that Inspector McStravick flat out lied in his affidavit? Nothing. No evidence, no theory, no affidavit, no offer of proof. The defendant's bald assertion that Inspector McStravick was lying is plainly insufficient to warrant a hearing. As the Court in *Franks* made clear, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine," 438 U.S. at 171, which is precisely the case here. Without making the substantial preliminary showing required by *Franks*, the defendant should not be permitted to have a hearing that would waste the

---

[4] As the government has already argued, the warrants should also be upheld because Inspector McStravick relied in good faith on facially valid warrants.

Court's time and again abuse the process. *See Franks*, 438 U.S. at 170 ("The requirement of a substantial preliminary showing" is necessary "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction.").

In any event, even if he gets a *Franks* hearing and establishes that there was a misrepresentation, Simmons is still not entitled to suppression of the contents of the Escalade. In other words, he cannot establish that after excluding evidence about what Inspector McStravick saw, that there would be evidence of contraband. Here, as the affidavit makes clear, by the time that the defendant searched the Escalade, the affidavit made clear that Simmons had mailed 5 kilograms of cocaine, that he had used the Escalade less than two weeks before to engage in what Inspector McStravick, in his training and experience, believed was a drug transaction. Accordingly, there was a substantial basis for the magistrate judge to issue the warrant, even if the information in paragraphs 53 and 54 was removed.

## II.    RESPONSE TO SECOND SUPPLEMENTAL MOTION TO SUPPRESS

In his second supplemental motion to suppress, the defendant puts forth several arguments to try to seek suppression of the evidence (including handguns and drug paraphernalia) recovered from the defendant's business, Smoke Signals. Each argument should be rejected.

It is settled that several sources of information may provide probable cause to support the issuance of a search or arrest warrant. First, police officers may use their training and experience to draw certain permissible inferences from behavior that, to the untrained eye, may not be considered criminal activity. *See, e. g.*, *Texas v. Brown*, 460 U.S. 730, 742-43 (1983) (plurality opinion). In determining whether probable cause exists in a particular case, courts readily may accept the judgment of a law enforcement officer if backed by a warrant issued by a magistrate. *See United States v. Watson*, 423 U.S. 411, 423 (1976).

Probable cause also may be based upon information from a reliable, known informant or

information from an independent source whose information may be independently corroborated. For example, a tip from a known informant of proven reliability may form the basis for probable cause, especially when the police officers are able to corroborate independently innocent details of the tip. *See Draper v. United States*, 358 U.S. 307, 313 (1959). Accordingly, probable cause may rest upon hearsay information from confidential informants, and does not require the direct, personal observations of a law enforcement officer. *Aguilar v. Texas*, 378 U.S. 108, 114 (1964); *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000); *United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993). Probable cause exists as long as the probable "veracity" and "basis of knowledge" of persons supplying any hearsay information, and the results of independent police investigation, make it reasonably likely, based on the totality of the circumstances, that the information is correct. *Gates*, 462 U.S. at 238; *Williams*, 224 F.3d at 532.

Here, the magistrate judge had a substantial basis for concluding that there was probable cause to believe that evidence of Simmons's criminal activity would be found at Smoke Signals based on the CS information, which was corroborated Inspector Mcstravick's investigation, combined with the other averments in the affidavit.

Simmons first argues that the affidavit fails to allege sufficient indicia of the informant's reliability. This argument is also baseless. The affidavit at issue is not a "bare bones" affidavit which merely offers a bald conclusion that the confidential informant is reliable. Instead, as the affidavit makes pellucid, Inspector McStravick went to extensive lengths to corroborate the informant's information. For instance, he checked public records to confirm that Simmons owned Smoke Signals. Agents personally observed Simmons at Smoke Signals, just as the CS had contended. They seized five kilograms of cocaine in parcels that Simmons had shipped and saw Simmons go to Smoke Signals on November 1, 2013 after he had participated in a suspected drug transaction, which confirms exactly what the CS had told Inspector McStravick took US Mail

parcels to Smoke Signals to conduct drug trafficking. Inspector McStravick also confirmed the CS's report that Simmons flew back and forth from Los Angeles and Philadelphia and found that Simmons had multiple flights between the cities (including a total of approximately 12 one-way flights just from August 29, 2013 through October 9, 2013), which were one-way tickets that Simmons booked near the day of travel, which suggested to Inspector McStravick that Simmons was trying to evade detection. In short, Inspector McStravick verified every fact reported by the informant to the extent of his ability and independently observed new criminal activity in the process.[5] Thus Simmons's complaints about the CS's reliability are unavailing.

Moreover, as discussed above, the probable cause in support of the search of Smoke Signals did not rely only on the CS's information. The affidavit, in over 17 pages, shows that Simmons was a committed drug trafficker, having mailed three Priority Mail parcels from Los Angeles to Philadelphia containing over 5 kilograms of cocaine. Two of those parcels, as explained in the affidavit, were picked up by R.S.M., his cousin, at a virtual office and delivered to his co-

---

[5] The defendant asserts that the CS should not be believed because he was not a known informant. To the extent that he is arguing that police must bolster an informant's account by including a talismanic recitation of the informant's reliability and veracity, he is mistaken. To the contrary, *Gates* offers a flexible approach, allowing a magistrate judge to credit on the statements of an informant so long as the affidavit establishes independent police corroboration of the informant's tip, which is an important means of establishing the reliability of the information supplied by the informant. *United States v. Stearn*, 597 F.3d 540, 555 (3d. Cir. 2010) (citing *Gates*, 462 U.S. at 241). Here, the affidavit, on its face, clearly conveys the CS's reliability. As shown above, the magistrate judge could determine that the CS was sufficiently reliable given the multiple ways in which the police substantiated significant elements of the CS's statements. As the Supreme Court held in *Gates*, where, as here, the police were able to corroborate some of the informant's account, they were entitled to rely on his specific allegations of criminal activity as accurate. That is, because the CS was right about some things, he is "more probably right about other facts." *Gates*, 462 U.S. at 244 (internal quotations and citations omitted). In short, this corroborated information showed that the CS was sufficiently reliable and gave credence to his allegation about CS's illegal activities. It also offered more than sufficient substantial basis for the magistrate judge to deem the CS's information credible. *Gates*, 462 U.S. at 244-45 (explaining that officers' corroboration through other sources of information "reduced the chances of a reckless or prevaricating tale" and thus provided a substantial basis for crediting the informant's report) (internal quotations and citations omitted).

conspirators on November 13 and November 14, 2013.  On October 31, 2013, agents also saw another Priority Mail parcel, again mailed by Simmons in Los Angeles and again picked up by R.S.M. at one of the same virtual offices.  The next morning, agents followed Simmons drive to meet R.S.M. inside of her vehicle in a public street, then walk out with a manila bag/envelope, drive back to his house, then drive to Smoke Signals, which he unlocked and entered, showing that he still had control of the business.  This information clearly establishes (a) that Simmons was a high-scale drug dealer; (b) that he was dealing cocaine at the time of the search of Smoke Signals; and (b) that there was a nexus between his drug dealing and Smoke Signals.

Given the detailed nature of the CS's information (which the agents had corroborated), the CS's long association with the defendant, the seizure of five kilograms of cocaine that establish that Simmons was a high-level drug trafficker, Simmons's history of mailing similar Priority Mail packages and his suspicious travel, coupled with Inspector McStravick's experience, training, and deep familiarity with the investigation, Inspector McStravick reasonably believed that there was a fair probability that Simmons would keep evidence of his crimes in Smoke Signals, the business that he owns.   It is well settled that the magistrate judge was entitled to rely on Inspector McStravick's professional judgment, which also squared with common sense.  *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (acknowledging that the Supreme Court has "accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he observed in his experience, almost to the point of permitting it to be the focal point of the analysis."); *United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2000) (the facts in a probable cause analysis must be viewed "through the lens of the [officers'] significant experience with similar transactions").[6]

---

[6]   In attacking the affidavit, the defendant overlooks that Inspector McStravick averred in his affidavit that, based on his training and experience, drug traffickers commonly secrete contraband, proceeds of drug sales, records of drug transactions, and evidence about the spending of drug

Simmons suggests that probable cause for Smoke Signals may be lacking because there was no direct evidence of drug trafficking activity at Smoke Signals (presumably such as a controlled purchase). First, he is wrong, as Simmons's conduct on November 1, 2013 was consistent with drug trafficking. But, more fundamentally, Simmons is wrong legally because no such direct evidence is required. *See Burton*, 288 F.3d at 103 ("Direct evidence linking the residence to criminal activity is not required to establish probable cause.") *citing United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). Probable cause can be based on an accumulation of inferences that establish a "fair probability" that evidence will be found at the location to be searched. *Burton*, 288 F.3d at 103. The magistrate judge may "consider[] the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide" the fruits of his crime. *Id.* Moreover, the requisite nexus may be established by numerous factors, including "the conclusions of experienced officers 'regarding where evidence of a crime is likely to be found,'" *Stearn*, 597 F.3d at 559-60, as was the case here.[7]

Simmons also contends that the information in Inspector McStravick's affidavit was too stale to support a finding of probable cause. He is once again wrong. It is well settled that the age of the information supporting a search warrant application is only one among many factors to be considered in determining whether probable cause exists. *United States v. Harvey*, 2 F.3d 1318 (3d Cir. 1993); *United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977). The mere lapse of time, even if it is a substantial lapse of time, is not controlling on a question of staleness. *See,*

---

proceeds within their businesses. See Affidavit at ¶¶ 5c and 5d. Given that the defendant went to Smoke Signals the same morning that he received a suspected drug package from R.S.M., Inspector McStravick had a substantial basis for believing that the defendant would be storing such materials in his business.

[7] Likewise, the warrant supporting the search of Smoke Signals should also be upheld under the *Leon* good-faith test. Ordinarily, the "mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith," and will obviate the need for "any deep inquiry into reasonableness." *Hodge*, 246 F.3d at 308 (citations omitted). Here, the defendant cannot show that any of the exceptions to the *Leon* test apply.

*e.g., Harvey*, 2 F.3d at 1322. The Court must also examine the nature of the crime and the type of evidence that supports the search warrant. *Harvey*, 2 F.3d at 1322; *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002). Thus, many of the same considerations that determine whether a nexus has been shown also come into play on consideration of whether probable cause is stale or not. The information offered in support of the application for a search warrant will not be considered stale if there is a sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.

In this case, less than two weeks passed from when Simmons was seen at Smoke Signals until the search of Smoke Signals. Third Circuit case law confirms that this passage of time does not render the search stale. In *United States v. Gallo*, 110 F. App'x 265, 268-69 (3d Cir. 2004) (not precedential), the Third Circuit held that information supporting a search warrant was not stale even though the police did not apply for the warrant until 20 days after the cooperating individual made a drug purchase from the defendant. The Court noted that "age alone does not determine staleness. 'The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched.'" 110 F. App'x at 268, *quoting United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983). [8] Here, Simmons had no idea that he was being investigated by the Postal Inspectors after November 1, 2013. Indeed, after that date, he returned to Los Angeles and mailed five more kilograms of cocaine. Given Simmons's continued, longstanding drug dealing up until the time that Inspectors searched Smoke Signals, the magistrate judge was justified in inferring that there would be evidence of these crimes in the business that he controlled. *United States v.*

---

[8]   *See also United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (fact that last controlled buy was made two and one-half weeks before warrant application did not render the information in the application stale); *United States v. Pitts*, 6 F.3d 1366, 1370 (9th Cir. 1993) (rejecting staleness challenge to warrant obtained three months after last evidence of defendant's drug activity; stating that "[w]ith respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.").

*Leasure*, 319 F.3d 1092, 1099 (9th Cir.2003) ("When an affidavit 'establish[es] the existence of a widespread, firmly entrenched, and ongoing narcotics operation.... staleness arguments lose much of their force.' ") (alterations in original) (citation omitted).  This staleness argument is also not persuasive here because there is no reason to believe that the types of drug-related evidence that the agents were seeking – such as documents, ledgers, evidence of drug spending – are likely to be destroyed in the intervening two weeks.  *United States v. Dowdell*, 546 Fed. App'x 128, 133 (4th Cir. 2013) (rejecting staleness argument because the magistrate reasonably inferred that the evidence sought to be seized ("such as papers, records, and receipts")  "would likely be stored in [defendant's] residence and remain there because business records are not ordinarily destroyed or moved about") (not precedential).

"A grudging or negative attitude by reviewing courts toward warrants" is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.  *United States v. Ventresca*, 380 U. S.102, 108 (1965). This preference for warrants should persuade the Court to hold that the magistrate judge in this case had a substantial basis for finding probable cause.  *Hodge*, 246 F.3d at 307.

The defendant's last argument is his most frivolous.  He acknowledges that the affidavit, in footnote 1, says that "The CS is presently facing two state firearms charges and provided information to law enforcement in hopes of getting leniency in connection with those charges."  He claims that Inspector McStravick should have said that there were two *separate* firearm offenses, and that he was also charged with False Reports.   He offers no authority for asserting that this was a material misrepresentation or omission, and the Court should reject the argument.

Similarly, he maligns Inspector McStravick for leaving in the CS's statement that Smoke Signals was not open to the public.  While that information was true at the time that the CS made it in September 2013, the government acknowledges that by the time that the search was conducted

on November 15, 2013 that Smoke Signals was open for business.  However, the defendant fails to show that this was an intentional falsity and that it was material.  After all, even with that information excised from the affidavit, the magistrate judge still had a substantial basis for issuing the warrant to search Smoke Signals, for the reasons already described above.

### III.    CONCLUSION

For the reasons set forth above, this Court should deny Defendant's Supplemental Motions to Suppress.

                                                 Respectfully submitted,

                                                 ZANE DAVID MEMEGER
                                                 United States Attorney

                                               *s/ Sozi Pedro Tulante*
                                               SOZI PEDRO TULANTE
                                               Assistant United States Attorney

Dated: December 10, 2014

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :  CRIMINAL NO. 13-669 |
| JAMAHL SIMMONS | : |

## ORDER

AND NOW, this        day of              , 2014, upon consideration of Defendant Jamahl Simmons's Supplemental Motion to Suppress Evidence and his Second Supplemental Motion to Suppress, and the government's response thereto, it is hereby ORDERED that the Defendant's Motions are DENIED.

.

BY THE COURT:

_____
HONORABLE C. DARNELL JONES II
*Judge, United States District Judge*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion response was served by electronic filing and electronic mail on Alan Yatvin, Esquire, counsel of record for defendant Jamahl Simmons.

                                                        *s/ Sozi Pedro Tulante*
                                                        SOZI PEDRO TULANTE
                                                        Assistant United States Attorney

Date:      December 10, 2014