## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO.   13-cr-669-CDJ** |
| **JAMAHL SIMMONS** | : | |

## <u>ORDER</u>

**AND NOW**, this          day of                    , 2014, upon consideration of
Defendant Jamahl Simmons' Consolidated Motion to Suppress Evidence, and any response thereto,
it is hereby **ORDERED** that the Motion is **GRANTED**.

By the Court:

_____
Jones, U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


UNITED STATES OF AMERICA          :

     v.          :   CRIMINAL NO.  13-cr-669-CDJ

JAMAHL SIMMONS          :


## <u>DEFENDANT'S CONSOLIDATED MOTION TO SUPPRESS EVIDENCE</u>

  Defendant, Jamahl Simmons, by his undersigned counsel, moves to suppress all fruits of the searches and seizures set forth below, as well as any fruits thereof, and in support thereof states:

1.  Defendant, by his prior counsel, filed a Motion to Suppress Evidence on May 7, 2014 (Docs. 34 and 36).

2.  Defendant, by his prior counsel, filed a Motion to Suppress Evidence on August 27, 2014 (Doc. 49), which was dismissed as moot (Doc. 71).

3.  Defendant, by his prior counsel, filed a Supplemental Motion to Suppress Evidence on August 29, 2014 (Doc. 52).

4.  On September 10, 2014, a hearing was held on Defendant's Motion to Suppress.

5.  On November 18, 2014, undersigned counsel for Defendant filed a Post Hearing Memorandum in Support of Motion to Suppress (Doc. 99).

6.  On December 2, 2014, undersigned counsel for Defendant filed Defendant's Supplemental Motion to Suppress (Doc. 107).

7.  On December 5, 2014, undersigned counsel for Defendant filed Defendant's Second Supplemental Motion to Suppress (Doc. 115).

8.  A continued suppression hearing was held on December 12 and 15, 2014.

9.      At the conclusion of the hearing on December 15, 2014, the Court directed counsel for Defendant to file an amended motion to suppress raising all of the claimed grounds for suppression, including issues that arose during the course of the hearing, following preparation of the hearing transcripts.

10.     Defendant moves for suppression of the evidentiary fruits of the searches and seizures conducted in violation of the Fourth Amendment to the United States Constitution, as follows:

A.      **The October 30, 2013 detention of parcel 689 was without reasonable suspicion to believe it contained contraband.**

11.     Inspector McStravick testified that the profile for reasonable suspicion that a parcel contains controlled substances has numerous variables.  N.T. 12/12/14, pp. 172-175.

12.     Inspector McStravick testified that he cannot make a determination without physically looking at a parcel, picking it up and reading it.  N.T. 12/12/14, p. 174.

13.     Inspector McStravick specifically testified that he "needs to actually touch a parcel" and "without touching [a] parcel [he] wouldn't be able to make a conclusion" as to whether it contained controlled substances.  N.T. 12/12/14, p. 175.

14.     Inspector McStravick testified that by "just touching a parcel, you can feel the density and you can tell that it's glued shut. That tells me that the individual that shipped this parcel does not want anyone to get inside of it ..."  N.T. 12/12/14, p. 173.

15.     Parcel 689, depicted in Government Exhibit 5, is the first parcel touched by Inspector McStravick.  N.T. 12/12/14, p. 176.

16.     Inspector McStravick "took the parcel out of the mail stream" by removing it from a hamper

at the Network Distribution Center (NDC) in North Philadelphia.  N.T. 12/12/14, p. 89, 192.

17.     As to Parcel 689, Inspector McStravick "was able to determine just by touching it that those flaps were [sealed]."  N.T. 12/12/14, p. 177.

18.     Inspector McStravick claimed that he could also tell from holding the parcel 689 that it was tightly packaged and the density of the parcel was focused in the middle.  N.T. 12/12/14, p. 188-189.

19.     As a result of his seizure of parcel 689, Inspector McStravick included in the affidavit of probable cause in support of the search warrants for Boyer Street, the Escalade and Smoke Signals, the representation that the parcel was "taped and glued shut."  MTS 1, continuation of ¶ 15, p. 0168.

20.     The seizure of the parcel 689 at the NDC, constituted detention of a mail parcel by a postal inspector for investigatory purposes.

21.     The seizure of parcel 689 by Inspector McStravick violated the Fourth Amendment prohibition against unreasonable search and seizure, because the seizure was not supported by reasonable, articulable suspicion that the parcel contained contraband.

**B.**     **The November 12, 2013 detention of parcel 072 was without reasonable suspicion to believe it contained contraband.**

22.     On November 12, 2013, parcel 072 was removed from the mail stream at the Conshohocken post office and brought to Inspector McStravick's Bala Cynwyd office.  N.T. 12/12/14, p. 110-111.

23.     The seizure of the parcel 072 at the Conshohocken post office and transfer to Bala Cynwyd constituted detention of a mail parcel by a postal inspector for investigatory purposes.

24.     Parcel 072 was exposed to drug detection canine Kirby, after which a warrant to open the parcel was obtained.

25.     The seizure of parcel 072 by Inspector McStravick violated the Fourth Amendment prohibition against unreasonable search and seizure, because the seizure was not supported by reasonable, articulable suspicion that the parcel contained contraband.

26.     The exposure of the Parcel 072 to drug detection canine Kirby was the fruit of the unconstitutional seizure of the parcel.

27.     Parcel 072 was searched on November 12, 2013, pursuant to a search warrant.[1]

28.     The November 12, 2013, search of parcel 072 was unconstitutional where probable cause for the warrant to search the parcel depended upon the alert of drug detection Kirby to the unconstitutionally seized parcel.

**C.     The insertion of tracking and entry detection devices in parcel 072 on November 12, 2013, was without a valid warrant.**

29.     On November 12, 2013, government agents placed a GPS tracking device in parcel 072, along with a monitor to alert when the package was opened.  12/12/14 N.T., pp. 120-121.

30.     The placement of these devices was unconstitutional because the parcel was illegally seized (see § B, above).

31.     Unlike the GPS tracking device, the government identifies no authority for the issuance of a warrant to place an alert device in the package.

32.     The placement of these devices was not pursuant to a valid warrant because there was no warrant authorizing placement inside parcel 072.

---

[1]  The warrant with affidavit of probable cause for parcel 072 was identified as Government Exhibit A at the 9/9/14 hearing.

Page 4

33.   The warrant for the placement relied upon to place the devices in parcel 072 was for another parcel.  N.T. 12/15/14, pp. 13-14, MTS 2.

34.   Parcel 072 was tracked and seizures of evidence were made as a result of the two unconstitutionally placed devices.  N.T. 12/12/14, pp. 123-128.

35.   It was not reasonable for Inspector McStravick to believe that the warrant authorized him to place tracking and alert devices in parcel 072.

36.   It was not reasonable for Inspector McStravick to rely upon the warrant to place tracking and alert devices in parcel 072.

37.   The fruits of the unconstitutionally placed tracking and alert devices were obtained as a result of the government agents violation of the Fourth Amendment.

**D.   The November 12-13, 2013 detention of parcels 391 and 581 was without reasonable suspicion to believe they contained contraband.**

38.   On November 12 and 13, 2013, government agents seized parcels 391 and 581 from the U.S. Mail at the Philadelphia International Airport, transported the parcels to their Drug Task Force Office in Bala Cynwyd, Pennsylvania, in order to expose the parcels to drug detection canine Kirby.[2]

39.   The seizure of the parcels at the airport, transportation to Bala Cynwyd and exposure to drug detection canine Kirby, constituted detention of a mail parcel by a postal inspector for investigatory purposes, in violation of the Fourth Amendment prohibition against

---

[2]The affidavits are part of the Application for Search Warrant for each of the warrants, which were government exhibits at the September 9, 2014 suppression hearing.  Gov. Exhibit A relates to a parcel with Priority Mail Number ending in 072, Gov. Exhibit B relates to a parcel with Priority Mail Number ending in 391 and Gov. Exhibit C relates to a parcel with Priority Mail Number ending in 581.  The parcels are referred to by these digit numbers, which appear on the various corresponding exhibits.

Page 5

unreasonable search and seizure, because the seizures were not supported by reasonable, articulable suspicion that the parcels contained contraband.

40. Inspector McStravick's assumptions regarding law firm mail are not reasonable.  N.T. 12/12/14, pp. 131-132.

41. Inspector McStravick relied upon the information about the contents of parcel 072.  N.T. 12/12/14, p. 136.

42. The information Inspector McStravick relied upon regarding the contents of parcel 072, was the fruit of unconstitutional seizures. See §§ A-C , above.

43. The November 13, 2013, search of parcels 391 and 581 was unconstitutional where probable cause for the warrant to search the parcel depended upon the alert of drug detection Kirby to the unconstitutionally seized parcels.

**E.** **There is no evidence of canine Kirby's reliability so as to establish probable cause to open 072, 391 and 581, seized on November 12-13, 2013, based upon her alleged alert, and the circumstances of the alleged alert were not reliable**.

44. On November 12 and 13, 2013, government agents seized three parcels from the U.S. Mail at the Philadelphia International Airport, transported the parcels to their Drug Task Force Office in Bala Cynwyd, Pennsylvania, in order to expose the parcels to drug detection canine Kirby.

45. The government has provided some limited training and performance documentation and highly redacted logs.  In the absence of testimony interpreting and explaining these documents, there is no evidence of Kirby's reliability.

46. Canine Kirby did not possess sufficient reliability in detection of controlled substances to support probable cause for a search of parcels.

47.     The manner of exposure of the parcels to Kirby was not consistent with proper protocols and procedures for drug detection canines, and resulted in an unreliable alert by Kirby.

48.     The failure of the affidavit of probable cause to allege the circumstances leading to the unreliable alert by Kirby and information regarding her reliability, were material omissions, the inclusion of which would have vitiated probable cause.

**F.     The affidavits of probable cause for parcels 391 and 581 contain material misrepresentations of fact which rendered the warrants invalid and the searches illegal.**

49.     On November 13, 2013, Inspector McStravick prepared two affidavits of probable cause for two priority mail packages mailed from California.  Gov. Exhibit B and C.

50.     Those affidavits were emailed to U.S. Magistrate Judge Linda Caracappa at 5:30 PM on November 13, 2013.  Gov. Exhibit D, p. 1.

51.     The affidavits each stated that:

a.      "On November 13, 2013, the Subject Parcel **was** exposed to a drug detection canine ..."  Gov. Exhibit B (Bate No. 0077) ¶ 5; Gov. Exhibit C (Bate No,. 0150) ¶ 5 (emphasis added).

b.      "The Subject Parcel **is presently located** at the United States Postal Inspection Service Narcotics Office with the Eastern District of Pennsylvania."  Gov. Exhibit B (Bate No. 0077) ¶ 6; Gov. Exhibit C (Bate No,. 0150) ¶ 6 (emphasis added). [3]

52.     Neither of these statements was true at the time the documents were presented to Judge Caracappa by email at 5:30 PM on November 13, 2013, nor were they true at the time Judge Caracappa approved the warrants at 9:20 PM.

---

[3]That Office is located "Bala Cynwyd off of City Line Avenue."  N.T. 9/9/14, p. 184.

53.     The affidavits state that "Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel" prior to the 9:20 PM issuance of the warrants for parcels 391 and 581. Gov. Exhibit B (Bate No. 0077); Gov. Exhibit C (Bate No. 0150).

54.     Inspector McStravick testified that "[t]he two additional boxes were identified, they were intercepted at the inner mail facility at the Philadelphia International Airport." N.T. 9/9/14, p. 19.

55.     Inspector McStravick testified that after he identified the packages, he contacted AUSA Tulante and began to prepare the affidavits for search of the boxes.  Gov. N.T. 9/9/14, p. 19.

56.     Inspector McStravick's affidavits and attendant documents were then emailed to Judge Caracappa at 5:30 PM on November 13, 2013.   Gov. Exhibit D, p. 1.

57.     He then testified on cross-examination that the parcels were retrieved and presented to Kirby between 6-9 PM.  N.T. 9/9/14, pp. 74-75, 83.

58.     Contrary to the affidavits and Inspector McStravick's testimony before this Court that the packages had arrived, been identified and intercepted by Inspector McStravick, the email stated that the "packages are on planes en route to Philadelphia International Airport and are not expected to be presented to the drug-detection dog until 9:30 p.m. tonight, at the earliest."  Gov. Exhibit D, p.1.

59.     Inspector McStravick's testimony on direct that the boxes had been intercepted at the airport in Philadelphia **before** he contacted AUSA Tulante and started preparing the affidavits (N.T. 9/9/14, p. 19), cannot  be reconciled with AUSA Tulante's email to Judge Caracappa, with Inspector McStravick's completed affidavits, stating that the packages are on planes en route to Philadelphia International Airport..."  Gov. Exhibit D.

60.     Judge Caracappa had been advised that the package would arrive by and be presented to
        Kirby by 9:30 PM (Gov. Exhibit D) and this is when she was going to be available (N.T.
        9/9/14, p. 84).

61.     If not approved and executed by 10:00 PM the warrants could not be executed until after 6:00
        AM the following morning.  Gov. Exhibit B (0073); Gov. Exhibit C (0141).

62.     Inspector McStravick testified that at some point the packages were presented to Kirby a
        drug detection dog, who indicated the presence of controlled substances, whereupon he
        contacted AUSA Tulante who got Judge Caracappa on the phone, and the warrants were
        approved over the phone.  N.T. 9/9/14, pp.  21-22.

63.     This approval occurred at 9:20 PM on November 13, 2013.  N.T. 9/9/14, p. 23; Gov. Exhibit
        B (Bate Nos. 0072, 0073, 0078); Gov. Exhibit C (Bate Nos. 0140, 0141 and 151).

64.     When Judge Caracappa approved the warrants at 9:20 PM, the packages were not in the
        custody of Inspector McStravick at the Postal Inspection Service Narcotics Officer, nor had
        they been presented to K-9 Kirby.

65.     According to the Post Office's Product Tracking System records, the container with 581 did
        not even arrive in Philadelphia until 11:06 PM. Bate No. 0857.[4]

66.     Judge Caracappa had been advised that the package would arrive by and be presented to
        Kirby by 9:30 PM (Gov. Exhibit D) and this is when she was going to be available (N.T.
        9/9/14, p. 84); and second, if not approved and executed by 10:00 PM the warrants could not

_____

        [4]The undersigned was not counsel at the hearing, and the record is a bit confusing as to
how the exhibits were marked, accordingly, the two Product Tracking System printouts will be
identified by the Bate numbers given them by the government: 0857, relating to parcel 581, and
0859, relating to parcel 391.

be executed until after 6:00 AM the following morning.  Gov. Exhibit B (0073); Gov. Exhibit C (0141).

67.   The government presented no document or report memorializing the time of the packages' arrival in Philadelphia, the time they were "identified" and "intercepted" at the airport (N.T. 9/9/12, p. 19), the time they arrived at Bala Cynwyd or the time they were presented to Kirby.

68.   The government did not present testimony from Inspector Zavorsky, who allegedly actually went to the airport to retrieve the package at the airport "ramp facility" where thousands of parcels arrive (N.T. 9/9/14, p. 73 -74).

69.   The government also did not present Inspector Zavorsky, or any documentation, in support of Inspector McStravick's explanation of the 11:06 PM container generated entry.  N.T. 9/9/14, p. 87-91.

70.   The government also offered no explanation of how Inspector Zavorsky could have scanned Package 581 in Philadelphia (0857), and Package 391 in Bellmawr, New Jersey (0859).

71.   Inspector McStravick testified that Zavorsky simply picked up a scanner and scanned the package to get it into the tracking system. N.T. 9/9/12, pp. 87, 90-91.

72.   The tracking report indicates that it was not a package generated scan that created the 11:06 PM entry for 581, but a container generated scan.  0857; N.T. 9/9/12, p. 156.

73.   Because the evidence demonstrates that the occurrence of an alert by Kirby on parcels 391 and 581 had not occurred prior to the signing of the warrants, this averment in the warrants authorizing the opening of these two parcels was a misrepresentation.

74.   The misrepresentation was material, since without the averment that "Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel" prior to the 9:20 PM

issuance of the warrants for parcels 391 and 581 (Gov. Exhibit B (0077); Gov. Exhibit C (0150)), there is no probable cause to open the parcels.

75.   Inspector McStravick offered different testimony regarding the seizure and conduct with these packages at the December 12, 2014 hearing, than he did in his testimony on September 9, 2014.  For the reasons more fully set forth in section J, infra., the new testimony should be rejected.

76.   The alert by Kirby, the contents of the parcels, and the subsequent fruits thereof, must be suppressed due to the material misrepresentation in the warrant affidavits.

**G.   The search of 6634 Boyer Street on November 14, 2012, was conducted prior to the issuance of a valid search warrant.**

77.   On November 14, 2013, parcel 581 was tracked to 6634 Boyer Street, a residence owned by Defendant.

78.   Parcel 581 contained a GPS tracking device and an alert device.

79.   Upon receiving an alarm from the alert device, indicating that parcel 581 had been opened, government agents entered the home at 6634 Boyer Street.  N.T. 12/12/14, pp. 147-148; N.T. 12/15/14, pp. 26-28.

80.   The alarm went off at approximately 2:55 p.m.   N.T. 12/15/14, p. 30; MTS 11, p. 15.

81.   Stacy Epps was arrested inside the property.  N.T. 12/12/14, p. 148;  N.T. 12/15/14, pp. 28, 30.

82.   Mr. Epps was in custody and receiving his Miranda warnings by approximately 3:02 p.m. N.T. 12/15/14, pp. 30-31; MTS 11, pp. 9, 22.

83.   Four photos of Epps were taken in the outer porch of 6634 Boyer Street.  N.T. 12/15/14, p.

40; MTS 5.

84.   Two of the photos are of Epps hands, one is his upper body and head in profile and one is face on.   N.T. 12/15/14, pp. 50-51; MTS 5.

85.   The two photos of Epps upper body and head show full daylight through the windows behind him.   N.T. 12/15/14, p. 49; MTS 5, 9.

86.   The two photos of Epps, showing daylight behind him, appear on the CDs provided by the Government as DSC_1022 and 1023.   N.T. 12/15/14, pp. 50-51; MTS 7, 6, 9.

87.   Sunset in Philadelphia on November 14, 2013 was at 4:45 p.m.  U.S. Naval Observatory and National Oceanographic & Atmospheric Administration (NOAA) printouts attached as CMTS Exhibit A, collectively.

88.   Epps was taken from the residence by 4:45 p.m.  MTS 11, pp. 13, 29.

89.   The photos of Epps were taken prior to approval of the search warrant.   N.T. 12/15/14, pp. 42-43.

90.   The first of search photographs, DSC_1024, was taken two minutes after the front (DSC_1022) and profile (DSC_1023) photographs of Mr. Epps.  MTS 6;  N.T. 12/15/14, pp. 51-52.

91.   DSC_1034 and DSC_1035 are photographs of cabinet with the drawer removed, showing a false back and a hidden compartment, in which a foil wrapped package of controlled substances was found.   N.T. 12/15/14, pp. 52-53; MTS 4, MTS 9.

92.   The photos of the exposed hidden compartment in the cabinet (DSC_1034 and DSC_1035), were taken 25 minutes after the last daylight photograph of Epps (DSC_1023).    N.T. 12/15/14, p. 54; MTS 6, 7.

93.     Inspector McStravick testified that the property was secured upon entry, after which point no search occurred.   N.T. 12/15/14, p. 33.

94.     Inspector McStravick testified that no pictures were taken inside 6634 Boyer Street until after the search warrant was signed.   N.T. 12/15/14, p. 37.

95.     A warrant for the search of 6634 Boyer Street was approved by Magistrate Judge Caracappa by phone on November 14, 2013, at 8:10 p.m.   N.T. 12/15/14, pp. 31, 38.

96.     Inspector McStravick testified that all the pictures of the search (MTS 4) were taken in the course of the search, after the warrant was approved by Judge Caracappa.   N.T. 12/15/14, p. 39.

97.     The evidence demonstrates that the search of 6634 Boyer Street was commenced no later than 5:02 p.m. - two minutes after 5:00 p.m., the latest time Epps was on the premises - and probably shortly after he was brought to the porch at approximately 3:02 p.m., and in either event more than three (3) hours before Judge Caracappa's 8:10 p.m. approval of the search warrant.

**H.     The search warrant for the Cadillac Escalade was based upon the material misrepresentation that evidence was in plain view.**

98.     Inspector McStravick testified that the key to Defendant's Cadillac Escalade was found in a hidden compartment during the course of the search of the 6634 Boyer Street, conducted after the warrant was approved.  N.T. 12/15/14, p. 55, 77-78.

99.     Inspector McStravick testified that he "did not know that key existed for the Cadillac Escalade until after 8:15 p.m. when that search began."  N.T. 12/15/14, p.78.

100.    Inspector McStravick testified that the hidden compartment also contained a little less than

$6,000 in cash.  N.T. 12/15/14, p. 55.

101.    The Search Inventory made in the presence of Inspector McStravick (N.T. 12/15/14, p. 80-81), states: "$5,980 USC - upstairs bedroom closet in trap".  MTS 12, p. 0194-0195.

102.    The search inventory does not reflect the Escalade key.  N.T. 12/15/14, pp. 71-72.

103.    The compartment where the Escalade key was found is depicted in photograph DSC_1052. N.T. 12/15/14, p. 35; MTS 4 (unnumbered page 8); MTS 9 (unnumbered page 1).

104.    Photograph DSC_1052 of the compartment where the key was found was taken one hour and 19 minutes after DSC-1022 and 1023, the two photos of Epps showing daylight behind him. MTS 6, 7.

105.    The key to the Escalade was in the possession of law enforcement as early as 4:23 p.m. (1 hr 19 minutes after Epps was secured in the porch), and no later than about 6:04 p.m. (1 hr 19 minutes after the sunset deadline beyond which the Epps daylight photographs could not have been taken).

106.    The key to the Escalade was in the possession of law enforcement at least two hours prior to the 8:10 p.m. Court approval of the warrant for the search of Boyer Street and the Escalade.  MTS 1.

107.    The averred probable cause for the search warrant included the assertion that:

> 53.    While securing the Boyer Street Property, law enforcement agents observed a black Cadillac Escalade bearing Pennsylvania registration **** parked in the driveway in front of the garage at the residence. In plain view in the rear of the vehicle law enforcement agents saw packing materials, a bag containing green packing peanuts and USPS Priority Mail boxes. Law enforcement agents recognized the green packing peanuts as the same type of packing peanuts which were contained inside of the Priority Mail Parcel, which was opened inside of the residence.

54.     Furthermore, the USPS Priority Mail boxes are the same type of box which was used to ship two kilograms of cocaine. Moreover, Simmons is the registered owner of the vehicle.

55.     As noted before, law enforcement agents have observed Simmons on previous occasions, including on November 1,2013, driving the Cadillac Escalade.

MTS 1, p. 0176, ¶¶ 53- 55.

108.    The allegation that the items described in ¶ 53 of the affidavit were in plain view is a material misrepresentation.

109.    The search of the vehicle was conducted without probable cause or and prior to the issuance of a lawfully issued warrant to seize and search the vehicle.

110.    The fruits of the unconstitutional search of the vehicle included various pieces of physical evidence, documents, and, ultimately, a gun.

I.     **The affidavit of probable cause for the November 14, 2013, search of the property 2739 Germantown Avenue, Philadelphia, PA ("Smoke Signals") contains material misrepresentations and omissions of fact and there was no basis on which to believe that evidence of illegal conduct would be found on the premises of Smoke Signals at the time of issuance of the search warrant. which rendered the warrant invalid and the search illegal.**

111.    On November 14, 2013, the government obtained a search warrant for Defendant's three story business property at the property 2739 Germantown Avenue, Philadelphia, PA ("Smoke Signals"). MTS 1.

112.    The application for the search warrant was supported by an affidavit by Inspector McStravick. MTS 1, pp. 0162-0177.

113.    The affidavit was a consolidated affidavit for Defendant's Boyer Street Residence, a black Cadillac Escalade, and Defendant's business property, Smoke Signals. MTS 1.

114.    The specific averments in support of probable cause for the search of Smoke Signals
        consisted of:

    a.    A September 26, 2013 interview of an incarcerated confidential source (CS).  MTS
              1, 0165, ¶ 9.

    b.    The CS stated that Defendant was involved in drug activity.   MTS 1, 0165, ¶ 9.

    c.    That the CS said he has worked as an armed security guard for Defendant at Smoke
              Signals.   MTS 1, 0165, ¶ 10.

    d.    That the CS explained Smoke Signals is a business not open to the public and is used
              as a front for Defendant's drug activities.   MTS 1, 0166, ¶ 11.

    e.    That the CS recalled being present when US Mail parcels arrived and Simmons took
              them to the second floor, while CS watched the door and provided armed security.
              MTS 1, 0166, ¶ 12.

    f.    That the CS had walked into the room upstairs while Defendant was opening the
              parcels and saw large piles of white powder which he believed to be cocaine.   MTS
              1, 0166, ¶ 12.

    g.    That Defendant sells marijuana, cocaine and heroin.   MTS 1, 0166, ¶ 12.

    h.    That the drugs would be distributed to customers within an hour or two.   MTS 1,
              0166, ¶ 12.

    i.    That the drug trafficking observed by CS "occurred within the last year."   MTS 1,
              0166, ¶ 12.

    j.    That Defendant was seen carrying a manilla bag, contents unknown, into Smoke
              Signals on November  1, 2013.   MTS 1, 0169, ¶ 26.

k.      That a security guard entered Smoke Signals on November 1, 2013, at about 11:35

a.m.    MTS 1, 0169-0170, ¶ 26.

115.    The Confidential Source is believed to be a person whose initials are K.M.

116.    K.M. had been arrested on September 26, 2013 and was taken to the prison on September

26, 2013, the day Inspector McStravick interviewed him.  Municipal Court Docket, attached

as CMTS  "B"; N.T. 12/12/14, p. 167.

117.    At the time government agents interviewed K.M. on September 26, 2013, he was

incarcerated on $200,000 bail. CMTS "B"

118.    At the time of the September 26, 2013 interview, K.M. stood charged with two firearms

offenses, possession of a controlled substance and conspiracy, arising from an arrest on

October 26, 2012.  Pennsylvania State Police Criminal History, attached as CMTS "C";

Court Summary, attached as CMTS "D".

119.    At the time of the September 26, 2013 interview, K.M. also stood charged with, and was

incarcerated on,  four firearms offenses, and False Reports to Police – Falsely Incriminating

Another, in violation of 18 Pa.C.S. § 4906, for an offense occurring on August 3, 2013.

CMTS B, C, D.

120.    The failure to include in the affidavit that one of the charges on which CS/KM was

incarcerated was  False Reports to Police – Falsely Incriminating Another, in violation of 18

Pa.C.S. § 4906, was a material omission.

121.    Inspector McStravick's testimony that he didn't pay attention to that charge because he is a

federal agent and doesn't know the statutes of the City of Philadelphia, is incredible.  N.T.

12/12/14, p. 168-169.

122.    The affidavit averred: "The CS is presently facing two state firearms charges and provided information to law enforcement in hopes of getting leniency in connection with those charges."  MTS 1, 0165, footnote 1 to ¶ 9.

123.    The statement in footnote 1 was inaccurate, misleading and incomplete, and constituted a multiple material misstatement/omission.

124.    The failure to include in the affidavit that CS/KM was at the time of the interview charged with two **separate and distinct** firearms cases, each with two firearms charges was a material omission.

125.    Inspector McStravick stated in his affidavit that the CS explained Smoke Signals is a business not open to the public and is used as a front for Defendant's drug activities.   MTS 1, 0166, ¶ 11.

126.    This information is nowhere reflected in Inspector McStravick's notes from the September 26, 2013 interview of the CS.  MTS 3; N.T. 12/15/14, pp. 20-21.

127.    To the contrary, the notes state "run store   do security" which indicates an operating store. MTS 3;  N.T. 12/15/14, p. 20.

128.    Inspector McStravick's assertion in the affidavit of probable cause, which is contradicted by his contemporaneous notes, was a material misrepresentation.

129.    At the time of and prior to the November 13, 2013 affidavit of probable cause, affiant Inspector McStravick knew that Smoke Signals was an operating business open to the public. N.T. 12/12/14, p. 170.

130.    The failure to include that Smoke Signals was an operating business open to the public, a known fact contrary to the statement in the affidavit that Smoke Signals is a business not

open to the public (MTS 1, 0166, ¶ 11) was a material omission.

131.   The affidavit averred that the CS recalled being present when US Mail parcels arrived. MTS 1, 0166, ¶ 12.

132.   Inspector McStravick checked to see if any U.S. Mail parcels had been delivered to Smoke Signals and there was no record of any such deliveries within the preceding 90 days.  N.T. 12/12/14, p. 166-167.

133.   Inspector McStravick failed to include in the warrant that there were no U.S. Mail parcels delivered to Smoke Signals during the 90 days prior to September 26, 2013 interview of the CS, nor were there were any U.S. Mail parcel deliveries to that address subsequent to that date up to the time of the preparation of the affidavit on November 14, 2013.

134.   The failure to include the results of investigation which did not corroborate CS assertions of U.S. Mail deliveries to Smoke Signals was a material omission.

135.   The misstatements and omissions in the warrant were knowing, intentional, made with reckless disregard for the truth, and they were material.

136.   The information provided by CS in support of the search of Smoke Signals was stale.

137.   CS was not a reliable or known informant.

138.   The information provided by CS in support of the search of Smoke Signals was unreliable

139.   At the time of the November 13, 2013 application for the search warrant there was not probable cause to believe that there was any evidence of illegal conduct in the property.

140.   The fruits of the unconstitutional search of Smoke Signals included various pieces of physical evidence, including, documents, packaging materials, a gun, a gun case, video evidence, observations, fingerprints, traces of controlled substances, and other fruits of the

search which the government intends to introduce at trial. MTS 12.

**J.**    **Inspector McStravick was so incredible, that all of his uncorroborated assertions in affidavits and testimony should be rejected.**

141.    Parcel 689 was in Inspector McStravick's control on October 30-31, 2013.  N.T. 12/12/14, p. 90.

142.    Inspector McStravick testified unequivocally that he never prepared a warrant to open parcel 689, and he never prepared a warrant for placing a tracking device or a GPS is parcel 689. N.T. 12/15/14, p. 5.

143.    Parcel 072 came into Inspector McStravick's control on November 12, 2013.  N.T. 12/15/14, pp. 108.

144.    Inspector McStravick testified that he prepared the warrant to place a GPS/tracking device and alarm device in parcel 072 after he opened the parcel.  N.T. 12/12/14, pp. 120, 123; N.T. 12/15/14, pp. 10.

145.    Inspector McStravick testified that he types his own warrants and that he prepared the specific warrant for the tracking and alarm device in connection with parcel 072.  N.T. 12/15/14, pp. 9, 10.

146.    The warrant prepared by Inspector McStravick on November 12, 2013, (MTS 2) contains the complete parcel number for parcel 689, seized on October 30, 2013.  Gov. Exhibit 2-5.

147.    The evidence demonstrates that warrant was originally prepared on October 31, 2013, for parcel 689, but not used.

148.    The document was repurposed by Inspector McStravick on November 12, 2013, but he failed to change the 689 parcel number with which he had originally drafted the document on

October 31, 2013.

149.    Inspector McStravick falsely told the Court that he never prepared a warrant to open parcel 689, and he never prepared a warrant for placing a tracking device or a GPS is parcel 689. N.T. 12/15/14, p. 5.

150.    As more fully set forth in § G, supra., Inspector McStravick repeatedly testified falsely that the November 14, 2013, search of 6634 Boyer Street did not commence before the approval of the warrant.

151.    Inspector McStravick testified that the Escalade key was found during the search pursuant to the search warrant.  N.T. 12/15/14, p.77-78.

152.    Inspector McStravick testified that he "did not know that key existed for the Cadillac Escalade until after 8:15 p.m. when that search began."  N.T. 12/15/14, p.78.

153.    The compartment where the Escalade key was found is depicted in photograph DSC_1052. N.T. 12/15/14, p. 35; MTS 4 (unnumbered page 8); MTS 9 (unnumbered page 1).

154.    The photograph of the compartment where the key was found (DSC_1052) was taken one hour and 19 minutes after the DSC_1022 and 1023, the two photos of Epps showing daylight behind him (MTS 6, 7) – 2 to 4 hours before the warrant was approved.  See § H, supra.

155.    Inspector McStravick's testimony on December 12 and 15, 2014, regarding the timing of the seizure and  submission of parcels 391 and 581 to the drug detection dog on November 13, 2014, including the sequence of events in relations to the warrant is inconsistent with his testimony about these matters on September 9, 2014, and reflects an attempt to cure the errors of his prior testimony, as identified in Defendant's November 18, 2014, Post Hearing Memorandum in Support of Motion to Suppress (Doc. 99), and December 2, 2014,

Supplemental Motion to Suppress (Doc. 107).

156.  The change in testimony demonstrates a lack of honesty to the Court on the issues relating to parcels 391 and 581.

157.  Inspector McStravick misled and misled by omission in failing to inform Judge Caracappa that Smoke Signals was open for business, and his CS was charged two separate and distinct firearms cases.  See § I, supra.

158.  Inspector McStravick's lack of candor is also apparent from of his coy responses to certain questions.  For example:

    a.    Whether the sun had set by 8:10 p.m. on November 14, 2013.  N.T. 12/15/14, p. 50.

    b.    Whether the Escalade keys were on the search inventory (MTS 12).  N.T. 12/15/14, p. 72.

    c.    That he didn't pay attention the fact that his CS was newly incarcerated on a charge of "False Report - Falsely Incriminate Another", because he is a federal agent and doesn't know the statutes of the City of Philadelphia.  N.T. 12/12/14, p. 168-169.

159.  The collective failure of Inspector McStravick to provide honest testimony under oath and in sworn affidavits, is pervasive, goes to the heart of the constitutional issues in this case, and taints the entirety of his testimony and affidavits, so as to render his evidence completely unreliable and unworthy of credit by this Court.

**WHEREFORE**, Defendant Jamahl Simmons prays this Honorable Court grant his consolidated motion to suppress

Respectfully submitted,

January 30, 2015

Alan L. Yatvin
Attorney for Defendant Jamahl Simmons

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO.  13-cr-669-CDJ |
| JAMAHL SIMMONS | : |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## CONSOLIDATED MOTION TO SUPPRESS

**A.** **The October 30, 2013 detention of parcel 689 was without reasonable suspicion to believe it contained contraband.**

Detention of a mail parcel by a postal inspector for investigatory purposes violates the Fourth Amendment prohibition against unreasonable search and seizure if not supported by reasonable, articulable suspicion that it contains contraband. *United States v. Colon*, 386 F. Appx 229, 230-31 2010 U.S. App. LEXIS 13917 (3d Cir. 2010) (not precedential).  In order to determine whether reasonable  suspicion existed, "[a] district court must examine the totality of the circumstances confronting the officer at the time and eschew analyzing any one factor in isolation." *Id.* at 231.

The government bears the burden of proving the existence of reasonable suspicion. See *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (stating that government has burden of proving seizure was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure"); *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) ("once the defendant has established a basis for his motion . . . the burden shifts to the government to show that the search or seizure was reasonable").

Here, Inspector  McStravick testified that the profile for reasonable suspicion that a parcel

contains controlled substances has numerous variables.  N.T. 12/12/14, pp. 172-175.  He further testified that he cannot make a determination without physically looking at a parcel, picking it up and reading it (N.T. 12/12/14, p. 174), that he "needs to actually touch a parcel" and "without touching [a] parcel [he] wouldn't be able to make a conclusion" as to whether it contained controlled substances.  N.T. 12/12/14, p. 175.

Parcel 689, depicted in Government Exhibit 5, is the first parcel touched by Inspector McStravick in this case.  N.T. 12/12/14, p. 176.  He did this when he removed parcel 689 from a hamper at the Network Distribution Center (NDC) in North Philadelphia.  N.T. 12/12/14, p. 192. At that point, he claims that he "was able to determine just by touching it that those flaps were [sealed]."  N.T. 12/12/14, p. 177.  He also claimed that he could tell from holding the parcel 689 that it was tightly packaged and the density of the parcel was focused in the middle.  N.T. 12/12/14, p. 188-189.

As a result of his seizure of parcel 689, Inspector McStravick included in the affidavit of probable cause in support of the search warrants for Boyer Street, the Escalade and Smoke Signals representation that the parcel was "taped and glued shut."  MTS 1, continuation of ¶ 15, p. 0168.

Inspector McStravick testified that he "took the parcel out of the mail stream" by removing it from a hamper at the Network Distribution Center (NDC) in North Philadelphia.  N.T. 12/12/14, p. 89, 192.  There is no question that Inspector McStravick's seizure of the parcel 689 at the NDC, constituted detention of a mail parcel by a postal inspector for investigatory purposes.  However, at the point he did so, he did not have a sufficient basis to do so.  Indeed, he appears to concede as much.  N.T. 12/12/14, pp. 196-197.

Inspector McStravick's observations and physical handling of Parcel 689, the photographs

Page 2

of the parcel (N.T. 12/12/14, p. 90; Gov. Exhibit 2), and any fruit of its seizure, violated the Fourth Amendment prohibition against unreasonable search and seizure, because the seizure was not supported by reasonable, articulable suspicion that the parcel contained contraband, and therefore the observations and fruit must be suppressed.

**B.    The November 12, 2013 detention of parcel 072 was without reasonable suspicion to believe it contained contraband.**

Defendant incorporates the legal argument on reasonable suspicion to detain a mail parcel set forth in § A., supra.

Here, the evidence of suspicion adduced for the investigatory seizure of the parcel ending in Priority Mail No. 072, consists of the information known to the Inspector McStravick prior to the exposure of the parcel to drug detection canine Kirby, on November 12, 2013. That information included the information obtained through the illegal seizure of parcel 689 (see § A, supra.).

Additionally, the testimony of Inspector McStravick is not credible (see § J in the accompanying motion). For that reason his claims of reasonable suspicion should be rejected and the Court should conclude that there was not a specific, articulable basis to believe parcel 072 contained contraband, so as to permit it to be removed from the mail stream and subjected to a drug detection dog. Because the seizure was in violation of the Fourth Amendment, the evidence of the dog alerts, the contents of the parcel and the subsequent evidence developed as a result of the delivery of the parcel must be suppressed.

**C.    The insertion of tracking and entry detection devices in parcel 072 on November 12, 2013, was without a valid warrant.**

A mobile tracking device may be placed in a parcel upon issuance of a warrant pursuant to Federal Rule of Criminal Procedure 41(b)(4) and 18 U.S.C. § 3117. The government identifies no

authority for placement of the alert device.

Here, Inspector McStravick, placed a GPS tracking device in parcel 072, along with a monitor to alert when the package was opened.  12/12/14 N.T., pp. 120-121.  The warrant for the placement relied upon to place the devices in parcel 072, was for parcel 069.  N.T. 12/15/14, pp. 13-14, MTS Exhibit 2.

Presumably the government will seek to rely upon the *Leon* good faith exception. See *United States v. Leon*, 468 U.S. 897, 926, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984).  At this juncture there is no testimony to support a finding of good faith.  Accordingly, the fruits of the tracking of parcel 072 should be suppressed.

**D.     The November 12-13, 2013 detention of parcels 391 and 581 was without reasonable suspicion to believe they contained contraband.**

Defendant incorporates the legal argument on reasonable suspicion to detain a mail parcel set forth in § A., supra.

Here, the evidence of suspicion adduced for the investigatory seizure of the parcels ending in Priority Mail No. 391 and 581, consists of the information known to the Inspector McStravick prior to the exposure of the parcel to drug detection canine Kirby, on November 13, 2013.  That information included the information obtained through the illegal seizure of parcels 689 and 072 (see §§ A and B, supra.).

Additionally, the testimony of Inspector McStravick is not credible (see § J in the accompanying motion).  For that reason, his claims of reasonable suspicion should be rejected and the Court should conclude that there was not a specific, articulable basis to believe parcels 391 and 581 contained contraband, so as to permit it to be removed from the mail stream and subjected to

Page 4

a drug detection dog.  Because the seizures were in violation of the Fourth Amendment, the evidence of the dog alerts, the contents of the parcels and the subsequent evidence developed as a result of the delivery of the parcels must be suppressed.

**E.      There is no evidence of canine Kirby's reliability so as to establish probable cause to open 072, 391 and 581, seized on November 12-13, 2013, based upon her alleged alert, and the circumstances of the alleged alert were not reliable.**

In *Florida v. Harris*, 133 S. Ct. 1050, 1057, 185 L. Ed. 2d 61 (2013), the Supreme Court stated that a defendant must be afforded the opportunity to challenge "evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." Id. "The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings." *Id.* Likewise, the circumstances under which the dog alerted are properly considered in determining whether there is probable cause based thereupon.  *Id.* at 1056.

Additionally, whether the circumstances of the alleged alert were sufficiently reliable has not been demonstrated in this case.  There are no reports from Detective Kelliher, or otherwise, indicating the circumstances of the exposure or the nature of the alert.  Likewise the examination of Detective Kelliher on September 9, 2014 hardly scratched the surface of those circumstances.

Accordingly, the government should be required to produce evidence of Kirby's reliability and evidence that the circumstance of the alleged alerts on the subject parcels was reliable.  133 S. Ct. at 1056.

**F.      The affidavits of probable cause for parcels 391 and 581 contain material misrepresentations of fact which rendered the warrants invalid and the searches illegal.**

To establish that a warrant was issued without probable cause because the supporting affidavit included material misrepresentations or omissions, a defendant must show "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).  "*Franks* requires suppression of evidence obtained pursuant to a warrant issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth." *United States v. Brown*, 631 F.3d 638, 641-642 (3d Cir. 2011).

In determining whether the false information is material, the "question is whether, after the offending language is removed, the affidavit's four corners still contain sufficient evidence to support a finding of probable cause. ... What little is left after excision is insufficient to establish a "fair probability that . . . evidence of a crime will be found in a particular place ..." *Brown*, at 631 F.3d at 642 n.4 (citations omitted).

Here, the material misrepresentation is that "Kirby alerted positive to the odor of the presence of illegal narcotics inside the parcel" prior to the 9:20 PM issuance of the warrants for parcels 391 and 581.  Gov. Exhibit B (Bate No. 0077); Gov. Exhibit C (Bate No. 0150).  Evidence of that misrepresentation appears from the documentary evidence and the testimony, as well as the lack thereof.

On November 13, 2013, Inspector McStravick prepared two affidavits of probable cause for two priority mail packages mailed from California.  Gov. Exhibit B and C.  Those affidavits were

Page 6

emailed to U.S. Magistrate Judge Linda Caracappa at 5:30 PM on November 13, 2013.  Gov. Exhibit D, p. 1.

The affidavits each stated that "[o]n November 13, 2013, the Subject Parcel **was** exposed to a drug detection canine ..."  Gov. Exhibit B (Bate No. 0077) ¶ 5; Gov. Exhibit C (Bate No,. 0150) ¶ 5 (emphasis added).

The affidavits each stated that "[t]he Subject Parcel **is presently located** at the United States Postal Inspection Service Narcotics Office with the Eastern District of Pennsylvania."  Gov. Exhibit B (Bate No. 0077) ¶ 6; Exhibit C (Bate No. 0150) ¶ 6 (emphasis added). [5]

Neither of these statements was true at the time the documents were presented to Judge Caracappa by email at 5:30 PM on November 13, 2013, nor were they true at the time Judge Caracappa approved the warrants at 9:20 PM.

Inspector McStravick testified that "[t]he two additional boxes were identified, they were intercepted at the inner mail facility at the Philadelphia International Airport."  N.T. 9/9/14, p. 19. Inspector McStravick testified that after he identified the packages, he contacted AUSA Tulante and began to prepare the affidavits for search of the boxes.  N.T. 9/9/14, p. 19. Inspector McStravick's affidavits and attendant documents were then emailed to Judge Caracappa at 5:30 PM on November 13, 2013.   Gov. Exhibit D, p. 1.

He then testified on cross-examination that the parcels were retrieved and presented to Kirby between 6-9 PM.  N.T. 9/9/14, pp. 74-75, 83.

Contrary to the affidavits and Inspector McStravick's testimony before this Court that the packages had arrived, been identified and intercepted by Inspector McStravick, the email stated that

_____

[5]That Office is located "Bala Cynwyd off of City Line Avenue."  N.T. 9/9/14, p. 184.

the "packages are on planes en route to Philadelphia International Airport and are not expected to be presented to the drug-detection dog until 9:30 p.m. tonight, at the earliest."  Gov. Exhibit D, p.1.

Inspector McStravick's testimony on direct that the boxes had been intercepted at the airport in Philadelphia **before** he contacted AUSA Tulante and started preparing the affidavits (N.T. 9/9/14, p. 19), cannot  be reconciled with AUSA Tulante's email to Judge Caracappa, with Inspector McStravick's completed affidavits, stating that the packages are on planes en route to Philadelphia International Airport..."  Gov. Exhibit D.

Inspector McStravick testified that at some point the packages were presented to Kirby a drug detection dog, who indicated the presence of controlled substances, whereupon he contacted AUSA Tulante who got Judge Caracappa on the phone, and the warrants were approved over the phone. N.T. 9/9/14, p.  21-22. This approval occurred at 9:20 PM on November 13, 2013.  N.T. 9/9/14, p. 23; Gov. Exhibit B (Bate Nos. 0072, 0073, 0078); Gov. Exhibit C (Bate Nos. 0140, 0141 and 151).

In fact, at 9:20 PM, when Judge Caracappa approved the warrants, the packages were not in the custody of Inspector McStravick at the Postal Inspection Service Narcotics Officer, nor had they been presented to K-9 Kirby.  Indeed, according to the Post Office's Product Tracking System records, the container with 581 did not even arrive in Philadelphia until 11:06 PM. Bate No. 0857.[6]

However, it was essential that Inspector McStravick indicate that there had been a positive alert by Kirby at 9:20 PM for two reasons: First, Judge Caracappa had been advised that the package would arrive by and be presented to Kirby by 9:30 PM (Gov. Exhibit D) and this is when she was

_____

[6]The undersigned was not counsel at the hearing, and the record is a bit confusing as to how the exhibits were marked, accordingly, the two Product Tracking System printouts will be identified by the Bate numbers given them by the government: 0857, relating to parcel 581, and 0859, relating to parcel 391.

going to be available (NT 84); and second, if not approved and executed by 10:00 PM the warrants could not be executed until after 6:00 AM the following morning.  Gov. Exhibit B (0073); Gov. Exhibit C (0141).

It is notable that the government presented no document or report memorializing the time of the packages' arrival in Philadelphia, the time they were "identified" and "intercepted" at the airport (N.T. 9/9/14, p. 19), the time they arrived at Bala Cynwyd or the time they were presented to Kirby. Nor did the government present testimony from Inspector Zavorsky, who allegedly actually went to the airport to retrieve the package at the airport "ramp facility" where thousands of parcels arrive (N.T. 9/9/14, p. 73 -74).   The government also did not present Inspector Zavorsky, or any documentation, in support of Inspector McStravick's nonsensical explanation of the 11:06 PM container generated entry.  N.T. 9/9/14, p. 87-91.

The government also offered no explanation of how Inspector Zavorsky could have scanned Package 581 in Philadelphia (0857), and Package 391 in Bellmawr, New Jersey (0859).  Further, the explanation offered by Inspector McStravick, that Zavorsky simply picked up a scanner and scanned the package to get it into the tracking system (N.T. 9/9/14, p. 87, 90-91), is belied by the tracking report, which indicates that it was not a package generated scan that created the 11:06 PM entry for 581, but a container generated scan.  0857; N.T. 9/9/14, p. 156.  Indeed, the alleged activities of Inspector Zavorsky were not discussed or disclosed by Inspector McStravick in his testimony on direct, nor do they appear in any document.

Because the evidence demonstrates that the occurrence of an alert by Kirby on parcels 391 and 581 had not occurred prior to the signing of the warrants, this averment in the warrants authorizing the opening of these two parcels was a misrepresentation.  Further, the misrepresentation

was material, since without the averment that "Kirby alerted positive to the odor of the presence of

illegal narcotics inside the parcel" prior to the 9:20 PM issuance of the warrants for parcels 391 and

581 (Gov. Exhibit B (0077); Gov. Exhibit C (0150)), there is no probable cause to open the parcels.

Accordingly, even assuming *arguendo* that there was a basis to seize parcels 391 and 581 from the

postal delivery stream (see § D, supra), the alert by Kirby, the contents of the parcels, and the

subsequent fruits thereof, must be suppressed due to the material misrepresentation in the warrants.

**G.**     **The search of 6634 Boyer Street on November 14, 2012, was conducted prior to the issuance of a valid search warrant.**

Police lawfully in a residence may secure the property pending issuance of a search warrant.

It is axiomatic that in the absence of intervening exigent circumstances, law enforcement officers

must wait for a judicial officer to approve the search warrant.   A search in anticipation of the

issuance of a search warrant violates the Fourth Amendment.

As more fully set forth in § G of the accompanying motion, the evidence incontrovertibly

demonstrates that the photographically documented search of 6634 Boyer Street commenced 3-5

hours prior to the Magistrate Judge's approval of the warrant.

**H.**     **The search warrant for the Cadillac Escalade was based upon the material misrepresentation that evidence was in plain view.**

Defendant incorporates the legal argument on material misrepresentation or omission set

forth in § F., supra.

As more fully set forth in § H of the accompanying motion, the keys to the Cadillac Escalade

were in a hidden compartment in a bedroom closet.  That compartment was opened and those keys

were in the possession of law enforcement several hours before approval of the warrant to search the

vehicle.   The photographs of the vehicle (MTS 10) demonstrate that the objects Inspector

McStravick claims to have seen in the rear of the vehicle would not have been visible to him unless he opened the vehicle with the key.

Here, the material misrepresentations were:

53.     While securing the Boyer Street Property, law enforcement agents observed a black Cadillac Escalade bearing Pennsylvania registration **** parked in the driveway in front of the garage at the residence. In plain view in the rear of the vehicle law enforcement agents saw packing materials, a bag containing green packing peanuts and USPS Priority Mail boxes. Law enforcement agents recognized the green packing peanuts as the same type of packing peanuts which were contained inside of the Priority Mail Parcel, which was opened inside of the residence.

54.     Furthermore, the USPS Priority Mail boxes are the same type of box which was used to ship two kilograms of cocaine. Moreover, Simmons is the registered owner of the vehicle.

Affidavit, p. 15, ¶¶ 53- 54 (Exhibit B).

The items described in ¶¶ 53- 54 were not in plain view and were observed by agents who entered the vehicle prior to issuance of the warrant.  Absent plain view observation of objects in the vehicle which allegedly matched objects observed inside the Boyer Street property when it was being secured by law enforcement, there was no probable cause to believe that evidence would be found in the vehicle, and thus an affidavit without this material misrepresentation is insufficient and the fruits of the search must be suppressed.

I.     **The affidavit of probable cause for the November 14, 2013, search of the property 2739 Germantown Avenue, Philadelphia, PA ("Smoke Signals") contains material misrepresentations and omissions of fact and there was no basis on which to believe that evidence of illegal conduct would be found on the premises of Smoke Signals at the time of issuance of the search warrant. which rendered the warrant invalid and the search illegal.**

Defendant incorporates the legal argument on material misrepresentation or omission set forth in § F., supra.

Here, the material misrepresentations and omissions were:

a.    At the time of the September 26, 2013 interview, the CS stood charged with two firearms offenses, possession of a controlled substance and conspiracy, arising from an arrest on October 26, 2012.  CMTS C and D.

b.    At the time of the September 26, 2013 interview, the CS stood charged with, and was incarcerated on,  four firearms offenses, and False Reports to Police – Falsely Incriminating Another, in violation of 18 Pa.C.S. § 4906, for an offense occurring on August 3, 2013.  CMTS B, C and D.

c.    At the time of and prior to the November 13, 2013 affidavit of probable cause, affiant Inspector McStravick knew that Smoke Signals was an operating business open to the public, a known fact contrary to the statement in the affidavit that Smoke Signals is a business not open to the public.  MTS 1, 0166, ¶ 11.

d.    The affidavit averred: "The CS is presently facing two state firearms charges and provided information to law enforcement in hopes of getting leniency in connection with those charges."  MTS 1, 0165, footnote 1 to ¶ 9.

These misstatements and omissions were knowing, intentional, made with reckless disregard for the truth, and they were material.  Had the above accurate, correct and relevant information, which was known to the affiant, been included in the affidavit, a reasonable magistrate would not have found probable cause to issue a warrant for the search of Smoke Signals.

It has long been "manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Sgro v. United States*, 287 U.S.

Page 12

206, 210-211, 53 S. Ct. 138, 140, 77 L. Ed. 260, 263 (1932).

> The age of the information supporting a warrant application is a factor that must be considered in determining probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). If information is too old, it may have little value in showing that contraband or evidence is still likely to be found in the place for which the warrant is sought. Id. Age alone, however, does not determine staleness. "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983), cert. denied sub nom., *Sanchez v. United States*, 466 U.S. 904, 80 L. Ed. 2d 154, 104 S. Ct. 1679 (1984). "When an activity is of a protracted and continuous nature, 'the passage of time becomes less significant.' " *Id.* (quoting *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973)). Thus, when the criminal activity has been going on continuously for years, staleness is of less concern. Id. at 1120 (staleness did not negate probable cause in drug trafficking conspiracy that had been going on for several years).

*United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

The Supreme Court has also explained that a magistrate issuing a warrant must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found **in a particular place**." *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) (emphasis added).

Here, there was no reasonably current or reliable information that contraband or evidence of a crime would be found in Smoke Signals.

**J.    Inspector McStravick was so incredible, that all of his uncorroborated assertions in affidavits and testimony should be rejected.**

All of the testimony in furtherance of the Government's burden on the motion to suppress has been provided by Inspector McStravick. Likewise all the warrants upon which the government relies were issued in reliance upon affidavits by Inspector McStravick.

As more fully set forth in the accompanying motion, and particularly § J, Inspector McStravick has repeatedly given dishonest testimony to this Court on material issues and has been deliberately dishonest or misleading in sworn affidavits in support of warrants. Inspector McStravick's dishonesty is so pervasive, material and demonstrable, that the Court should reject the entirety of his testimony as well as those portions of his affidavits not independently corroborated.

**WHEREFORE**, defendant Jamahl Simmons prays this Honorable Court grant his consolidated motion to suppress.

Respectfully submitted,

January 30, 2015

_____
Alan L. Yatvin
Attorney for Defendant Jamahl Simmons

Page 14

**CERTIFICATE OF SERVICE**

       I, Alan Yatvin, Esquire, do hereby certify that on this date, a true and correct copy of the foregoing has been filed electronically by ECF, and is also being served on the government by ECF to and by Hand Delivery on February 2, 2015:

               Sozi Pedro Tulante, AUSA
               United States Attorney's Office
               615 Chestnut Street, Suite 1250
               Philadelphia, PA 19106

January 30, 2015

               Alan L. Yatvin

Page 15

# U.S. Naval Observatory
# Astronomical Applications Department

## Sun and Moon Data for One Day

Philadelphia, Philadelphia County, PA (Longitude W75° 9', Latitude N40° 0')

November 14, 2013                    Eastern Standard Time

### Sun

| | |
|---|---|
| Begin civil twilight | 6:16 a.m. |
| Sunrise | 6:45 a.m. |
| Sun transit | 11:45 a.m. |
| Sunset | 4:45 p.m. |
| End civil twilight | 5:14 p.m. |

### Moon

| | |
|---|---|
| Moonset | 3:38 a.m. |
| Moonrise | 3:04 p.m. |
| Moon transit | 9:48 p.m. |
| Moonset | 4:40 a.m. on following day |

Closest Primary Moon Phase: Full Moon on November 17, 2013 at 10:16 a.m. (local standard time)

Phase of the Moon on November 14, 2013: Waxing Gibbous with 91% of the Moon's visible disk illuminated.

Case 2:13-cr-00669-CDJ   Document 140   Filed 01/30/15   Page 41 of 51



Back to form

U.S. Department of Commerce | National Oceanic & Atmospheric Administration | NOAA Research

## Earth System Research Laboratory
### Global Monitoring Division

Search ESRL:

Search

Calendar | People | Publications

| Home | About | Research | Products | Observatories | Information | Site Map | Intranet |

**G-Rad Home**

Personnel
Internal Pages

**Observing Networks**

Observation Networks
SURFRAD Network
ISIS Network
NEUBrew Network
Antarctic UV Network

**Measurements & Instruments**

Instrument Descriptions
Baseline Sites Daily Plots

**Calibration Facilities**

Broadband Solar
Central UV Calibration Facility

**Solar Calculators**

Solar Calculator
Sunrise/Sunset (Old version)
Solar Position (Old version)

**Information**

Radiation Primer
Barrow Snow Melt Dates
Terminology
"Red Sky in the Morning"

**Data**

MLO Transmission
Global Remote FTP Server
SURFRAD FTP Server
CUCF FTP Server
NEUBrew FTP Server

**GMD Organization**

**Contact GMD**

**GMD Intranet**

# NOAA Solar Calculator

### Find Sunrise, Sunset, Solar Noon and Solar Position for Any Place on Earth

**Show:**    World Cities    U.S. Cities    GMD Observ.'s    GMD Data Sites    SurfRad

Click one of the small pins near (and in the same time zone as) your desired location. Use the control on the left side of the map to zoom in or out. Place the large pin in the exact desired location. You can use the Save button to have your computer remember the current location for next time. Check the DST check box if Daylight Saving Time is in effect for your site.



Map · Report a map error

| Location: | Lat 39.9846 | Lng -75.138173 | Time Zone -5 | DST? □ | Save |

| Date: | Day 14 | Mon Nov | Yr 2013 | Local Time: | 10 | : 39 | : 31 | PM |

| Equation of Time (minutes): | Solar Declination (in °): | Apparent Sunrise | Solar Noon: | Apparent Sunset: | Az/El (in °) at Local Time: |
|---|---|---|---|---|---|
| 15.54 | -18.38 | 06:45 | 11:45:01 | 16:45 | 162.07   29.7 |
| Show on map: | | | | Sunset | |

## Having Trouble?

- Check your Time Zone -- Is the time zone set correctly for this location? Try clicking on one of the city pins near (and in the same time zone as) your location. Tick the boxes above the map to show different sets of pins.
- Daylight Saving Time? -- Our calculator does not automatically set Daylight Time, so tick the DST box if Daylight Time is in effect for your location on the day you have entered.
- Click the *Show on map* checkboxes under sunrise, sunset and azimuth/elevation to display color-coded lines on the map indicating the direction of sunrise, sunset and current solar position.
- This solar calculator is provided for research and entertainment purposes only. Due to variable atmospheric conditions and uncertainty inherent in the algorithms used, the actual observed values of sunrise, sunset and solar position may differ from the results presented here.
- Other Questions? -- Feel free to write to us with any questions or comments at Webmaster.

## Solar Calculation Resources:

- Solar Calculator Links
- Old Sunrise Calculator
- Calculation Details

Case 2:13-cr-00669-CDJ   Document 140   Filed 01/30/15   Page 43 of 51

- Solar Calculator Glossary
- Old Solar Pos Calculator
- Time Zone Table

U.S. Department of Commerce | National Oceanic and Atmospheric Administration
Earth System Research Laboratory | Global Monitoring Division
http://www.esrl.noaa.gov/gmd/grad/solcalc/index.html

Privacy Policy | Accessibility | Disclaimer | USA.gov
Contact Us | Webmaster
Site Map

1/23/2015 10:45 AM

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

### DOCKET

**Docket Number: MC-51-CR-        17-2013**

# CRIMINAL DOCKET

**Court Case**



Commonwealth of Pennsylvania

v.

K

Page 1 of 4

## CASE INFORMATION

Cross Court Docket Nos: CP-51-CR-      -2013

Judge Assigned:                                                    Date Filed: 09/25/2013          Initiation Date: 09/25/2013

OTN: N 8:      -5                    LOTN:            Originating Docket No: 13:          317

Initial Issuing Authority:  Judge Migrated                 Final Issuing Authority:

Arresting Agency:  Philadelphia Pd                          Arresting Officer:  Barbee, Maria

Complaint/Incident #:  13      46-003

Case Local Number Type(s)                                   Case Local Number(s)

    Originating Docket Number                         MC-51-CR-         '-2013

    District Control Number                           132      46

    Originating Document Number                       132      46      17

## STATUS INFORMATION

| Case Status: | Closed | Status Date | Processing Status | Arrest Date: | 09/25/2013 |
|---|---|---|---|---|---|
| | | 12/17/2013 | Completed | | |
| | | 09/25/2013 | Awaiting Preliminary Hearing | | |
| | | 09/25/2013 | Awaiting Status Hearing | | |

Complaint Date:          09/25/2013

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Preliminary Arraignment | 09/25/2013 | 5:52 pm | B08 | | Scheduled |
| Preliminary Hearing | 10/15/2013 | 9:00 am | 806 | Judge Karen Y. Simmons | Continued |
| Preliminary Hearing | 11/05/2013 | 9:00 am | 806 | Judge Karen Y. Simmons | Continued |
| Preliminary Hearing | 12/03/2013 | 9:00 am | 806 | | Continued |
| Preliminary Hearing | 12/17/2013 | 9:00 am | 806 | Judge Dawn A. Segal | Scheduled |
| Formal Arraignment | 01/07/2014 | 11:00 am | 1104 | Trial Commissioner Linda Mariani | Cancelled |
| Formal Arraignment | 01/07/2014 | 11:00 am | 1104 | Trial Commissioner Linda Mariani | Cancelled |

## CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|

## DEFENDANT INFORMATION

Date Of Birth:                      1980          City/State/Zip:  Philadelphia, PA  19140

Alias Name

M    . K

CPCMS 9082                                                                            Printed:  12/05/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

## DOCKET

Docket Number: MC-51-CR        I7-2013

# CRIMINAL DOCKET

**Court Case**



Commonwealth of Pennsylvania

v.

K      M

Page 2 of 4

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | M    K |

## BAIL INFORMATION

N    K                                                                                    **Nebbia Status:  None**

| Bail Action | Date | Bail Type | Percentage | Amount | Bail Posting Status | Posting Date |
|---|---|---|---|---|---|---|
| Set | 09/25/2013 | Monetary | 10.00% | $200,000.00 | | |
| Decrease Bail Amount | 11/05/2013 | Monetary | | $150,000.00 | | |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | | **18 § 6106** | Firearms Not To Be Carried W/O License | 08/03/2013 | N 8    1-5 |
| 2 | 2 | | **18 § 6106** | Firearms Not To Be Carried W/O License | 08/03/2013 | N 8    1-5 |
| 3 | 3 | | **18 § 6108** | Carry Firearms Public In Phila | 08/03/2013 | N 8    1-5 |
| 4 | 4 | | **18 § 6108** | Carry Firearms Public In Phila | 08/03/2013 | N 8    1-5 |
| 5 | 5 | | **18 § 4906** | False Report - Falsely Incriminate Another | 08/03/2013 | N 8    1-5 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served | |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date | |
| Sentence Conditions | | | |

**Proceed to Court**

| Preliminary Arraignment | 09/25/2013 | Not Final |
|---|---|---|
| 1 / Firearms Not To Be Carried W/O License | Proceed to Court | 18 § 6106 §§ A1 |
| 2 / Firearms Not To Be Carried W/O License | Proceed to Court | 18 § 6106 §§ A1 |
| 3 / Carry Firearms Public In Phila | Proceed to Court | 18 § 6108 |
| 4 / Carry Firearms Public In Phila | Proceed to Court | 18 § 6108 |
| 5 / False Report - Falsely Incriminate Another | Proceed to Court | 18 § 4906 §§ A |

**Held for Court**        Defendant Was Present

| Preliminary Hearing | 12/17/2013 | Final Disposition |
|---|---|---|
| 1 / Firearms Not To Be Carried W/O License | Held for Court | 18 § 6106 §§ A1 |
| 2 / Firearms Not To Be Carried W/O License | Held for Court | 18 § 6106 §§ A1 |
| 3 / Carry Firearms Public In Phila | Held for Court | 18 § 6108 |
| 4 / Carry Firearms Public In Phila | Held for Court | 18 § 6108 |
| 5 / False Report - Falsely Incriminate Another | Held for Court | 18 § 4906 §§ A |

CPCMS 9082                                                                                    Printed: 12/05/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

### DOCKET

**Docket Number: MC-51-CR-        17-2013**

# CRIMINAL DOCKET

**Court Case**



Commonwealth of Pennsylvania

v.

Ⱶ          M

Page 3 of 4

## COMMONWEALTH INFORMATION

| | |
|---|---|
| <u>Name:</u> | Philadelphia County District Attorney's Office |
| | Prosecutor |
| <u>Supreme Court No:</u> | |
| <u>Phone Number(s):</u> | |
| 215-686-8000 | (Phone) |
| <u>Address:</u> | |
| 3 South Penn Square | |
| Philadelphia, PA  19107 | |

## ATTORNEY INFORMATION

| | |
|---|---|
| <u>Name:</u> | Defender Association of Philadelphia |
| | Public Defender |
| <u>Supreme Court No:</u> | |
| <u>Rep. Status:</u> | Active |
| <u>Phone Number(s):</u> | |
| <u>Address:</u> | |

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 09/25/2013 | | Municipal Court - Philadelphia County |
| PARS Transfer | | | |
| 2 | 09/25/2013 | | Rebstock, Francis J. |
| Bail Set - M     Ⱶ | | | |
| 3 | 10/15/2013 | | Simmons, Karen Y. |

Order Granting Motion for Continuance
PRELIMINARY HEARING
Listed for status of preliminary hearing date
Next court date 11.5.13 room #806
Defense motion to decrease bail: DENIED
Defendant is in custody

Judge: Karen Y. Simmons
ADA: Tartikoff; PD: Hou; Steno: Coffman; Clerk: Hancock

| 4 | 11/05/2013 | | Simmons, Karen Y. |
|---|---|---|---|

Order Granting Motion for Continuance
Honorable Karen Y. Simmons, ADA: J.T. Tartikoff, PD: Jenny Hou, Steno: Kim Tawarnicki, Clerk: Lisa Norris

Commonwealth: ready, discovery passed at bar
Defense: request for further consideration of offer
Bail Decreased to $150,000.00 Cash Bail (no 10%) per agreement by counsels
Earliest possible date: 11/12/2013
Time Ruled Excludable
Next court date: 12/3/2013 Room 806

Printed: 12/05/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# MUNICIPAL COURT OF PHILADELPHIA COUNTY
## DOCKET



**Docket Number: MC-51-CR         17-2013**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

K          M

Page 4 of 4

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 4 | 12/03/2013 | | Pew, Wendy L. |

Order Granting Motion for Continuance

Honorable Wendy L. Pew, ADA:  J.T. Tartikoff, PD: Jenny Hou, Steno: Kim Tawarnicki, Clerk: Lisa Norris

Commonwealth: not ready, request for further investigation
Defense: request for further investigation
Joitn request
Time ruled excludable
Next court date: 12/17/2013 Room 806

---

| 1 | 12/17/2013 | | Segal, Dawn A. |

Held for Court

Honorable Dawn A. Segal, ADA:  J.T. Tartikoff, PD: Jenny Hou, Steno: Kim Tawarnicki, Clerk: Lisa Norris - Waiver of Preliminary Hearing - Defendant Held for Court on 1/7/2014 Room 1104 @ 11am.

---

| 2 | 12/17/2013 | | Philadelphia County Clerk of Quarter Sessions |

Formal Arraignment Scheduled 01/07/2014 11:00AM

---

| 1 | 12/18/2013 | | Active Criminal Records Department |

Formal Arraignment Scheduled 01/07/2014 11:00AM

---

| 2 | 12/18/2013 | | Unknown Filer |

Common Pleas Case Created

---

| 3 | 12/18/2013 | | Active Criminal Records Department |

Formal Arraignment Cancelled

---

| 4 | 12/18/2013 | | Active Criminal Records Department |

Formal Arraignment Cancelled

---

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

SP4-137B
COMPILED: 2014/09/16                                                    PAGE: 1 of 2

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

=================================================================
USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 247    -8 ***
REGULATED BY ACT 47, AS AMENDED.
=================================================================
IDENTIFICATION
NAME: M(    ,K:
SID: 247    -8                DOB: 1980,            SOC: XXX-XX
SEX: MALE        RAC: BLACK       HAI: BLACK        EYE: BLACK
HGT: 5'05"       WGT: 215
POB: PENNSYLVANIA   US CITIZEN:
COUNTRY OF CITIZENSHIP:
=================================================================
CRIMINAL HISTORY
NAME: M    ,K:                    OTN: N8:    1-3
ARRESTED: 2012/10/27  PAPEP0000  PHILADELPHIA              OCA: C08.  53
DISPO DATE: 2014/02/25            COMMON PLEAS DOCKET: CP-51-CR-    !6-2013
DISTRICT JUSTICE: 01

| OFFENSE DATE | CHARGE | COUNT | GRADE | DISP CHG | DISPOSITION |
|---|---|---|---|---|---|
| 2012/10/26 | CC6106A1 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | F3 | | COSTS/ PLEAD GUILTY/ COUNTY PRISON/ 09 MOS - 001 YRS 11 MOS/ COUNTY PROBATION/ 09 MOS - 09 MOS |

=================================================================
NAME: M    ,K:                    OTN: N0u:    1-5
ARRESTED: 2013/09/25  PAPEP0000  PHILADELPHIA              OCA: C0....63
DISPO DATE: 2014/02/25            COMMON PLEAS DOCKET: CP-51-CR-    )7-2013

| OFFENSE DATE | CHARGE | COUNT | GRADE | DISP CHG | DISPOSITION |
|---|---|---|---|---|---|
| 2013/08/03 | CC4906A FALSE REPORTS TO LAW ENFORCEMENT AUTHORITIES | 1 | M2 | | PLEAD GUILTY |
| 2013/08/03 | CC6106A1 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | F3 | | COSTS/ PLEAD GUILTY/ COUNTY PROBATION/ 004 YRS |
| 2013/08/03 | CC6106A1 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | F3 | | PLEAD GUILTY |

=================================================================
ADDITIONAL IDENTIFIERS
AKAs: M(    ,K    S    / M    ,K    S:------
DOBs:
SOCs: XXX-XX-
MNUs:

```
SP4-137B
CRIMINAL HISTORY RECORD - CONTINUATION FOR *** 247      8 ***
COMPILED: 2014/09/16                                    PAGE: 2 of 2

================================================================================
            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE NUMERIC=DEGREE
            ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE


RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE AGENCIES.

AS OF 12/09/2013 THE PENNSYLVANIA STATE POLICE CONVERTED THE CHARGE FIELD FROM THE SCN
CODES TO A PURDON'S FORMAT FOR CUMBERLAND COUNTY ONLY.

   **************************** END OF RAP SHEET ****************************
```


# First Judicial District of Pennsylvania
## Court Summary

| | | | | |
|---|---|---|---|---|
| N     , K | DOB:      /1980 | | Sex: Male | |
| Philadelphia, PA  19149 | | | Eyes: Black | |
| Aliases: | | | Hair: Black | |
| Kashif Moore | | | Race: Black | |

**Closed**

**Philadelphia**

**CP-51-CR-      6-2013**   Proc Status: Completed          DC No: 12:      24          OTN:N8      13
Arrest Dt: 10/27/2012      Disp Date: 02/25/2014      Disp Judge: Erdos, Michael
Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Description | Disposition |
|---|---|---|---|
| | Sentence Dt. | Sentence Type | Program Period | Sentence Length | |

| Seq No | Statute | Sentence Dt. | Sentence Type | Program Period | Description / Sentence Length | Disposition |
|---|---|---|---|---|---|---|
| 1 | 18 § 6106 | | | | Firearms Not To Be Carried W/O License | Guilty Plea - Negotiated |
| | | 02/25/2014 | Confinement | 9 - 23 months | Min: 9 Month(s) Max: 23 Month(s) | |
| | | 02/25/2014 | Probation | Other | Min: 9 Month(s) Max: 9 Month(s) | |
| 2 | 35 § 780-113 | | | | Int Poss Contr Subst By Per Not Reg | Nolle Prossed |
| 3 | 18 § 6108 | | | | Carry Firearms Public In Phila | Nolle Prossed |
| 4 | 18 § 903 | | | | Conspiracy | Nolle Prossed |
| 99999 | 35 § 780-113 | | | | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Disposed at Lower Court |
| 99999 | 18 § 903 | | | | Conspiracy - Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Disposed at Lower Court |
| 99999 | 18 § 903 | | | | Conspiracy - Firearms Not To Be Carried W/O License | Charge Changed |

**CP-51-CR-      7-2013**   Proc Status: Sentenced/Penalty Imposed      DC No: 13      46          OTN:N8      15
Arrest Dt: 09/25/2013      Disp Date: 02/25/2014      Disp Judge: Erdos, Michael
Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Sentence Dt. | Sentence Type | Program Period | Description / Sentence Length | Disposition |
|---|---|---|---|---|---|---|
| 1 | 18 § 6106 | | | | Firearms Not To Be Carried W/O License | Guilty Plea - Negotiated |
| | | 02/25/2014 | Probation | 4 years | Max: 4 Year(s) | |
| 2 | 18 § 6106 | | | | Firearms Not To Be Carried W/O License | Guilty Plea - Negotiated |
| | | 02/25/2014 | No Further Penalty | | | |
| 3 | 18 § 6108 | | | | Carry Firearms Public In Phila | Nolle Prossed |
| 4 | 18 § 6108 | | | | Carry Firearms Public In Phila | Nolle Prossed |
| 5 | 18 § 4906 | | | | False Report - Falsely Incriminate Another | Guilty Plea - Negotiated |
| | | 02/25/2014 | No Further Penalty | | | |

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.



**First Judicial District of Pennsylvania**
**Court Summary**

**M        K**        **(Continued)**
  **Closed (Continued)**
    **Philadelphia (Continued)**
      **MC-51-CR-       I9-2012**    Proc Status: Completed              DC No: 12      924              OTN:N{      13
        Arrest Dt: 10/27/2012        Disp Date: 01/22/2013      Disp Judge: Brady, Frank T.
        Def Atty: Fishman, Brian M. - (PR)

| Seq No | Statute | Description | Disposition |
|---|---|---|---|
| 1 | 35 § 780-113 | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Withdrawn |
| 2 | 18 § 903 | Conspiracy Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Withdrawn |
| 3 | 18 § 6106 | Firearms Not To Be Carried W/O License | Held for Court |
| 4 | 35 § 780-113 | Int Poss Contr Subst By Per Not Reg | Held for Court |
| 5 | 18 § 6108 | Carry Firearms Public In Phila | Held for Court |
| 7 | 18 § 903 | Conspiracy - Firearms Not To Be Carried W/O License | Held for Court |

      **MC-51-CR-0       17-2013**    Proc Status: Completed              DC No: 132      46              OTN:N8{      15
        Arrest Dt: 09/25/2013        Disp Date: 12/17/2013      Disp Judge: Segal, Dawn A.
        Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Description | Disposition |
|---|---|---|---|
| 1 | 18 § 6106 | Firearms Not To Be Carried W/O License | Held for Court |
| 2 | 18 § 6106 | Firearms Not To Be Carried W/O License | Held for Court |
| 3 | 18 § 6108 | Carry Firearms Public In Phila | Held for Court |
| 4 | 18 § 6108 | Carry Firearms Public In Phila | Held for Court |
| 5 | 18 § 4906 | False Report - Falsely Incriminate Another | Held for Court |

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.